UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC. ) | |
| ) | Civil Action No. 04-11129 DPW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KEYHOLE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |


**DEFENDANT KEYHOLE, INC.'S**
**MOTION TO TRANSFER VENUE**


Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax: (617) 310-9000

Attorneys for Defendant
KEYHOLE, INC.

Of Counsel
Darryl M. Woo
Maclain Wells
Kent E. Kemeny
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111
Tel.  (415) 875-2300
Fax  (415) 281-1350

I. **INTRODUCTION**

Keyhole is a small company in Northern California that uses advanced 3D graphics and network streaming innovations to deliver 3D digital models of the entire earth via the Internet. Skyline claims that Keyhole's innovative technology infringes U.S. Patent No. 6,496,189.

Skyline's patent infringement claims are directed to Keyhole's sole place of business in Northern California: the alleged acts of infringement occurred in Northern California, and all of the physical evidence and a vast majority of the likely witnesses reside in Northern California, including important third party witnesses who cannot be compelled to attend trial in Massachusetts. Indeed, nearly all third-party witnesses in this action – including former employees who are knowledgeable about the accused products – are located in California. In short, this case has far greater connection to the Northern District of California than to the District of Massachusetts and thus should be transferred there.

Although it recently became a subsidiary of Google, Keyhole remains a small, very thinly staffed Northern California company working diligently to survive in a competitive market and cannot afford to put its business on hold for several weeks while its entire management team is pulled away from the office to participate in a trial in Massachusetts. As more fully detailed below, Keyhole will not only be seriously inconvenienced, but its business will be detrimentally impacted if this case proceeds in the District of Massachusetts.

Because of Keyhole's location in the Northern District of California,

- the vast majority of allegedly infringing acts occurred or were directed from there;
- the witnesses most knowledgeable about the accused devices and services—their design, manufacturing, marketing and sales—reside there;
- Keyhole's engineering, marketing and finance documents related to the accused devices are located there; and
- Keyhole's research and development facilities are located there.

Courts have routinely transferred patent infringement cases to the defendant's district

because such actions focus on the activities of the alleged infringer, its employees, and its documents. *See, e.g., Clinical Dynamics Corp. v. Dynatech Nevada, Inc.,* 30 U.S.P.Q.2d (BNA) 1969, 1972 (D. Mass. 1994) (granting transfer to Nevada); *Dana Corp. v. Goodyear Tire & Rubber Co.,* 229 U.S.P.Q. (BNA) 476, 478 (D. Mass. 1985) (granting transfer to Ohio); *Gen 17, Inc. v. Sun Microsystems, Inc*., 953 F. Supp. 240, 243 (N.D. Ill. 1997).

Moreover, transferring this matter to the Northern District of California will not inconvenience Skyline or impact its business. Patent cases are defendant-centric and in this case, even the inventors are not residents of Massachusetts. Additionally, plaintiff Skyline is registered with the Commonwealth of Massachusetts as a foreign corporation and is organized under the laws of Delaware. Although it has an office in Massachusetts, its foreign corporation certificate lists Chantilly, Virginia as the location of its principal office. Declaration of Kent Kemeny in Support of Keyhole's Motion to Transfer ("Kemeny Decl.") ¶ 2, Exh. A.

For the foregoing reasons, the convenience of the parties and witnesses, and to serve the interests of justice, this action should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II. THIS COURT SHOULD TRANSFER SKYLINE'S CLAIMS AGAINST KEYHOLE TO THE NORTHERN DISTRICT OF CALIFORNIA.

The relevant factors under section 28 U.S.C. § 1404(a) strongly favor transfer. Section 1404(a) was designed to prevent "unnecessary inconvenience and expense to parties, witnesses, and the public." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 21 (1960). As a threshold matter, this action could have been brought in the Northern District of California in the first instance. Keyhole is headquartered and subject to personal jurisdiction there. Next, the Northern District is convenient to *both* parties. Skyline maintains operational partnerships with companies in the Northern District of California including, among others, Oracle (headquartered in Redwood Shores, CA) and Intel Corporation (headquartered in Santa Clara, CA). Kemeny Decl. ¶ 3, Exh. B.

As set forth above and as more fully detailed below, the "center of gravity" of this case is thus heavily weighted in the Northern District, and the case thus should be transferred there.

### A.  Venue Is Proper for Both the District of Massachusetts and the Northern District of California.

In a patent infringement action involving a corporate defendant like Keyhole, venue is proper in a district if the district, considered as though a state, has personal jurisdiction over the corporate defendant. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (incorporating 28 U.S.C. § 1391(c) into 28 U.S.C. § 1400(b)).

Here, Keyhole does not deny that the District of Massachusetts may exercise personal jurisdiction over it as to the claims asserted, but submits that the Northern District of California, which also has personal jurisdiction over Keyhole, is the more appropriate forum.

### B.  The Northern District of California Is More Convenient Than the District of Massachusetts

Skyline's claims against Keyhole belong in the Northern District of California because they have virtually no connection with the District of Massachusetts, while the Northern District of California has the most numerous and significant connections to these claims of any forum. Keyhole's business is located in the Northern District of California, and as a result, the vast majority of witnesses, and all documents and evidence relating to the engineering, research and development, manufacturing, and marketing of the accused products are located there. Declaration of John Hanke in Support of Keyhole's Motion to Transfer Venue ("Hanke Decl.") ¶¶ 7-10, 12. Further, all of the activities alleged by Skyline occurred in or were directed from Keyhole's headquarters in the Northern District of California.

By contrast, the District of Massachusetts has little if anything to do with Skyline's claims of infringement. Because this is a patent infringement case, the only relevant Skyline witnesses are the two inventors of the asserted patent, but according to the patent itself, both reside in Tel Aviv, Israel, not Massachusetts. Additionally, no activities related to the research,

development or manufacture of the accused Keyhole products or services occurred here. Hanke Decl. ¶ 10. No Keyhole witnesses of any substance reside here. *Id*. ¶¶ 7-8, 10, 12, 14. None of Keyhole's documents may be found here. *Id*. ¶9. Moreover, while Keyhole has only two or three corporate customers located in Massachusetts, its contact with them is limited to installations of software upgrades. *Id.* ¶ 11.

Further, Skyline's contacts with California suggest that a case in the Northern District of California would inconvenience Skyline far less than a case in Massachusetts would inconvenience Keyhole. Skyline may have an office in Massachusetts, but its certificate shows that its principal office is in Virginia and it maintains significant operational relationships with companies located in the Northern District of California, including Oracle and the Intel Corporation. Kemeny Decl. ¶ 3, Exh. B.

    **C.**    <u>**Statement of Operative Facts**</u>

        1.    *All of Keyhole's Employees and Documents Are In the Northern District of California; None Are In Massachusetts*

Keyhole is a Delaware corporation and has its principal place of business and corporate headquarters in Mountain View, California. Hanke Decl. ¶ 4. The company uses advanced 3D graphics and network streaming innovations to deliver 3D digital models of the entire earth via the Internet. *Id.* ¶ 5. All of Keyhole's employees are located in the Northern District of California. *Id.* ¶¶ 4, 7-8.

Further, all of the documents and things that Keyhole anticipates will be relevant to this action are located in the Northern District. Specifically, all documents relating to the engineering, research, development, manufacture, assembly, sales revenues, costs, distribution, marketing, and product development of the accused products are located in Mountain View. Hanke Decl. ¶¶ 9-10, 12. All of the strategic financial and administrative activities that may relate to Skyline's claims also take place exclusively at the Mountain View headquarters, and the relevant documents are maintained there. *Id.* ¶¶ 9, 12.

2.  *The Accused Products Are Designed, Developed, and Manufactured in California*

The accused products are designed, engineered, and manufactured by Keyhole in Mountain View, California. Hanke Decl. ¶ 10. Also, all documents relating to the engineering, research and development of the accused products are maintained at Keyhole's headquarters and offices in Mountain View, California. *Id.* ¶ 9.

3.  *The Marketing, Sale and Support of the Accused Products Are Managed from California*

Not only is Northern California the center of design, manufacturing and development of the accused products, it is also the seat of all of Keyhole's strategic sales activities and decision-making, including revenue forecasting, advertising, marketing, distribution, compensation, product development, product roll-out and new product development. Hanke Decl. ¶ 12. All of the employees involved in such activities reside in Northern California, and that is also the location of the pertinent documents showing sales revenue, costs, distribution, marketing, and product development relating to the accused products. *Id.* ¶¶ 7-9.

Moreover, Keyhole's sales activity in Massachusetts is extremely limited. Keyhole has only a few corporate customers in Massachusetts, and limits its contact with them to occasional software upgrades. Very little of Keyhole's sales activity occurs in Massachusetts.

4.  *All of Keyhole's Witnesses Are in the Northern District of California*

Most of the anticipated party witnesses—Keyhole's officers and employees—work and reside within the Northern District. These include the officers who have given declarations in support of this Motion:

(a)  John Hanke, CEO, is responsible for managing Keyhole's strategic operations and management, and supervises day to day affairs related to sales, marketing and development; he also played a key role in development of the accused products, and will likely be a witness on product development. Hanke Decl. ¶ 3.

(b) Michael Jones, Chief Technology Officer, is responsible for managing Keyhole's research and development, and new technology, and will likely be a witness regarding the features, components and functions of the accused products. Jones Decl. ¶ 3.

(c) Daniel Lederman, Director of Business Development, is responsible for international sales, contracts, and licensing, and will likely be a witness regarding the royalty rates paid in the industry for patents comparable to the patent-in-suit, the portion of the profit or selling price that would customarily relate to the use of an invention such as that claimed in the patent-in-suit. Lederman Decl. ¶ 3.

(d) Brian McClendon, Vice President of Engineering, is responsible for managing Keyhole's product engineering, and will likely be a witness regarding the research, development, design and engineering of the accused products. McClendon Decl. ¶ 3.

(e) Noah Doyle, Strategic Marketing, is responsible for managing Keyhole's marketing network, and distribution strategies and other marketing-related corporate management and planning activities, and will likely be a witness regarding marketing of the accused products, the prices at which they are sold and could be sold, and the competitive forces in the marketplace that affect prices for both the accused products and Skyline's products. Doyle Decl. ¶ 3.

(f) Sue Cozzo, Controller, is responsible for financial and administrative activities, including accounting, budgeting, planning, financial reporting, and will likely be a witness regarding the volume of accused products that Keyhole has sold and the amount of profits it has earned from these sales, and other related financial information. Cozzo Decl. ¶ 3.

Importantly, there are a number of *former* Keyhole employees residing within the Northern District who are likely to be called as witnesses and cannot be compelled to attend trial in Massachusetts. These include at least the following individuals: (1) Phil Keslin, former Chief Technology Officer, involved in the design and development of the accused products; and (2) Don Hatch, former software engineer involved in the design and development of the accused products. Hanke Decl. ¶ 7.

        5.     *Key Non-Party Witnesses in Possession of Prior Art Are in the Northern District of California*

In addition to the California third-party witnesses to the development of the accused products, a number of individuals and companies headquartered within the Northern District are likely to have prior art relevant to the patent-in-suit. They include at least the following: (1) Christopher Joseph Migdal (Mountain View, CA); (2) James L. Foran (Milpitas, CA); (3) Christopher Clark Tanner (San Jose, CA); (4) Don Hatch; and (5) Silicon Graphics, Inc. (Mountain View, CA). *See* Hanke Decl. ¶ 7; Kemeny Decl. ¶ 4.

        6.     *Skyline Has Significant Contacts in the Northern District of California*

Skyline may have an office in Massachusetts, but it officially lists its principal office as located in Virginia, and it maintains significant operational relationships with companies located in the Northern District of California, including Oracle and the Intel Corporation. Kemeny Decl. ¶ 3, Exh. B. Its contacts with California suggest that it would not be significantly inconvenienced by a transfer to the Northern District of California. Even if Skyline was somewhat inconvenienced by a transfer to the Northern District, it would be far outweighed by the inconvenience to Keyhole for having to litigate in Massachusetts.

### D.     Defending The Action in This District Would Be A Hardship for Keyhole

Keyhole can ill afford the disruption and expense of hearings, depositions and a trial on the other side of the country. Not only would the costs associated with travel and lodging for a trial lasting several weeks to a month be significant, but the attendant disruption to key Keyhole employees' schedules could directly impact Keyhole's competitiveness, market share, sales and revenues. Keyhole is a small company and all of Keyhole's 34 employees work at its offices in the Northern District of California. Hanke Decl. ¶ 7. Keyhole does not have any employees who reside in the District of Massachusetts. *Id.* ¶ 8.

The market in which Keyhole competes is cost-sensitive and characterized by frequent advances in technology, ever-changing customer needs and intense competition. Hanke Decl.

¶ 13.  To meet these challenges, Keyhole must constantly design, develop, market and sell new and enhanced products and services.  *Id.*  Failure to do so could result in a loss of market share, brand value and revenue.  *Id*.  Participation of key Keyhole employees—precisely the same employees who would likely testify at a trial in this matter—is crucial at every stage of the product/service-introduction process, and their absence could delay the introduction, market acceptance or availability of new or enhanced products or services.  *Id.* ¶¶ 13-14.

Keyhole's structure is such that their management is extremely lean and efficient, with little overlap or duplication.  Each member of the management staff is critical to the day-to-day activities of the company.  *Id.* ¶¶ 13-14.  If any member of the management staff were to be away from the office for an extended period, no one would be available to take their place, with rare exceptions.  *Id*.  The managers who are likely to testify at the trial are those responsible for varied activities such as writing contracts, developing and approving sales and marketing promotions, and planning and executing engineering releases.  *Id*.  In addition, these managers are regularly required to deal with unexpected and unforeseen events that frequently arise in the industry.  *Id*.  With rare exceptions there would be no one who could stand in and take the place of these managers while they were attending trial in Massachusetts, and the entire business would be detrimentally impacted.  *Id*.

### III.   LEGAL ANALYSIS

#### A.   Applicable Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This statute is a codification of the common law doctrine of forum non conveniens.  *Albion v. YMCA Camp Letts,* 171 F.3d 1, 2 (1st Cir. 1999).  Accordingly, courts in this District:

> essentially look to the forum non conveniens factors to make this decision [whether to transfer], and examine the relative convenience to each of the parties,

  the "relative ease of access to sources of proof," and "availability of compulsory process for attendance of unwilling" witnesses, and the relative availability of documentary and tangible evidence, as well as the public interest in the administration of justice, including trial efficiency.

*Veryfine Prods., Inc. v. Phlo Corp.,* 124 F. Supp. 2d 16, 24 (D. Mass. 2000) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947)). Courts have "somewhat greater discretion than [they] had in the traditional forum non conveniens analysis" but "[t]he balancing analysis remains similar." *Id.* (citations omitted).

  Courts in this District have transferred patent infringement actions where, as here, most of the witnesses knowledgeable about the accused products, and most of the documents relating to the accused products, are located in the transferee district. *See Clinical Dynamics Corp. v. Dynatech Nevada, Inc.,* 30 U.S.P.Q.2d (BNA) 1969, 1972 (D. Mass. 1994) (granting transfer to Nevada); *Dana Corp. v. Goodyear Tire & Rubber Co.,* 229 U.S.P.Q. (BNA) 476, 478 (D. Mass. 1985) (granting transfer to Ohio). This results from the principle that a patent case's "center of gravity" is the district in which the defendant resides or where the alleged infringing conduct is carried out. *See, e.g., LG Elecs. Inc. v. Advance Creative Computer Corp.,* 131 F. Supp. 2d 804, 814 (E.D. Va. 2001) ("In a patent infringement action, 'the preferred forum is that which is the center of the accused activity . . . 'the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'") (citation omitted); *Laitram Corp. v. Hewlett-Packard Co.,* 120 F. Supp. 2d 607, 609 (E.D. La. 2000) (same).

  Many courts have recognized that patent infringement actions ordinarily should be transferred to the alleged infringer's home district because such actions "often focus on the activities of the alleged infringer, its employees, and its documents." *Gen 17, Inc. v. Sun Microsystems, Inc.*, 953 F. Supp. 240, 243 (N.D. Ill. 1997); *see also Recycling Sci. Int'l, Inc. v. Soil Restoration & Recycling, LLC*, 159 F. Supp. 2d 1095, 1100 (N.D. Ill. 2001) ("In patent infringement cases, practicality and convenience are best served when cases are prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other

data necessary to the discovery and trial techniques employed in the patent field."); *Teknekron Software Sys., Inc. v. Cornell Univ.*, No. 93-20122 SW, 1993 U.S. Dist. LEXIS 21337, at *19-*20 (N.D. Cal. June 14, 1993); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 n.17 (D.N.J. 1993); *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470, 474 (N.D. Ill. 1992) ("Intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's principal place of business is often the critical and controlling consideration.").

### B.   Skyline Could Have Brought Its Action in the Northern District

A threshold requirement for transfer is that this action must be one that initially could have been brought in the Northern District. Because Keyhole has its principal place of business in the Northern District, this requirement is easily met. *See Trans Nat'l Travel, Inc. v. Sun Pac. Int'l, Inc.,* 10 F. Supp. 2d 79, 81 (D. Mass. 1998) (venue for patent cases is under 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

### C.   The Relevant Factors Weigh Heavily in Favor of Transfer to the Northern District

In this District, courts consider a number of factors in deciding whether to transfer an action: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses and the location of documents, (4) any connection between the forum and the issues, (5) the law to be applied, and (6) the interest of justice. *See, e.g., Kleinerman v. Luxtron Corp.,* 107 F. Supp. 2d 122, 125 (D. Mass. 2000); *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.,* 56 F. Supp. 2d 134, 141 (D. Mass. 1999), *mot. denied, request granted*, 77 F. Supp. 2d 199 (D. Mass. 1999), *transferred sub. nom. In re Nuway Paper Mach.Contracts Litig.,* 1999 U.S. Dist. LEXIS 20179 (J.P.M.L. Dec. 22, 1999); *Trans National,* 10 F. Supp. 2d at 81; *Clinical

*Dynamics Corp.,* 30 U.S.P.Q.2d at 1971.  In this case, the applicable factors weigh heavily in favor of a transfer to the Northern District, notwithstanding Skyline's choice to file in this forum.

> 1. *Skyline's Choice of This Forum is Outweighed by the Inconvenience to Keyhole and Third Party Witnesses*

In balancing the relevant factors, the Court should not give much weight to Skyline's choice to file in this forum.  As an initial matter, this District is **not** Skyline's home forum.  *See Kleinerman,* 107 F. Supp. 2d at 125 ("When a plaintiff chooses his home forum, the choice more likely represents considerations of convenience rather than vexation or harassment to the defendant, thus elevating the hurdle the defendant is required to clear to warrant transfer.") (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981), *reh'g denied*, 455 U.S. 928 (1982)).  Skyline is not a Massachusetts corporation.  Although Skyline may have an office in this District, it is registered as a foreign corporation with the Commonwealth of Massachusetts, is organized under the laws of Delaware, and maintains its principal office in Chantilly, Virginia. Kemeny Decl. ¶ 2, Exh. A.

Moreover, though courts generally lend great weight to a plaintiff's choice of forum, an exception to this general rule exists when the balance of convenience favors a different venue, as is the case here.  *See Kleinerman,* 107 F. Supp. 2d at 125 (explaining that the balance of convenience is an "exception to the first-filed rule"); *see also Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp 1048, 1050 (N.D. Ill. 1982) (explaining that in cases where, as here, the forum thus lacks significant contact with the underlying cause of action, the plaintiff's choice of venue "becomes just one of many factors to be viewed by the Court when making its determination of convenience").

> 2. *The Convenience of the Parties Will Not Merely Be Shifted by Transferring This Action*

Even if Skyline's choice to file in this forum is given great weight, a transfer is still appropriate.  In *Nowak v. Tak How Investments, Ltd.*, the First Circuit explained that "a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to

be out of all proportion to plaintiff's convenience, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems" would deprive the plaintiff of the presumed advantages of his home jurisdiction. 94 F.3d 708, 720 (1st Cir. 1996), *cert. denied*, 520 U.S. 1155 (1997).

Here, Skyline has chosen a forum that is geographically as inconvenient as possible to Keyhole and to relevant third party witnesses but is only marginally more convenient to Skyline than would be the Northern District of California. As shown by the overwhelming number of relevant party and non-party witnesses and documents in the Northern District, the oppressiveness to Keyhole of having to defend the action in this District is grossly out of proportion to any asserted convenience to Skyline.

A transfer of this action thus would ***not merely shift*** the inconvenience from Keyhole to Skyline. *Compare* this case *with Sigros v. Walt Disney World Co.,* 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (denying transfer because it would merely shift the inconvenience from defendant to plaintiff); *Kleinerman,* 107 F. Supp. 2d at 125 (same); *Fairview Machine,* 56 F. Supp. 2d at 141-42 (same); *Trans National,* 10 F. Supp. 2d at 81 (same).

Skyline has significant operational relationships with companies within the Northern District, and presumably makes regular business visits there. Thus, the Northern District is only marginally less convenient to Skyline than is this District.

   3. *Nearly All of the Witnesses, Third Parties and Documents Are in the Northern District*

Of all the stated factors, the convenience of the chosen forum to expected witnesses is perhaps the most important factor. *Fairview Machine,* 56 F. Supp. 2d at 141; *Princess House, Inc. v. Lindsey,* 136 F.R.D. 16, 18 (D. Mass. 1991), *subsequent appeal*, 77 F.3d 486 (8th Cir. 1996), *reported in full*, 1996 U.S. Dist. LEXIS 2946 (8th Cir. Feb. 26, 1996); *Shipley Co., Inc. v. Clark,* 728 F. Supp. 818, 823 n.15 (D. Mass. 1990); *Home Owners Funding Corp. v. Century Bank,* 695 F. Supp. 1343, 1347 (D. Mass. 1988). "The important question concerning witness convenience is whether either forum is so inconvenient as to inhibit access to necessary

witnesses." *Trans National,* 10 F. Supp. 2d at 81 (citation omitted).  "The question of accessibility requires an inquiry into whether witnesses will willingly appear, whether they can be compelled to appear, and whether their testimony is available by some other means." *Id.* (citation omitted).

All of Keyhole's party witnesses reside within the Northern District.  Although so long as these witnesses remain in its employ, Keyhole could ensure their appearances for hearings and trial, it will be at great cost given the need to provide airfare, meals and lodging for a cross-country trip, not to mention the significant time and opportunity cost of their absence.  Trial in this action could last several weeks to a month or longer.  The asserted claims of the patent would also have to be construed by the Court, thereby requiring a lengthy *Markman* hearing.

Moreover, in addition to the hardship that Keyhole will suffer if these witnesses are required to travel to Massachusetts for trial, the witnesses also will face personal hardship.  Mr. Hanke is a father of two young children.  Hanke Decl. ¶ 15.  Daniel Lederman is likewise a father of three young children.  Lederman Decl. ¶ 4.  Noah Doyle has two young children.  Doyle Decl. ¶ 4.  Brian McClendon has one young child.  McClendon Decl. ¶ 4.  Each of these witnesses would experience personal hardship to themselves and their families if they were required to travel to Massachusetts throughout the litigation and particularly, for trial.

The Northern District is also more convenient to key non-party witnesses and third parties whose attendance could not be assured or compelled in this District.  Patent cases focus not on the plaintiff, but on the defendant's accused products and their development, manufacturing and functionality.  *See, e.g., Laitram*, 120 F. Supp. 2d at 609 ("Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the place where marketing and sales decisions were made.") (citation omitted).  Here, at least two former Keyhole employees responsible for aspects of the development of the accused system will potentially play an important role in this case, and both are located in the Northern District.

Certain third party witnesses are important not only to Keyhole's noninfringement defenses, but also bear on defenses where Keyhole will bear the burden of proof by clear and convincing evidence, *e.g.*, to demonstrate patent invalidity. In that regard, having to settle for appearances by transcript or videotape significantly magnifies that burden, and by itself justifies a transfer to the Northern District, where such witnesses may be compelled to give trial testimony, as opposed to this District where they cannot. *See Trans National,* 10 F. Supp. 2d at 81.

At the same time, **none** of Keyhole's witnesses is in Massachusetts, and at this point, no Massachusetts third party witnesses have been identified.

Additionally, all of Keyhole's relevant engineering, design, development, financial, and sales documents are in the Northern District. None are in Massachusetts.

    4.  *Massachusetts Has Minimal Connection with the Issues in This Case*

Another factor is the connection between the forum and the issues in the case. The connection between Massachusetts and the issues in the case is minimal at best. As stated above, Keyhole is only very remotely connected to Massachusetts, maintaining only a few corporate customers. All of the allegedly infringing activities occurred in the Northern District of California.

    5.  *The Law to Be Applied is the Same in Massachusetts and California*

The law to be applied in this case is federal patent law, which will be the same whether the case is in Massachusetts or California. The choice of law thus has no bearing on the transfer determination.

    6.  *The Interests of Justice Favor Transfer*

Transferring this action to the Northern District serves the interests of justice. The Northern District is the district where most of the witnesses and documents may be found, and importantly, the only district that may compel the attendance and testimony of most of the important third party witnesses at trial. Furthermore, the Northern District is better able to

control discovery, as many third party sources of prior art are found in that district and will be subject to the trial court's jurisdiction if this action is transferred there, while few of those sources, if any, would be subject to this Court's jurisdiction. This is important, since most third parties, especially if they are competitors or now work for competitors, are reluctant to give up discovery of documents and information regarding their technology.

A transfer of this action therefore will only minimally inconvenience Skyline, if at all, and at the same time will serve the interests of judicial economy and efficiency by having the judges in the judicial district where all of the defendants and most of the witnesses reside, and all of the accused products are designed, developed and manufactured, examine Skyline's various infringement claims.

### IV.   CONCLUSION

Transferring this matter to California will only minimally, if at all, inconvenience the plaintiff, a foreign corporation that also does business in California. The defendant California company, however, would be seriously inconvenienced and suffer a detrimental effect to its bottom line if this action were to proceed in Massachusetts.

For the foregoing reasons, Skyline's claims against Keyhole should be transferred to the Northern District of California.

### CERTIFICATE UNDER LOCAL RULE 7.1 (A) (2)

Pursuant to Local Rule 7.1(A)(2), counsel for Keyhole met and conferred in good faith with counsel for Skyline on November 2 and 3, 2004 on the issues raised herein and counsel for both parties were unable to resolve or narrow the issues.

///
///
///
///

## REQUEST FOR ORAL ARGUMENT

Oral argument is requested.

Dated: November 3, 2004          By its Attorneys,

                                 FENWICK & WEST LLP


                                 _____/s/ Darryl M. Woo_____
                                 Darryl M. Woo, admitted *pro hac vice*
                                 Embarcadero Center West
                                 275 Battery Street
                                 San Francisco, CA 94111
                                 Phone: (415) 875-2300
                                 Fax:    (415) 281-1350


                                 Nelson G. Apjohn (BBO No. 020373)
                                 NUTTER McCLENNEN & FISH LLP
                                 World TradeCenter West
                                 155 Seaport Boulevard
                                 Boston, MA 02210
                                 Phone: (617) 439-2000
                                 Fax:    (617) 310-9000


                                 *Of Counsel admitted Pro Hac Vice:*
                                 Darryl M. Woo
                                 Maclain Wells
                                 Kent Kemeny
                                 FENWICK & WEST LLP
                                 Embarcadero Center West
                                 275 Battery Street
                                 San Francisco, CA 94111
                                 Phone: (415) 875-2300
                                 Fax:    (415) 281-1350

                                 Attorneys for Defendant and Counterclaimant
                                 Keyhole, Inc.

22472/00401/LIT/1201938.4