UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC. | ) |
| Plaintiff, | ) Civil Action No. 04-11129 DPW |
| v. | ) |
| KEYHOLE, INC., | ) |
| Defendant. | ) |

**DEFENDANT KEYHOLE, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER VENUE**

**SUMBITTED IN RESPONSE TO ORDER GRANTING LEAVE TO FILE REPLY**

Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax: (617) 310-9000

Attorneys for Defendant
KEYHOLE, INC.

Of Counsel
Darryl M. Woo, admitted *pro hac vice*
Maclain Wells, admitted *pro hac vice*
Kent E. Kemeny, admitted *pro hac vice*
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Tel. (415) 875-2300
Fax (415) 281-1350

I.  **SUMMARY OF REPLY**

Skyline's Opposition to Keyhole's Motion to Transfer Venue ("Opposition"), filed November 17, 2004,[1] is a feeble attempt to prevent this case from being transferred to where it rightfully belongs, in the Northern District of California.  Rather than respond to Keyhole's points, Skyline offers "me too" arguments about inconvenience to a single witness.  Such arguments do not tip the balance of convenience towards Massachusetts.  Indeed, Skyline makes no attempt to show that Massachusetts is *more* convenient for all parties (particularly non-parties), but merely that California is equally as inconvenient for its sole witness declarant as is Massachusetts for Keyhole's multiple California witnesses.  *See* Opposition at 7 ("[Skyline's] required presence in that forum [*i.e.*, California] [is] *equally inconvenient* and exceptional.") (emphasis added).  According to Skyline, the balance of convenience results in no more than a wash, and the case should stay here because it should be given its choice of forum.

Keyhole strongly disagrees.  The factors weigh solidly in favor of transfer.  Notably, though not surprisingly, Skyline fails to address what may be the most critical factor in deciding whether to transfer venue: the location of key non-party witnesses whose presence cannot be compelled in the District of Massachusetts.  In its motion, Keyhole identified at least six such non-parties.  Skyline has identified none.  These witnesses will play a vital role in Keyhole's defenses not only on noninfringement, but also on patent invalidity, an issue for which Keyhole bears the burden of proof by clear and convincing evidence.  Having to settle for appearances by transcript or videotape significantly magnifies that burden, and by itself justifies a transfer to the Northern District, where such witnesses may be compelled to give trial testimony, as opposed to this District, where they may not.

Finally, Skyline derides Keyhole for its "opinion" that patent infringement cases are "defendant-centric."  Opposition at 2, 9-10.  The defendant-centric nature of patent cases, however, is not Keyhole's opinion, but the *published* opinions of numerous U.S. District Courts,

---

[1] Keyhole notes that Skyline did not electronically file its opposition, and instead served counsel, Fenwick & West, by U.S. Mail, in a transparent attempt to cause its receipt to be delayed.

including the District of Massachusetts. Skyline's disagreement with the rationale of this and several other districts does not change the fact that patent infringement cases focus on the conduct of the allegedly infringing operations of the defendant, which almost always, as in this case, center about its place of business. All of Keyhole's operations material to the alleged infringement took place in the Northern District of California, where the subject software was developed and marketed. Importantly, California is where third party ex-employees who designed and developed the accused software reside. Thus, the Northern District of California is the appropriate venue.

## II.   REPLY ARGUMENT

### A.   There is No "Strong Presumption" in Favor of Skyline's Choice of Forum.

Skyline argues that its choice of forum should be given great weight, citing a number of non-patent cases standing for this general proposition. *See* Opposition at 3-4 (citing *Nowak v. Tak How Investments Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996), *cert. denied*, 520 U.S. 1155 (1997) (wrongful death action); *F.A.I. Elecs. Corp. v. Chambers*, 944 F. Supp. 77, 80 (D. Mass. 1996) (violation of non-competition and confidentiality agreements in which the court granted defendants' motion to transfer venue because the majority of witnesses, records, and evidence were located in the transferee district); *Shipley Co. v. Clark*, 728 F. Supp. 818, 823 (D. Mass 1990) (violation of non-competition agreement and misappropriation of trade secrets); *Home Owners Funding Corp. v. Century Bank*, 695 F. Supp. 1343, 1347 (D. Mass. 1988) (breach of contract and negligent misrepresentation)). To read Skyline's brief, one would think that Keyhole did not accurately recite applicable law, but it is Skyline that relies heavily on non-patent case authorities whose facts bear no resemblance to the matter at hand.

Indeed, an exception to this general rule exists even in non-patent cases when the balance of convenience favors a different venue, as is the case here. *See, e.g., Symbol Techs., Inc. v. Quantum Assocs., Inc.*, No. 01-10983-GAO, 2002 U.S. Dist. LEXIS 1500, at *5-*6 (D. Mass. January 30, 2002) (holding that balance of convenience favors the second filed action and

transferring first filed declaratory judgment action regarding breach of contract to the Northern District of California); *see also Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (explaining in a patent case that the "balance of convenience" is an "exception to the first-filed rule"). In patent cases, courts in this district have little trouble overcoming plaintiff's presumptive choice and have transferred patent cases to the defendant's home district because that was the location of the most relevant documents and witnesses. *See, e.g., Clinical Dynamics Corp. v. Dynatech Nevada, Inc.*, 30 U.S.P.Q.2d (BNA) 1969, 1972 (D. Mass. 1994) (granting transfer of patent case to Nevada); *Dana Corp. v. Goodyear Tire & Rubber Co.*, 229 U.S.P.Q. (BNA) 476, 478 (D. Mass. 1985) (granting transfer of patent case to Ohio).

Courts in other districts likewise effect transfer because patent cases "often focus on the activities of the alleged infringer, its employees, and its documents," and as such, venue is more appropriate in the defendant's home forum. *Gen 17, Inc. v. Sun Microsystems, Inc.*, 953 F. Supp. 240, 243 (N.D. Ill. 1997); *see also LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 814 (E.D. Va. 2001); *Recycling Sci. Int'l, Inc. v. Soil Restoration & Recycling*, LLC, 159 F. Supp. 2d 1095, 1100 (N.D. Ill. 2001); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000); *Teknekron Software Sys., Inc. v. Cornell Univ.*, No. 93-20122 SW, 1993 U.S. Dist. LEXIS 21337, at *19- *20 (N.D. Cal. June 14, 1993); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 n.17 (D.N.J. 1993); *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470, 474 (N.D. Ill. 1992).

Skyline argues that the defendant-oriented focus of patent infringement cases is merely Keyhole's "opinion." Opposition at 2. It then disposes of all the cited caselaw supporting Keyhole's position with the sweeping statement that "those cases … all involve notably different facts." Opposition at 9. Surprisingly, Skyline does not then attempt to distinguish the cited cases with any facts, but simply ignores them.[2] Skyline's cavalier dismissal of these courts'

---

[2] Skyline does cite to one case that was also mentioned by Keyhole, *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993). Skyline does not, however, attempt to distinguish this case or explain how it supports Skyline's contention. Indeed, the court in *Ricoh* specifically mentioned that the preferred forum in a patent infringement case "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* at 482 n.17. The court then transferred venue to the defendant's district. *Id.* at 488.

reasoning is understandable, as they directly contradict Skyline's position.

Skyline does point out the existence of two remote Skyline customers in Massachusetts, but that hardly moves the "center of gravity" of the allegedly infringing activity away from California, where the development, manufacture, and production of Keyhole's accused products took place. As numerous courts have ruled, patent infringement cases center not on such isolated sales but on the alleged infringer and the place of its operations. *See cases cited supra* at 3.

Skyline's choice of forum is not entitled to great weight for at least two additional reasons: (1) Massachusetts is not Skyline's home forum, *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003) ("[A] plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum."); and (2) the claims at issue do not bear significant relation to the District of Massachusetts, *id.*

Skyline claims, without basis, that "there is no dispute that Massachusetts <u>is</u> Skyline's home forum." Opposition at 5 (emphasis in original). To the contrary, Keyhole not only disputes this assertion wholeheartedly, but the facts weigh against Skyline's assertion, even assuming, *arguendo*, that the locus of Skyline's operations could upset the defendant-centric nature of a patent case, which they cannot. Skyline is organized under the laws of Delaware and is registered in Massachusetts only as a foreign corporation. Kemeny Decl. Ex. A. In its official filings with the Commonwealth of Massachusetts, Skyline self-identifies Chantilly, Virginia as the location of its principal office. *Id.* Although Aharon Yaron, Skyline's president, works out of Massachusetts, the Chief Executive Officer of Skyline (who is also the Secretary), Paul W. Collins, works out of Skyline's principal office in Chantilly, Virginia, along with all of the other directors of the company. *Id.* Mr. Yaron is the only Skyline officer who lives and works in Massachusetts, and Skyline has readily admitted that 12 of its 17 employees live and work outside of Massachusetts. *See* Opposition at 5; Declaration of Aharon Yaron in Support of Skyline's Opposition ("Yaron Decl.") ¶ 2. Apparently, apart from Mr. Yaron, the only people working in Skyline's Massachusetts office are a portion of its sales and marketing staff. *See* Yaron Decl. ¶ 2; Opposition at 5. Research and development take place in Israel. Yaron Decl.

¶¶ 2, 3; Opposition at 5.  Presumably, at least some strategy and management takes place in Virginia, where Skyline's CEO and directors reside.  *See* Kemeny Decl. Ex. A.  Consequently, Massachusetts is not Skyline's home forum.  As in *Koh*, its choice of forum thus should not be given substantial weight.  250 F. Supp. 2d at 633.

The claims at issue furthermore do not bear a significant relation to the District of Massachusetts.  Mr. Yaron has identified only himself as a potential witness, and no others.  Skyline has produced *no* evidence of Keyhole's connection to Massachusetts in a way important to a patent infringement case, and only summarily concludes that Keyhole's operation of a web site viewable by Massachusetts residents (as well as by the rest of the world) makes it "virtually certain" that Keyhole infringes and will continue to infringe the patents in Massachusetts.  Opposition at 5-6.

Skyline also overstates the importance of Keyhole's two customers in Massachusetts, with whom Keyhole maintains only *de minimus* contact for assisting with upgrades.  Hanke Decl. ¶ 11.  Skyline's conclusion that this is an "[admission] that acts of infringement have occurred in Massachusetts" [Opposition at 5] is absurd.  Keyhole's acknowledgement of the existence of two remote customers hardly equates with an admission of infringement, let alone infringement in Massachusetts in a way that would shift the center of this case here.

Moreover, Skyline's suggestion that the mere presence of a few Keyhole customers in Massachusetts is sufficient to shift the center of gravity here actually proves just the opposite; that the claims are not connected to this forum:

> Because only limited sales activity occurred in this district and federal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more, the infinitesimal sales activity present here is not sufficient to accord substantial weight to the [plaintiffs'] chosen venue.  Considered as a whole on the record here, this factor - the plaintiffs' chosen forum - weighs in favor of transfer.

*Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636-37 (E.D. Va. 2003). Keyhole's connections to this forum are even more tenuous than the sales activities described in *Koh*, as Keyhole merely has obligations to assist these customers with software upgrades as needed.

Further, whether the alleged infringement is connected to this forum is not a function of the location of Keyhole's customers, but of the way in which Keyhole designed and operates its accused system. It is undisputed that the accused system was and is wholly designed and operated out of Keyhole's place of business in Mountain View, California. In fact, any and all activity material to Keyhole's alleged infringement necessarily occurred in the Northern District of California.

### B. Important Non-Party Witnesses Will be Unavailable Absent Transfer.

Of all the factors weighed in determining a motion to transfer, the convenience of the chosen forum to expected witnesses is perhaps the most important. *Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 56 F. Supp. 2d 134, 141 (D. Mass. 1999); *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991), *subsequent appeal*, 77 F.3d 486 (8th Cir. 1996), *reported in full*, 1996 U.S. Dist. LEXIS 2946 (8th Cir. Feb. 26, 1996); *Shipley Co., Inc. v. Clark*, 728 F. Supp. 818, 823 n.15 (D. Mass. 1990); *Home Owners Funding Corp. v. Century Bank*, 695 F. Supp. 1343, 1347 (D. Mass. 1988).

Skyline gives short shrift to this factor. The best Skyline can muster is its bald assertion that this factor is a draw: "the inconvenience to the defendant and its witnesses is not substantially greater than the inconveniences to the plaintiff and the plaintiff's witnesses." Opposition at 6.

To the contrary, this factor weighs strongly in favor of transfer to the Northern District of California, where important non-party witnesses reside. In its brief, Skyline does not even mention the effect of venue on *non-party* witnesses, and fails to identify *any* non-party witnesses who would find Massachusetts more convenient. Even at this early stage, Keyhole by contrast has already identified six non-party witnesses that will play an important role in Keyhole's defense. Two non-party former employees relevant to the development of the accused software,

including Keyhole's former chief technology officer, reside in the Northern District of California. Hanke Decl. ¶ 7. Keyhole has also identified at least four other likely witnesses in California who are in possession of prior art relevant to the patent in suit. *Id.*; Kemeny Decl. ¶ 4.

The presence at trial of these non-party individuals cannot be compelled in the District of Massachusetts. Nor are these individuals likely to attend trial and testify willingly, as many of them are competitors in the industry or are their employees. In the absence of a transfer, Keyhole would be forced to rely on appearances by transcript or videotape to prove invalidity, an issue for which Keyhole bears the burden of proof by clear and convincing evidence. Without the benefit of live testimony from these individuals, Keyhole's defense would be far more daunting.

Skyline, on the other hand, has not identified *any* non-party witnesses. All of Skyline's employee witnesses *could* be compelled by Skyline to attend trial and testify in the Northern District of California. Indeed, Skyline has identified only one individual, Mr. Yaron, as a potential *party* witness.[3] Although Skyline nakedly claims that a substantial number of other witnesses reside in Massachusetts [*see* Opposition at 3], it fails to identify by name a single one,[4] let alone their asserted importance, the topics on which they would testify, or any possible inconvenience of having them attend trial in California.

Skyline has furthermore failed to proffer any evidence that its business would suffer if any of these unnamed witnesses were required to appear in California for trial. Indeed, it is entirely possible, given the absence of any proffered evidence, that Skyline's Massachusetts sales employees travel extensively as part of their regular job duties, meaning that a trip to California would not be burdensome. In contrast, Keyhole has submitted affidavits of many of its key executives declaring that they would be severely inconvenienced personally, and that Keyhole's

---

[3] Skyline argues that "nearly all the inventors … will be found in Massachusetts." Opposition at 9. It neglects to point out, however, that there are only two inventors on the patent. One of them is Mr. Yaron, who in Skyline's view, apparently constitutes "nearly all the inventors."

[4] Skyline points out that the patent prosecution was "handled by a Boston law firm," but fails to acknowledge that the original application was prepared and filed by a San Francisco patent law firm. Declaration of Darryl M. Woo in Support of Keyhole, Inc.'s Reply in Support of Its Motion to Transfer Venue ("Woo Decl."), Ex. A. In any event, Skyline does not explain how its law firm's testimony would be important or that it is willing to waive the attorney-client privilege to facilitate any such testimony.

business would be detrimentally affected, if they were required to travel to Massachusetts for this litigation.

Skyline accuses Keyhole of misstating the presence of Massachusetts witnesses. Opposition at 4-5. Keyhole, however, does not allege that Skyline has no potential witnesses residing in Massachusetts. Rather, Keyhole argues that because Skyline can specifically name but a single Massachusetts witness, it is clear that the vast majority of potential witnesses reside in the Northern District of California. Indeed, Keyhole has already identified 12 likely witnesses, including all of its senior management, senior engineering staff, and sales and marketing executives. This is more than twice the number of Skyline's possible witnesses even if Mr. Yaron and *all four* of Skyline's Massachusetts sales and marketing employees were called to testify.

### C. Skyline Has Significant Contacts With the Northern District of California.

Skyline attempts to minimize the significance of its connections with California by insisting that its relationships with Oracle and Intel are insignificant and do not "require" travel[5] to California. Opposition at 7. Skyline even argues that its relationships with Oracle and Intel have *never required* a visit to California. *Id.*

Skyline's own website speaks to the contrary. In it, Skyline announced that on September 9, 2003, its CEO, Paul Collins, traveled to San Francisco to take part in the "Oracle Open World" tradeshow, where he demonstrated Skyline's product during the keynote presentation of Craig Barrett, the CEO of Intel Corporation. Woo Decl. Ex. B. Further, Mr. Yaron's declaration concedes that Skyline employees *do* travel to California on business at least on occasion. *See* Yaron Decl. ¶ 5 (stating that employees "rarely" travel to California, thereby conceding that they *do* travel there at least sometimes).

Further, Skyline's argument regarding the accessibility of Keyhole's website to Massachusetts residents should not be a factor in deciding this motion, but to the extent that it is,

---

[5] Skyline seems careful to say only that travel to California is not "required" for their relationships with its California business partners, but stops short of stating that no such travel has in fact occurred.

Keyhole notes that Skyline also operates a web site from which anyone in the country, including Californians, can purchase Skyline software.[6]

### D. Keyhole's Corporate Structure is Irrelevant to Deciding This Motion.

Skyline references the recent acquisition of Keyhole by Google Inc. (also, incidentally, based in the Northern District of California) in arguing that Keyhole should bear the financial burden of litigating in Massachusetts. Opposition at 7. Skyline's assumption is baseless and should be disregarded. First, Skyline cannot join Google through the back door as some sort of "ghost" party by suggesting that Google is now somehow liable or otherwise responsible for reimbursing Keyhole's expenses. Google is not a party to this case. Wholly unsubstantiated comments by Skyline's counsel regarding Google's financial condition have no place in this argument.

In fact, not only is Google not a party to this case, it is a party to a separate lawsuit concerning the patent-in-suit in the Northern District of California. On November 18, 2004, Google filed a complaint in the United States District Court for the Northern District of California against Skyline seeking declarations that it does not infringe the '189 patent, and that the claims of the '189 patent are invalid. Woo Decl., Ex. C. Any dispute that Skyline has with Google regarding the patent-in-suit thus must be resolved in the Northern District of California.

Finally, Google and Keyhole are in any event separate legal entities. Although a subsidiary of Google, Keyhole is a separate corporation and thus a distinct "person." Skyline cannot rely on facts regarding Google in order to escape the fact that this case should be adjudicated in California, not Massachusetts, though Google's base in California would also support transfer there. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent

---

[6] Skyline also suggests that Keyhole is targeting Massachusetts customers because its website offers a flyover of Boston, Opposition at 6, but this is at best a red herring attempt to confuse a personal jurisdiction analysis with the venue inquiry. Keyhole further notes that to the extent the locations of the exemplar cities are at all relevant, Skyline's web site offers 3D city views of San Francisco (available at http://www.skylinesoft.com/corporate/go3d/go3d_home.asp?Start=10), San Diego (available at http://www.skylinesoft.com/corporate/go3d/go3d_home.asp?Start=9), Los Angeles (available at http://www.skylinesoft.com/corporate/go3d/go3d_home.asp?Start=5) , and Westlake (available at http://www.skylinesoft.com/corporate/go3d/go3d_home.asp?Start=14), California.

corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citations omitted).

### III. CONCLUSION

For the reasons outlined above and in its opening brief, Keyhole respectfully requests that the Court transfer venue of this matter to the Northern District of California.

Dated: December 1, 2004          By its Attorneys,

FENWICK & WEST LLP

_____/s/ Darryl M. Woo_____
Darryl M. Woo, admitted *pro hac vice*

Nelson G. Apjohn (BBO No. 020373)
NUTTER McCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Phone: (617) 439-2000
Fax:    (617) 310-9000

*Of Counsel admitted Pro Hac Vice:*
Darryl M. Woo
C. Maclain Wells
Kent Kemeny
FENWICK & WEST LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Phone: (415) 875-2300
Fax:    (415) 281-1350

Attorneys for Defendant and Counterclaimant Keyhole, Inc.