```
1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3       * * * * * * * * * * * * * * * *
                                       *
4       SKYLINE SOFTWARE SYSTEMS, INC. *
                     Plaintiff         *
5                                      *
             VERSUS                    *   CA-04-11129-DPW
6                                      *
        KEYHOLE CORPORATION            *
7         GOOGLE, INC.                 *
                     Defendants        *
8       * * * * * * * * * * * * * * * *

9           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10              UNITED STATES DISTRICT COURT JUDGE

11                 HEARING - DECEMBER 20, 2004

12      APPEARANCES:

13      H. JOSEPH HAMELINE, ESQ. AND JOHN LAPLANTE, ESQ.,
        Mintz, Levin, Cohn, Glovsky & Popeo, PC, One Financial
14      Center, Boston, Massachusetts 02111, on behalf
        of the Plaintiff
15
        DARRYL M. WOO, ESQ., Fenwick & West, LLP, Silicon
16      Valley Center,801 California Street, Mountain View,
        California  94041-2008, on behalf of the Defendants,
17      Keyhole Corporation and Google, Inc.

18      NELSON G. APJOHN, ESQ., Nutter, McClennen & Fish, LLP,
        World Trade Center West, 155 Seaport Boulevard,
19      Boston, Massachusetts  02210-1699, on behalf of
        the Defendant, Keyhole Corporation
20
                            Courtroom No. #1 - 3rd Floor
21                          1 Courthouse Way
                            Boston, Massachusetts 02210
22                          3:15 P.M. - 3:40 P.M.

23         Pamela R. Owens - Official Court Reporter
              John Joseph Moakley District Courthouse
24                1 Courthouse Way - Suite 3200
                    Boston, Massachusetts  02210
25      Method of Reporting:  Computer-Aided Transcription
```

2

```
 1                    CA-04-11129-DPW

 2                    DECEMBER 20, 2004

 3         THE CLERK:  Would counsel please identify

 4   themselves for the record?

 5         MR. WOO:  Good afternoon, Your Honor.  Darryl

 6   Woo of Fenwick & West for Defendant, Keyhole, Inc.  With

 7   me is Nelson Apjohn.

 8         MR. APJOHN:  Good afternoon, Your Honor.

 9         MR. HAMELINE:  Joseph Hameline of the law firm

10   of Mintz, Levin.  With me is John LaPlante, also of the

11   firm of Mintz, Levin.  And we represent the plaintiff in

12   this action, Skyline Software.

13         THE COURT:  I'm a bit perplexed, I guess, Mr.

14   Woo, about what role Google is playing here.  It wants

15   to be a party in the Northern District of California,

16   but it doesn't want to be a party here?

17         MR. WOO:  That's correct, Your Honor.  The

18   sequence of events was this:  Skyline sent on November

19   16th a letter to Google accusing them of infringement.

20   And two days later, we filed an action for declaratory

21   relief out there in California.

22         THE COURT:  Right.

23         MR. WOO:  It wasn't until December 6th that

24   Skyline sought to add Google to the action here.

25         THE COURT:  Well, but the briefing that you've
```

3

1    given me suggests that Google doesn't belong here for
2    subject matter purposes or personal jurisdiction if
3    that's one of the issues. I misstated it. That we'd be
4    piercing a corporate veil to get Google here.
5            MR. WOO: It seems that that's what they're --
6            THE COURT: Then why did you sue out there?
7    Do you mean you don't have the authority to raise the
8    issue?
9            MR. WOO: We didn't sue out here, Your Honor.
10           THE COURT: Out there.
11           MR. WOO: Pardon me?
12           THE COURT: Out there is California.
13           MR. WOO: Out there, yes. We sued in
14   California because they were accusing us there of
15   directly infringing. But here it looked like the
16   complaint is based on the acquisition of Keyhole as
17   opposed to --
18           THE COURT: There's no question, is there,
19   that there is a dispute about infringement by Google
20   now, right?
21           MR. WOO: They are accusing Google of
22   infringement.
23           THE COURT: And you presumably filed in good
24   faith a declaratory judgment action in California?
25           MR. WOO: That's correct.

```
 1            THE COURT:  That you have a judicial issue
 2   that you can present on behalf of Google, right?
 3            MR. WOO:  That's correct.
 4            THE COURT:  So, now the question really is
 5   where we do this.
 6            MR. WOO:  Right.
 7            THE COURT:  Now, as I understand it -- you'll
 8   correct me if I'm wrong -- the critical mass for
 9   purposes of Skyline is here in Massachusetts if there's
10   any place?
11            MR. WOO:  Well, for Skyline, they have really
12   one witness.
13            THE COURT:  Where are their operations?
14            MR. WOO:  Well, they have an office in Woburn,
15   but they are a Delaware corporation.
16            THE COURT:  Where are their basic operations?
17            MR. WOO:  Basic operations -- well, according
18   to their filing with the Commonwealth, their principal
19   place of business is Chantilly, Virginia.
20            THE COURT:  That's where one of their officers
21   -- or one or two of their officers are.
22            MR. WOO:  Well, that's where they hold
23   themselves out as having their place of business.  I
24   mean, they could have amended at some point to reflect a
25   different place, but they're telling the world that they
```

```
 1    are located in Virginia.
 2              THE COURT:  What do you understand they're
 3    doing in Chantilly?
 4              MR. WOO:  That I don't know, Your Honor.
 5    Their CEO -- I believe Mr. Collins -- is there.
 6              MR. APJOHN:  Correct.
 7              MR. WOO:  And besides, the focus of a patent
 8    case is -- as the law of this district, the 1st Circuit
 9    holds, is that it's focused on the alleged acts of the
10    infringer, the development, the operation, the design of
11    the accused product.  All the witnesses for that are out
12    in California.  We have identified eight of such
13    witnesses, two of whom are ex-employees that are no
14    longer within our control.  We wouldn't be able to bring
15    them to trial -- to force them to trial here.  There's
16    also a very significant --
17              THE COURT:  Would you be able to bring them
18    out there?
19              MR. WOO:  Pardon me?
20              THE COURT:  Would you be able to bring them to
21    trial out there?
22              MR. WOO:  Yes, we could.  They live within the
23    Northern District and that's where we're seeking to
24    transfer the case.  They would be subjected to the
25    subpoena power of the court there.  There's also a
```

1   significant invalidity case here, Your Honor.  At the
2   core of the Skyline patent, their claimed innovation is
3   that while they render a picture of the earth, you start
4   with low resolution, blurry pictures, and you end up
5   with a higher resolution picture that's a sharper image
6   of whatever you want in terms of your desired clarity.
7   And to anyone who has used a camera or binoculars, that
8   concept isn't a new one and, in fact, that's been
9   applied to computers out in California since the early
10  '90s.  And that's also where all the prior art is
11  located in terms of witnesses as well.  Again, that's a
12  situation where we can't bring them to the District of
13  Massachusetts except through videotaped testimony.  And
14  because we have the burden of proof by clear and
15  convincing evidence, we really prefer to be able to
16  bring them live to testify about how that came out in
17  the early '90s because of the burden of proof.  It also
18  turns out that some of these prior art witnesses are
19  competitors as well and they're like to be resistant to
20  discovery efforts.  It seems to me that --
21          THE COURT:  I don't understand that.  I mean,
22  you take discovery wherever you can take discovery.  The
23  real issue is whether or not you have to use videotape
24  depositions for purposes of trial.  That's the only
25  issue.

1          MR. WOO: Well, that is a big issue. But
2   sometimes during the course of a technical person's
3   deposition of a competitor, there will be discovery
4   issues that arise. And because of the time zone
5   difference, it would be harder to get the Magistrate on
6   the line, for example, to resolve a dispute in real
7   time. But that's the only reason. Other than that,
8   you're absolutely right, Your Honor. That doesn't make
9   that much of a difference. But being able to bring them
10  to trial, testify live when your burden of proof is
11  clear and convincing evidence, we think is a significant
12  issue.
13         THE COURT: So everytime a defendant raises
14  invalidity, it has a significant issue sufficient to
15  overcome the first filing presumption?
16         MR. WOO: Not everytime, Your Honor, not
17  everytime.
18         THE COURT: Well, how is this different from
19  any other kind?
20         MR. WOO: Because it turns out that the prior
21  art witnesses are in California as opposed to some other
22  jurisdiction. We have not identified -- been able to
23  find any here. Also, we haven't been able to find any
24  -- for that matter, any significant business partners of
25  Skyline that are here in Massachusetts. Their major

1   business connections are with Oracle Corporation and
2   Intel, both headquartered in the Northern --
3         THE COURT: Well, you say that. They say
4   they aren't really doing anything that affects this
5   particular case with either Oracle or Intel.
6         MR. WOO: Well, I guess that remains to be
7   seen through discovery. But the only point we're making
8   is that since they do business in California, it's not
9   unreasonable for them to --
10        THE COURT: And you do business in
11  Massachusetts.
12        MR. WOO: We have two or three customers here,
13  not a lot. And, again, all the development which is at
14  the heart of the case is all done in California. All
15  their engineers are there. Again, the fact that the
16  company was acquired by Google, there's no question that
17  Google is more substantial in terms of a financial
18  entity, but we're still talking about the same core
19  group of engineers who have knowledge of this particular
20  product and their development. The design team is still
21  very small.
22        THE COURT: All right. Mr. Hameline, --
23        MR. HAMELINE: Yes, Your Honor.
24        THE COURT: -- who do you have here that is
25  going to be a significant witness or a series of

```
 1    significant witnesses?
 2              MR. HAMELINE:  I put them in Mr. Urome's (ph.)
 3    affidavit.
 4              THE COURT:  Right.
 5              MR. HAMELINE:  It's clearly Mr. Urome.  It's
 6    Urome.  It is the CFO who is here.  I think they are
 7    going to be the three primary witnesses who are --
 8              THE COURT:  How does the CFO get into this?
 9    If we're talking about the technicalities of a patent
10    infringement, the inventors are in Israel, right?
11              MR. HAMELINE:  One of the inventors is.  The
12    primary inventor and President is here in Massachusetts.
13    He's in Woburn.
14              THE COURT:  And the co-inventor is in Israel?
15              MR. HAMELINE:  The co-inventor is in Israel,
16    correct.  And the development teams are both here and in
17    Israel.
18              So, to get back to your question of the
19    financial issues, the financial issue -- I mean, there
20    clearly are technical issues in terms of infringement
21    and invalidity.
22              THE COURT:  Let's address the question for the
23    moment of where the development that's going to go in
24    dispute took place.  What's in dispute is what Keyhole
25    did, right?  They say there is a substantial invalidity
```

1    case.  I don't know.  But in any event, they say that

2    that invalidity case is going to be affected by prior

3    art that is located and developed in California.  So,

4    what do you have to say to that?

5              MR. HAMELINE:  Well, two points:  One is they

6    have named some certain invalidity witnesses.  They call

7    them validity witnesses who happen to be inventors who

8    invented in the general field.  I frankly doubt that any

9    of those inventors are going to have truly relevant --

10   maybe one is going to have truly relevant information

11   about these patents.  The flip side of arguing an

12   invalidity case is the validity case --

13             THE COURT:  Right.

14             MR. HAMELINE:  -- the testimony of the

15   inventors.  The testimony of the technology group for

16   Skyline is clearly equally, if not more important, I'd

17   assume that in the course of the invalidity issues that

18   are being raised by people at Google, that they're going

19   to raise other issues and clearly they're focused on the

20   ones that they can focus on in California.  I mean, this

21   is a technology that I see that they're going really to

22   invalidity.  They're going to go out and try to comb the

23   libraries and try to find something.  I don't know what

24   they're going to come up with.  It certainly got through

25   the Patent Office fairly cleanly in terms of prior art.

```
 1    So, I can't comment on whether they're going to come up
 2    with more than the one patent that I think they're
 3    really looking at.  The inventor there is in California.
 4    Soon they're going to want others.  But for validity
 5    purposes, clearly an equal weight is in Massachusetts in
 6    terms of when the invention was sought or was made and
 7    what those steps were or what the invention is, et
 8    cetera.  I think that's an equal balancing issue.
 9              THE COURT:  Well, I'm going to deny the motion
10    to change venue here.
11              As to the motion to amend the complaint, there
12    is a dispute, I guess, with Google.  I'm not sure that
13    the complaint in its present form is the way to raise
14    that properly.  It does sound like, smell like piercing
15    the corporate veil.  And what you're really talking
16    about is ongoing infringement by Google, aren't you?
17    Isn't that what you're talking about?
18              MR. WOO:  Absolutely, Your Honor.  I think
19    we've pretty clearly alleged that.  I don't think
20    there's any question about paragraph -- let me make sure
21    I have the --
22              THE COURT:  Well, let me put it this way:  I'm
23    going to give you ten days to file an amended complaint.
24    I'm going to permit Google to be brought into this
25    action in this jurisdiction.  They have, of course,
```

1    filed

2    their own declaratory judgment action which seems to me

3    to be about an admission as to their interest in the

4    litigation of this matter.

5            MR. WOO:  As to Google's alleged direct

6    liability, Your Honor, their action is the first filed

7    action.  So the action here against them should be

8    subject to dismissal based on --

9            THE COURT:  I don't think so.

10           MR. WOO:  Very well, Your Honor.

11           THE COURT:  So they're going to be here

12   in this case.  And this case is not going to get

13   transferred to the Northern District of

14   California.

15           MR. WOO:  Very well, Your Honor.

16           THE COURT:  So you can -- if you're happy to

17   go with that one, you can go with that one.  I don't

18   want a lot of motion practice on this or I will find it

19   tedious after a very short time.

20           MR. HAMELINE:  I understand.  Paragraph (10),

21   let me just read it to you.  I'm not --

22           THE COURT:  If you're satisfied with it,

23   that's fine.

24           MR. HAMELINE:  I will take a look at it.

25           THE COURT:  But what I'm saying is that you

```
 1   will file no later than January 7th the amended
 2   complaint that you want to proceed with.  I am saying
 3   that you will be permitted to bring or go into this
 4   action here.
 5            Now, the question of scheduling and so on,
 6   can you work it out yourselves or am I going to have to
 7   get deeply involved in this?
 8            MR. WOO:  We have really tried to do that,
 9   Your Honor.  We have a fundamental difference of opinion
10   on the ordering, not so much the dates, but the
11   ordering.  Now we proposed phased discovery so as to try
12   to minimize the cost to both parties.
13            We propose, for example, that the first part
14   -- the first phase of discovery be limited to claim
15   construction issues -- that is, deposing the inventors.
16   There are only two of them.  We could probably do that
17   -- have them done here in Massachusetts done in January.
18   We could -- well, actually, what we need before then is
19   their infringement contentions so we know what we're
20   talking about, then depose the inventors, and we'd be
21   ready to brief claim construction in March.
22            THE COURT:  I'm sorry.  Did you have a
23   proposal, a written proposal with respect to this?
24            MR. WOO:  We did.  It's in the joint
25   scheduling conference statement that was filed.
```

```
 1              MR. HAMELINE:  Do you want that letter, Your
 2   Honor?
 3              THE COURT:  I haven't pulled it out.  I should
 4   have.
 5              MR. HAMELINE:  It's pages three and four.
 6              THE COURT:  Maybe if you could pass it up.  I
 7   have it in the back of my mind.  I've seen it, but I
 8   can't put my hands on it right away.
 9              MR. WOO:  I think I have an extra copy here
10   somewhere.
11              THE COURT:  All right.  I promise to give it
12   back if it's your only copy.
13              MR. HAMELINE:  I've got one here, Your Honor.
14              THE COURT:  I think Ms. Rynne is going to be
15   back in a moment.
16              MR. HAMELINE:  I put one with yellow
17   highlighting on it.  I was talking with you on the
18   phone.
19              MR. WOO:  That's fine.
20              NOTE:  [Document passed to Court]
21              THE COURT:  Well, I think I'm going to adopt
22   the defendant's -- at least initial -- phase of this
23   discovery.  That means that the filings with respect
24   to claim construction issues and proposed claim
25   constructions will be made on March 4th; that the
```

```
 1    plaintiff's opening claim construction brief will be
 2    also on March 4th; responsive claim construction brief
 3    by Keyhole on March 25th; and a reply by Skyline on
 4    April 8th.  And we will try and schedule a claim
 5    construction hearing promptly thereafter.  And I think
 6    I'm going to make that -- I might as well do it now.
 7    I'll make it on April 27th.
 8              MR. HAMELINE:  Your Honor --
 9              THE COURT:  April 27th at 2:30.  I think it is
10    important -- from what little I know about this -- to
11    get this framed promptly.  So that's what I will do and
12    then we'll see where we go from there after that.
13              MR. WOO:  Very well.
14              MR. HAMELINE:  Thank you, Your Honor.  I must
15    be hard of hearing.  You said 2:30?
16              THE COURT:  2:30.  Yes.  Let me pass this
17    back.
18              MR. HAMELINE:  Thank you, Your Honor.
19              Do you want to schedule the rest of this fact
20    discovery or wait until --
21              THE COURT:  I want to wait until I've gotten
22    to the claim construction.  I think you should be
23    prepared to have some alternative schedules to talk
24    about at that hearing as well.  You'll have a better
25    idea of how much farther we're going to go, if at all,
```

16

1   on that at that point.
2           MR. HAMELINE:  Sure.
3           MR. WOO:  Can we have an order that the
4   inventor will do -- the Israeli witness, inventor
5   witness, be deposed in Boston?
6           THE COURT:  Is there any reason why he can't
7   be?
8           MR. HAMELINE:  I don't know.  I assume that
9   that will happen unless there are significant personal
10  issues.  I can't imagine there would be.
11          THE COURT:  I think it should.
12          MR. HAMELINE:  Yes.
13          THE COURT:  You got the lawsuit here in
14  Massachusetts, so --
15          MR. HAMELINE:  Absolutely.
16          THE COURT:  -- I think this is where the --
17          MR. HAMELINE:  I don't know whether her baby is
18  being born or some other personal issue.  But absent all
19  of that, absolutely.
20          THE COURT:  Right.  I think -- I'm clearly
21  convinced that the inventor will be deposed here in
22  Massachusetts.
23          MR. WOO:  Very well, Your Honor.
24          THE COURT:  Okay.  Anything else?
25          MR. HAMELINE:  One other issue, Your Honor.

1   We've been talking about putting a protective order
2   together on that, that we've really gotten to any nub of
3   any issues other than that we're going to do that and
4   try to agree on something.  Are there any particular
5   issues that Your Honor has?
6              THE COURT:  No.  I leave it pretty much up to
7   the parties, particularly on something like this, to
8   work it out, assuming that it's reasonable.  I have no
9   fixed rules about reasonableness in this context.  Okay.
10  All right.
11             MR. WOO:  Very well, Your Honor.
12             THE COURT:  Thank you very much.
13             MR. HAMELINE:  Thank you very much, Your
14  Honor.
15             RECESSED AT 3:40 P.M.
16
17                    C E R T I F I C A T E
18             I, PAMELA R. OWENS, Official Court Reporter,
19  U. S. District Court, do hereby certify that the
20  foregoing is a true and correct transcription of the
21  proceedings taken down by me in machine shorthand and
22  transcribed by same.
23
24              *[signature]* Pamela R. Owens 1/4/05
25