IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> KEYHOLE, INC., and GOOGLE INC. <br><br> Defendants. | CIVIL ACTION NO. 04-11129 DPW |

**DEFENDANTS' SURREPLY BRIEF REGARDING CLAIM CONSTRUCTION**

**LEAVE TO FILE GRANTED**

Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax: (617) 310-9000

Attorneys for Defendants and
Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

Of Counsel
Darryl M. Woo, admitted *pro hac vice*
Maclain Wells, admitted *pro hac vice*
Kent E. Kemeny, admitted *pro hac vice*
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Tel. (415) 875-2300
Fax (415) 281-1350

**INTRODUCTION**

Skyline's Reply Memorandum On Its Proposed Claim Construction ("Skyline Reply") is so rife with misstatements of the patent and of the law that Defendants are compelled to respond. Evidently hoping that it would get the last written word, Skyline misstates Defendants' arguments, mischaracterizes the content of Dr. Feiner's declaration, and cites out of date caselaw, thereby misleading the Court. Defendants thus submit this brief to set the record straight.

Skyline's Reply is in furtherance of its "non-construction" of the claims, with proposed constructions so vague that they are essentially meaningless and offer no assistance to the trier of fact. Skyline's ploy is no doubt an attempt to keep its constructions a moving target so as to best mold its impermissible "nose of wax" according to the accused product later when it obtains detailed information on Keyhole's products. *See Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a 'nose of wax.'").

Skyline furthermore attempts to hide its complete failure to provide any expert testimony and its reliance instead on attorney argument by disparaging Dr. Feiner's declaration as confusing and muddying an "otherwise unambiguous record." Skyline Reply at 1. Ironically, Skyline itself relies exclusively on its attorneys' interpretation of the patent language while at the same time suggesting that Dr. Feiner's declaration is meaningless because it "relies … on the language of the Patent itself." Skyline Reply at 2. Thus, reliance upon the patent claims and specification is acceptable, even preferred, when it suits Skyline's attorneys' argument,[1] but suddenly becomes meaningless when placed into its correct context as how one of ordinary skill in the art would read it, as explained by Dr. Feiner. Such a duality is improper and an invitation to error.

---

[1] As shown below, the patent language does not support Skyline's constructions. Rather, it only arguably does so when Skyline misquotes it or distorts Defendants' use of it.

Skyline also attempts to disparage Dr. Feiner's declaration and Defendants' brief with the accusation that Defendants have the "sole purpose of avoiding infringement." Skyline Reply at 1. To the contrary, Defendants' goal during this phase of the case is to accord the patent its proper context and scope given how the claim language and specification would be understood by one of ordinary skill in the art.

**THE COURT SHOULD ADOPT ALL OF DEFENDANTS' PROPOSED CONSTRUCTIONS THAT SKYLINE DID NOT ADDRESS**

At the outset, it should be noted that Skyline argues that the Court should adopt its proposed construction for the terms "processor" and "communication link," simply because Defendants did not offer their own constructions for these terms in their responsive brief. Skyline Reply at 4-5. What's good for the goose is good for the gander. Should the Court be so persuaded, it should likewise adopt all of Defendants' proposed constructions that Skyline did not address. *See* Exhibit 3 of the Declaration of Darryl M. Woo In Support of Defendants' Claim Construction, filed previously with Defendants' Responsive Claim Construction Brief.

**SURREPLY ARGUMENT**

**A.    Defendants' Proposed Constructions are Properly Supported by Dr. Feiner's Opinion as to the Understanding of One of Ordinary Skill in the Art.**

Skyline evidently believes that this is such a "straight-forward infringement case" that the Court need not bother with the understanding of one of ordinary skill in the art.[2] Skyline Reply

---

[2] Skyline appears to be suggesting that there is nothing complicated about the claimed invention, and therefore an explanation of the invention by one of ordinary skill in the art would not assist the Court. Defendants agree that the difference between the patent claims and the prior art, if any exists at all, is indeed trivial and obvious. However, it does not follow that evidence of the understanding of one of ordinary skill in the art is therefore irrelevant or improper. Regardless of the invention's technological complexity or its distinctions over the prior art, a patent must be construed from the perspective of one of ordinary skill in the art. *See, e.g., Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004); *see also Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) ("[C]onsultation of extrinsic evidence is particularly appropriate to ensure that [the judge's] understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art.").

at 1-4.  Consequently, Skyline claims that "the Court should give no weight" to the Feiner Declaration, in which Dr. Feiner explains how one of ordinary skill in the art would read the patent.  According to Skyline, because "the Patent and the intrinsic evidence leave no ambiguity as to the meaning of the claim terms in dispute," the Court only need re-write the patent claims in the broad terms advocated by Skyline's attorneys.  *See* Skyline Reply at 4.  Skyline must resort to this smokescreen because it can point to only one source of support for its faulty claim construction: the argument of Skyline's counsel.  Because there is absolutely no evidence that Skyline's constructions are contextually within the bounds of the disclosed technology and hence, as they would be understood by one of ordinary skill in the art, Skyline is improperly asking the Court to ignore Dr. Feiner's understanding of the patent in favor of the understanding of Skyline's counsel.  *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("The touchstone for discerning the usage of claim language is the understanding of those terms among artisans of ordinary skill in the relevant art at the time of invention… Thus, this court sets the meaning of claim terms by ascertaining their technological and temporal context"); *Invitrogen Corp. v. Biocrest Mfg.*, L.P., 327 F.3d 1364, 1367 (Fed. Cir. 2003).  Skyline's lofty claims of proposing constructions according to the understanding of one of ordinary skill in the art are, in reality, nothing more than attorney argument, and should be taken for what they are: lip service.

       Further, at least some of Skyline's criticisms of Dr. Feiner are unabashedly false.  Skyline attempts to find fault with Dr. Feiner by claiming that he did not provide his understanding in the right time frame (*i.e.*, the patent application's filing date), review the prosecution history, or review the prior art.  *See* Skyline Reply at 3.  However, Dr. Feiner clearly stated in his declaration his understanding that patents are construed "from the perspective of a person of ordinary skill in the relevant art *at the time the patent application was filed*."  Feiner Decl. ¶ 10 (emphasis added).  He also clearly stated that he reviewed the prosecution history.  Feiner Decl. ¶¶ 9-10.  Finally, he proffered his understanding in light of his many years of experience in the computer graphics field, dating back to 1985, and his experience with computer graphics

technologies that long pre-date the '189 patent.  Feiner Decl. ¶¶ 4-8.  Dr. Feiner's understanding of the prior art is thus informed by his accumulated knowledge of the art since at least 1985, more than 10 years before the '189 patent's application was filed.[3]

As such, Dr. Feiner relied not only on the language of the patent, but also his extensive experience in the field of computer graphics technologies.  That approach is exactly what is required by the cases, which hold that claim construction begins with the words of the claims, *see Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001), as understood by one of ordinary skill in the art, *see Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).  Dr. Feiner's Declaration does precisely what the law requires.  He reviewed the patent in the context of the technology at issue and provided his opinion as to how the claims terms would be understood by a person of ordinary skill in the art at the time of the patent application's filing.  Skyline's construction merely indicates how its counsel would draft a construction based on his zealous advocacy for his client.

**B.     The Court May Properly Rely Upon Dr. Feiner's Declaration**

In arguing that the Court should ignore Dr. Feiner's declaration, Skyline cites caselaw that is nearly a decade old, ignores subsequent legal developments, and misinterprets the holdings of other cases.  For example, Skyline relies heavily on *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996), a 1996 case, for the proposition that consideration of Dr. Feiner's Declaration is improper.  *See* Skyline Reply at 3.

However, the Federal Circuit in *Vitronics* did *not* hold that expert testimony on claim construction is impermissible, but merely cautioned that it may not always be reliable, and that it should not be used to "vary or contradict the manifest meaning of the claims."  *Id.*  Importantly, the court in *Vitronics* acknowledged that expert testimony *can* be important in arriving at a

---

[3] Skyline's criticisms of Dr. Feiner are also hypocritical in that nowhere does Skyline itself provide any evidence that its constructions are contextually within the proper time frame.  Neither does Skyline itself cite to any portion of the prosecution history, or any prior art in attempting to arrive at its proposed constructions.  Skyline is thus itself genuinely guilty of the flaws that it falsely attributes to Dr. Feiner.

proper construction. *Id.* at 1584 ("in [some] instances, extrinsic evidence ... may ... properly be relied upon to understand and construe the claims.").

*Vitronics*, furthermore, was decided in 1996, and Skyline ignores Federal Circuit cases decided since then holding it appropriate to consider expert testimony in claim construction. In *Key Pharmaceuticals v. Hercon Laboratories Corp.*, for example, the Federal Circuit expressly clarified the *Vitronics* holding:

> This court has made strong cautionary statements on the proper use of extrinsic evidence, *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996), which might be misread by some members of the bar as restricting a trial court's ability to hear such evidence. We intend no such thing.

161 F.3d 709, 716 (Fed. Cir. 1998).

One year later, in *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, Judge Michel, who authored the majority opinion in *Vitronics*, wrote for the court in rejecting the patentee's argument that the district court had erroneously relied on extrinsic evidence. 182 F.3d 1298 (Fed. Cir. 1999). The *Pitney Bowes* court held that "*Vitronics* does not prohibit courts from examining extrinsic evidence, even when the patent document is itself clear" and "does not set forth any rules regarding the admissibility of expert testimony into evidence." *Id.* at 1308. The opinion continued:

> Certainly, there are no prohibitions in *Vitronics* on courts hearing evidence from experts.… [U]nder *Vitronics*, it is entirely appropriate, perhaps even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field.… Although the patent file may often be sufficient to permit the judge to interpret the technical aspects of the patent properly, consultation of extrinsic evidence is particularly appropriate to ensure that his or her understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art.

*Id.* at 1308-09.

Two years later, in 2001, the Federal Circuit adopted the Supreme Court's view that expert testimony was "indispensable" to construing claims, and that "it would undoubtedly be

error in the court to reject the testimony." *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001); *see also Generation II Orthotics Inc. v. Medical Tech. Inc.,* 263 F.3d 1356, 1366-67 (Fed. Cir. 2001).

Additionally, the District of Massachusetts has embraced the holding of *Pitney Bowes* in permitting expert testimony to aid the court during claim construction. *See Biogen v. Berlex Lab.*, 113 F. Supp. 2d 77, 114 (D. Mass. 2000) (permitting expert testimony "even if the intrinsic evidence is clear" because "'the process of claim construction at the trial court level will often benefit from expert testimony which may (1) supply a proper technological context to understand the claims (words often have meaning only in context), (2) explain the meaning of claim terms as understood by one of skill in the art (the ultimate standard for claim meaning), and (3) help the trial court understand the patent process itself (complex prosecution histories - not to mention specifications - are not familiar to most trial courts).'") (quoting *Pitney Bowes*, 182 F.3d at 1314 (Rader, J., writing additional views)).

Here, Dr. Feiner is not varying or contradicting the meaning of the claim terms, but as the *Vitronics* court and courts since then recognize, he is appropriately supplying the proper technological context to explain the meaning of the claim terms and how they would be understood by one of ordinary skill in the art.

Skyline's mischaracterization of the pertinent law is also exemplified by its selectively editing out a portion of a quote from a Federal Circuit case that directly contradicts Skyline's argument. Skyline explains and quotes *Omega Engineering, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1332 (Fed. Cir. 2003) thusly: "(stating that 'expert testimony and declarations … cannot be used to vary the plain language of the patent document).'" Skyline Reply at 3. Skyline uses the ellipsis in this quote to edit out the portion that *contradicts its argument*. The entire quote reads: "Although expert testimony and declarations ***are useful to confirm that the construed meaning is consistent with the denotation ascribed by those in the field of the art***, *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1168 (Fed. Cir. 1999), such extrinsic evidence cannot be used to vary the plain language of the patent

document." *Omega Eng'g, Inc.*, 334 F.3d at 1332 (emphasis added). This case therefore does not support Skyline's assertion that Dr. Feiner's declaration is impermissible, but to the contrary, holds that such declarations are "useful" in claim construction, even though they cannot by themselves vary the plain language of the claim.

**C.     Skyline Is the Party Attempting to Take Two Bites from the Apple**

Skyline argues that Defendants are unnecessarily construing claim phrases twice, but Defendants do no such thing, and it is *Skyline* that is attempting to take two bites of the apple. *See* Skyline Reply at 15. Defendants are not being redundant but seek constructions for some of the larger phrases in which individual terms appear to provide the necessary context for the claim as a whole and to afford the claims the proper scope.

For example, the meaning of the phrase "receiving from the renderer one or more coordinates in the terrain along with indication of a respective resolution level" cannot be ascertained simply by plugging in definitions for various words within that phrase, particularly under Skyline's erroneous view of what a "renderer" is. According to Skyline, because the preamble in each claim recites the word "comprising," the included term "renderer" is completely open-ended and may include any manner of functionality instead of being defined by its three functions recited by the patent. *See* Skyline Reply at 10.

As further explained below, this aspect of Skyline's approach to claim construction is ludicrous and contrary to law. Use of the term "comprising" means that a patent claim need not recite every aspect of the invention needed for its practical function and that a device employing elements in addition to those claimed could still constitute the invention (e.g., such things as power cords need not be claim elements), not that every claim term within the recited elements are themselves also completely open-ended. *See, e.g., Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) ("'Comprising' is not a weasel word with which to abrogate claim limitations."); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986)

(holding that the transitional term "comprising" opens a method claim to the inclusion of additional unclaimed steps, but does not affect the scope of the steps themselves).  If individual terms within a claim also received such open-endedness by the magic incantation of "comprising," patents would have virtually unlimited scope, since every conceivable additional functionality would be considered as included within each claim term despite being unrecited.

Particularly if Skyline's erroneous, open-ended construction were accepted, but even if it is not, when read in context, the phrase is properly understood to mean that an object *other than the renderer* receives the one or more pairs of coordinates in the terrain along with the indication of a respective resolution level.  Feiner Decl. ¶ 42.  One of ordinary skill in the art would understand that an object does not receive data from itself.  Feiner Decl. ¶ 43.

Thus, the correct scope of the patent can only be established by construing the phrase as a whole.  Merely construing the terms "renderer" and "coordinates in the terrain" does not provide the entire meaning in context, since according to Skyline, a "renderer" can have multiple, unrecited functions in addition to the three functions by which it is defined in the patent.  *See* Skyline Reply at 10.  To prevent Skyline's "renderer" from being so malleably capable of receiving data from itself, it is necessary to construe the phrase as a whole.

Defendants simply seek construction of this and other key phrases in the context of the surrounding claim language.  Skyline's decision not to provide its own construction for such phrases does not mean that the constructions proposed by Defendants should be ignored.[4]

Skyline also argues that the Court should altogether ignore Defendants' proposed constructions for all the terms and phrases for which Skyline did not provide an alternative

---

[4] Skyline repeatedly insists that it would be improper for the Court to construe a claim term or phrase for which Skyline has not offered a competing construction because such would be an "advisory opinion." Skyline cannot dodge a construction of a term by simply refusing to provide its own construction.  Were that the law, Skyline could avoid claim construction altogether by proposing no constructions of its own whatsoever.  Rather, Skyline again misstates the law to suit its purpose.  Because Skyline has accused Defendants of infringing each claim of their patent, there is in fact an actual case or controversy sufficient to support the Court's ability to construe each of the asserted claims.  *See* 28 U.S.C. §§ 1331, 1338(a), 2201; *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993).  It should be noted further that while Skyline insists that adoption of Defendants' unopposed constructions would result in improper "advisory opinions," Skyline hypocritically asserts at the same time that its own constructions should be adopted where Defendants have not offered competing constructions.

construction or response. Skyline Reply at 21. Skyline suggests that these constructions are "unnecessary" because "[i]t is legal error to construe claim terms for which there is no actual controversy" citing *Vivid Tech., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Skyline Reply at 21. As explained in Defendant's Opposition to Skyline's Attempted Request For Reconsideration, submitted March 25, 2005, and Defendants' Opposition to Skyline's Motion For Clarification of Scheduling Order and Motion to Compel, filed on February 7, 2005, this case actually stands for the opposite conclusion for which Skyline cites it. The Federal Circuit affirmed the district court's *rejection* of the patentee's argument that the court "could not properly construe the claims until, at a minimum, there had been sufficient discovery of the accused device to understand which claim elements and what aspects of their interpretation were at issue, lest courts construe things that are not in dispute, thus rendering an advisory opinion." *Id.* at 803. Again, *Vivid Technologies* arrived at the Federal Circuit via the District of Massachusetts. *Vivid Techs. v. American Sci. & Eng'g*, 997 F. Supp. 93, 95 (D. Mass. 1997), *aff'd*, 200 F.3d 795 (Fed. Cir. 1999). Thus, the Federal Circuit affirmed a holding of this District that rejected the very argument that Skyline now attempts to make.

Moreover, Skyline's argument is ridiculous and again hypocritical. Skyline has asserted that Defendants allegedly infringe each and every claim, and Defendants have asserted that these claims are invalid. Plainly, these claims are in dispute. Skyline's refusal to provide constructions for 22 of the 24 claims that Skyline itself asserts, and its failure to respond to Defendants' constructions of these claims, does not in any way suggest that these phrases are not in dispute and that the Court should just ignore them. Moreover, when Skyline proposed constructions for terms that Defendants did not, Skyline did not suggest that those terms be ignored lest the Court render an unconstitutional advisory opinion, but argued instead that the Court should adopt Skyline's constructions because they are unopposed.

## THE COURT SHOULD ADOPT DEFENDANTS' PROPOSED CONSTRUCTIONS OF THE DISPUTED TERMS

Skyline's Reply contains numerous errors and mischaracterizations of Defendants' arguments and constructions. They are too legion to address in this surreply, so only some of the most egregious examples are addressed below.

### "data block"

Skyline changed its tune when explaining this claim term in its Reply. In its opening brief, Skyline described a data block as "*images* stored in the database," wherein the "*image* of the terrain is divided into blocks" as shown in Figure 2. Skyline Opening Brief at 10 (emphasis added). Skyline then explained how the data blocks are processed to provide images of varying resolutions. *Id.*

Yet in its Reply, Skyline argues that a data block "is *not* a picture or an image." Skyline Reply at 7 (emphasis added). For support, Skyline misstates the specification, suggesting that '189 patent, col. 16:9-26 affirms that a data block of terrain can include "stock values that are to be graphically represented." Skyline Reply at 6. The portion cited by Skyline, however, does *not* say that stock values can be data blocks of terrain, but that "the data streaming methods of the present invention may be used to convey large databases of data which are to be displayed graphically, such as in graphic displays of stock values." 189 patent, col. 16:20-23. The cited passage states that the "data streaming methods of the present invention" can be applied to stock data, *not* that the stock data is encompassed by the data blocks of terrain.

Further, merely because subject matter is mentioned in the specification does not mean that that material is covered by the claims. Skyline may have made reference to stock market data in the specification, but it chose to claim only "data blocks describing three-dimensional terrain to a renderer." '189 patent, Claim 1. Matter that is disclosed in the specification but not claimed is deemed dedicated to the public, not swept into the invention as claimed in order to broaden it. *See Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir.

2002) ("[W]hen a patent drafter discloses but declines to claim subject matter … this action dedicates that unclaimed subject matter to the public.").

### "renderer"

Skyline mischaracterizes Defendants' argument here solely as a "straw man" to try to strike it down on grounds that are completely irrelevant. Skyline suggests that Defendants' construction of renderer limits the renderer to performing three and only three functions. Skyline Reply at 9-10. This is a distortion of the facts. Nevertheless, Skyline proceeds to analyze why a renderer, as defined in the patent, may perform more than three steps. Skyline's argument is an exercise in futility, however, because Defendants suggested only that the renderer must perform *at least* the three identified functions.

Skyline's error does not end there, however. Skyline's construction swings the pendulum all the way in the other direction, arguing that the renderer need *only* perform "one or more steps of the recited method." Skyline Reply at 11. Once again, Skyline's construction is far too broad and is unsupported. Though the renderer may perform some functions other than those identified, there are some functions that a renderer may *not* perform. For example, a renderer cannot receive terrain coordinates and a resolution level from itself or provide data blocks to itself. *See, e.g.,* '189 patent, col. 16:32-34; col. 18:21-24; Feiner Decl. ¶¶ 43, 56; Exhibit 3 to Woo Decl. at 1 (Claim 1 construction: "an object other than the renderer receiving from the renderer one or more pairs of numerical coordinates"), and at 8 (Claim 12 construction: "an object running on a processor, other than the renderer, receives from the renderer one or more pairs of numerical coordinates"). There must be some other object *separate* from the renderer that receives terrain coordinates and a resolution level and provides data blocks. *Id.* Otherwise the claim would make no sense. The renderer would have no need to provide data blocks to itself if it already had the data blocks. Similarly, for the other object to receive terrain coordinates and a resolution level *from* the renderer, the renderer must be in possession of that information and provide it, as claimed.

Additionally, Skyline misrepresents the role of the renderer vis-à-vis the cache manager as explained in the patent.  Skyline states that the cache manager may perform the step of determining the coordinates of terrain data, citing '189 patent, col. 11:24-27.  Skyline Reply at 9-10.  This portion of the specification, however, states that it is the *renderer* that determines the coordinates of terrain data.  '189 patent, col. 11:22-24 (either object can identify the blocks, but only the renderer "determines the coordinates").  Once the renderer determines the needed coordinates, either the renderer or the cache manager determines the identity of the required blocks.  *See* '189 patent, col. 11:24-28.  ("Renderer 72 determines the coordinates of the pixels it needs in order to render the view and requests the descriptions of these pixels from a cache manager 74.  Preferably, renderer 72 determines which blocks 42 and/or sub-blocks 43 include the required pixels.  Alternatively, cache manager 74 determines the identity of the required blocks 42 and/or sub-blocks 43.").  Once Skyline's misrepresentation is corrected, its argument is eviscerated.

## CONCLUSION

For the foregoing reasons, and those identified in Defendants' Responsive Claim Construction Brief, the Court should adopt the correct constructions as set forth in Exhibits 2 and 3 to the Woo Declaration, previously filed on March 25, 2005.

Dated:  May 5, 2005                                 Respectfully submitted,

                                                                By:  ____/s/ Darryl M. Woo_____
                                                                        Darryl M. Woo
                                                                        **FENWICK & WEST LLP**
                                                                        email: dwoo@fenwick.com

                                                                        Attorneys for Defendants and
                                                                        Counterclaimants
                                                                        KEYHOLE, INC. and GOOGLE INC.