IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEYHOLE, INC. and GOOGLE, INC., ) <br> Defendants. ) | CIVIL ACTION NO.  04-11129-DPW |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO POSTPONE
RULING ON PLAINTIFF'S PRELIMINARY INJUNCTION MOTION**

Rather than use the thirty day extension of time, requested by Defendants and agreed to by Plaintiff, to respond to the substance of the issues raised in Plaintiff Skyline Software Systems, Inc.'s ("Skyline") Motion for a Preliminary Injunction, Defendants Keyhole, Inc. ("Keyhole") and Google Inc. ("Google") instead expend significant time and effort trying to explain why they should not have to respond at all.  The present Motion constitutes no more than a delay tactic by which Defendants seek to further avoid providing any non-infringement position to Skyline.  In support of their *Motion to Take Plaintiff's Motion for Preliminary Injunction Off Calendar*, Defendants trump up a litany of excuses for why the Court should allow them to continue to "hide the ball."  None of the excuses proffered by Defendants in their Motion have merit or otherwise excuse or cure the irreparable harm being done to Skyline through Defendants' patent infringement and aggressive market practices aimed at eliminating Skyline as a competitor.

**ARGUMENT**

**A.     Defendants' "Delay" Argument Is Misplaced.**

Defendants' primary argument is that Skyline waited too long in seeking preliminary

injunctive relief from the Court. While this argument may be relevant to Defendants' (yet to be filed) opposition to Skyline's Preliminary Injunction Motion, it is not a valid basis for Defendants' instant Motion. Not only is Defendants' "delay" argument irrelevant, it is factually wrong.

Defendants repeatedly argue that Skyline has waited "fourteen months" since initially filing suit to seek preliminary injunctive relief. *See* Defendants' Br. at 1-2, 4. But even Defendants recognize that Skyline originally brought this case against Keyhole, a small company, and that Keyhole was later bought by a multi-billion dollar Internet search engine, Google. *Id.* at 4. They further concede that Defendants began offering the infringing Google Earth technology to customers free of charge less than six months ago. *Id.* Just *three days ago*, Google announced that this version of its Google Earth product is "officially leaving beta status." Declaration of Geri L. Haight ("Haight Decl."), Exh. B (Google Blog Announcement, Jan. 10, 2006). Not only is there only now certainty as to the final version of Defendants' infringing product, but Defendants' recent activities in the marketplace compelled Skyline to seek injunctive relief.

Since drastically slashing the cost of its infringing products so as to render Skyline unable to compete, Defendants have moved more and more aggressively into the relevant markets in which Skyline enjoyed widespread success before Defendants' rampant infringement began. This phenomenon did not occur overnight. Rather, with increasing frequency, Defendants have penetrated the high-end 3D terrain visualization market based on their infringing technology. Even more recently, Defendants locked up rights to a vendor that provides the highest resolution 3D terrain data for use in Defendants' infringing product. Skyline's request for preliminary injunctive relief is not based on the mere fact that Google

bought Keyhole. It is based on the actions that Defendants have taken in the marketplace following that acquisition, particularly following the release of the free Google Earth product.

Defendants rely upon a number of cases in which courts denied preliminary injunctive relief based on a plaintiff's delay in seeking such relief. *See* Defendants' Br. at 5. None of the cited cases, however, have the same fact pattern as presented here. In this case, after filing the Complaint, the originally named defendant was acquired by a multi-billion dollar corporation that subsequently slashed the cost of the infringing product and moved aggressively into all competitive markets for the plaintiff's patented technology. The pervasive and aggressive marketing strategies used by Defendants have enabled them to rise from relative obscurity to market dominance within a matter of months following the release of the Google Earth products in July 2005. This is not surprising given Google's (compared to Keyhole's) substantial financial muscle. As one commentator has noted since the filing of Skyline's Preliminary Injunction Motion, Google's actions do not "make it easy for Skyline to survive in a world that seems to run on Google, or at least is owned by it." *See* Haight Decl., Exh. C ("Rival Calls For Shutdown Of Google Earth," *IP Law Bulletin*, Jan. 9, 2006). These circumstances are rather unique, and are not found in any of the cases relied upon by Defendants. Defendants have drastically altered the climate in the marketplace -- to Skyline's detriment. If Defendants are allowed to continue this trend, Skyline may not only lose market share, it may be permanently prevented from practicing its patent altogether.

As explained in the supporting declaration of Aharon (Ronnie) Yaron, Skyline's President, Defendants are using Skyline's patented technology to interfere with Skyline's business. As Mr. Yaron explains:

> [a]t virtually every sales opportunity, Skyline is told that Google has visited or is scheduled to visit that potential client. Customers

3

> ask why they should purchase from a small company as opposed to a billion dollar entity that is offering the product at a greatly discounted rate.

Yaron Decl., ¶16. Such interference will not only continue, but will increase exponentially absent an injunction and will result in irreparable harm to Skyline in the form of lost sales, lost market share and adverse price erosion.

This fact is evidenced by events that occurred just in the days since the filing of Skyline's Preliminary Injunction Motion. First, as mentioned above, just days ago Defendants announced that its Google Earth for personal computers is "officially leaving beta status." Haight Decl., Exh. B. Not only is the infringing Google Earth product now in its final form but, with increasing frequency, commentators are crediting Google -- an infringer of Skyline's patent rights -- as being an "innovate[or]" in the 3D terrain mapping field that Skyline pioneered. *See* Haight Decl., Exh. D ("It Feels Like You're Flying," *BusinessWeek*, Jan. 16, 2006). Indeed, in the January 16th edition of *Business Week*, entitled "It Feels Like You're *Flying*," claims that "Google's innovations set its mapping apart." *Id.* It was Skyline, not Google or Keyhole, that pioneered the inventions covered by the patent-in-suit entitled "Remote Landscape Display *and Pilot Training*." Yet, as evidenced by this article, the world of 3D terrain mapping is increasingly associated with *Defendants' infringing products*, not Skyline's patented invention.

Any delay in ruling on Skyline's Preliminary Injunction Motion will only result in further (and unnecessary) irreparable harm to Skyline. The Court, therefore, should reject Defendants' request to postpone indefinitely its opposition to Skyline's Preliminary Injunction Motion by taking that Motion "off calendar." Similarly, the Court should reject Defendants' requests to postpone their opposition until thirty days after the Court issues its claim construction ruling, as

no such extension is needed in order for Defendants' to respond to Skyline's preliminary injunction request.

> **B.     Skyline's Preliminary Injunction Motion Focuses Properly On *Infringement*.**

Defendants make arguments about everything but why Skyline instituted this action and sought preliminary injunctive relief:  Defendants' increasingly widespread infringement of Skyline's patented technology.  Instead, Defendants argue that, in its Preliminary Injunction Motion, Skyline somehow seeks to "re-argue" its claim construction position or introduce additional evidence related to Defendants' infringing system while arguing claim construction. *See* Defendants' Br. at 1, 5-7.  Skyline did not introduce additional evidence on claim construction.  It briefed its preliminary injunction request by relying on the claim interpretations previously offered by *both* parties.[1]  And Defendants are equally capable of doing the same.

Skyline's Preliminary Injunction Motion does appropriately rely on evidence relating to the accused products (all of which is found in the public domain given the absence of discovery in this case), evidence that was not at issue during the claim construction proceedings.  The relevant inquiry in Skyline's Preliminary Injunction Motion is whether Skyline can demonstrate a reasonable likelihood of proving that at least one claim of its patent is infringed, and is not invalid.  *See, e.g.*, *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).  In the claim construction context, on the other hand, the inquiry focuses on the "intrinsic record," *i.e.*, the claim language of the asserted patent, its specification, and prosecution history.  *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *Markman v. Westview*

---

[1] At the time Skyline filed its Preliminary Injunction Motion, it did not even have the benefit of reviewing the transcript of the *Markman* hearing held on April 27, 2005.  Despite Skyline's requests following that hearing, the parties did not receive the transcript until January 12, 2005. Declaration of Geri L. Haight, Esq., ¶ 2, Exh. A (requests to court stenographer).  The

5

*Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  Therefore, the accused devices (in this case, the Google Earth products) had limited relevance in the claim construction context.  *See, e.g.*, *Vivid Technologies, Inc. v. American Science & Eng'g*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("AS&E is correct that … the claims are construed objectively and without reference to the accused device.").  But they are central to a determination of Skyline's Preliminary Injunction Motion, where the Court must compare the construed claims to the accused products to determine whether Skyline has demonstrated a likelihood of success on the merits of its patent infringement claims.  *Markman*, 52 F.3d at 979.  As such, any "new" evidence now offered by Skyline about the accused products relates directly to the "new" issue of infringement, the core issue presented for the Court's consideration of Skyline Preliminary Injunctive Motion.

  Defendants wrongly suggest that Dr. Terry Keating, who submitted a declaration in support of Skyline's request for injunctive relief, opines on the "construction of disputed claim terms."  *See* Defendants' Br. at 5.  To the contrary, Dr. Keating does not offer his own proposed claim construction.  From the point of view of one of ordinary skill in the relevant art at the time of the invention, he simply assumes the claim interpretations previously offered by both parties in his analysis of the accused Google Earth products and puts them in the appropriate context.  *See, e.g.*, Keating Decl., ¶¶ 7-8, 13, 15-21, 24-26.  Moreover, Defendants' assertion that Skyline submitted Dr. Keating's declaration because it "previously elected not to submit any expert declaration" during the claim construction briefing is particularly unfounded in light of the Federal Circuit's intervening *Phillips* ruling.  *See* Defendants' Br. at 5-6.  In that *en banc* decision, which issued after the *Markman* hearing in this case, the Federal Circuit made clear

---

availability of this transcript further undercuts Defendants' arguments regarding their purported

that, in the claim construction context, it views extrinsic evidence, such as expert declarations, as "less reliable than the patent and its prosecution history in determining how to read claim terms[.]" *Id.*, 415 F.3d at 1318. The Court reasoned further that expert reports and testimony "generated at the time of and for the purpose of litigation … can suffer from bias not present in intrinsic evidence." *Id.* The *Phillips* decision provides a basis for *discounting* the expert declaration offered by Defendants during the claim construction proceedings, not an incentive for Skyline to submit an expert opinion on claim construction now.

### C. Defendants, Not Skyline, Improperly Seek To Alter The Discovery Schedule In This Case.

To date, Defendants have not provided Skyline with *any* statement of its non-infringement position, nor has it provided Skyline with *any* evidence to support its simple assertion that it does not infringe the patent-in-suit. Skyline filed its Preliminary Injunction Motion based on publicly available documentation about the infringing Google Earth products, including admissions contained on Defendants' own websites and in their product brochures and manuals. Based on these admissions alone, Skyline demonstrates a likelihood of success on the merits of its patent infringement claims. Defendants now argue that, by filing a motion based on publicly available documents, Skyline is somehow trying to do an "end-run" around the discovery schedule in this case. *See* Defendants' Br. at 2 n.3. *See also id*. at 1, 6. This argument is absurd. Notably, Skyline did not request expedited or any discovery in aid of its Preliminary Injunction Motion.

It is Defendants, not Skyline, who now ask the Court to "reconsider" its Order phasing discovery by requesting that they be allowed to depose Dr. Keating. *See id.* at 8. Defendants do not need discovery to explain why their products (allegedly) do not infringe Skyline's patent.

---

inability to respond to Skyline's Motion.

Defendants know how their products work and, at least in their claim construction briefing, purported to understand the legal and technical meaning of the scope of Skyline's asserted patent claims. Defendants have all of the evidence at their fingertips to explain their purported non-infringement position to Skyline and to the Court. Defendants can protect any non-public or proprietary information by filing that information under seal or through the entry of a protective order.[2] Yet, Defendants refuse to do so. Instead, they seek to depose Dr. Keating before disclosing *any* information in order to tailor their non-infringement argument around his testimony. This approach is inherently unfair to Skyline and should not be allowed.[3] Rather, the Court should order Defendant to file their opposition to Skyline's Motion on February 3rd, as requested by Defendants and agreed to by Skyline. If Defendants rely upon an expert declaration in opposition to Skyline's Motion, and the Court believes that it would benefit from expert testimony at the hearing on Skyline's Motion, the parties can present testimony from both experts at such a hearing.

## **CONCLUSION**

As Defendants have failed to offer any valid basis for delaying resolution of the issues raised in Skyline's Preliminary Injunction Motion, Skyline respectfully requests that the Court deny Defendants' Motion in its entirety.

                                                                     Respectfully submitted,

                                                                     SKYLINE SOFTWARE SYSTEMS, INC.,

---

[2] Skyline's counsel circulated a proposed protective order to Defendants' counsel during the first months of the litigation, but received no real response. Defendants again circulated a proposed protective order on January 10, 2006, but has yet to receive any response. *See* Haight Decl., ¶ 3.

[3] It should be noted that Skyline was not permitted to depose Defendants' expert, Steven K. Feiner, Ph.D., regarding the declaration that he submitted in support of Defendants' proposed claim construction. *See* Docket No. 50. Defendants should similarly be barred from deposing Dr. Keating prior to filing their response to Skyline's Preliminary Injunction Motion.

By its attorneys,

/s/ H. Joseph Hameline
H. Joseph Hameline, BBO# 218710
Geri L. Haight, BBO# 638185
Mintz, Levin, Cohn, Ferris
 Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
Tel.  (617) 542-6000
Fax  (617-542-2241
hhameline@mintz.com

Dated: January 13, 2006

### Certificate of Service

I hereby certify that on January 13, 2006, I caused a true and accurate copy of the foregoing document to be served upon all counsel of record for each party, by complying with this Court's Administrative Procedures for Electronic Case Filing.

/s/ H. Joseph Hameline
H. Joseph Hameline, BBO #  218710

LIT 1556622v.1

9