# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC., | |
| Plaintiff, | CIVIL ACTION NO. 04-11129 DPW |
| v. | |
| KEYHOLE, INC., and GOOGLE INC. | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### [PUBLIC REDACTED VERSION]

### [HIGHLY CONFIDENTIAL VERSION IS FILED UNDER SEAL PURSUANT TO DEFENDANTS' MOTION TO IMPOUND AND AGREED UPON RESTRICTIONS ON ACCESS AND USE]

Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax: (617) 310-9000

Attorneys for Defendants and
Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

<u>Of Counsel</u>
Darryl M. Woo, admitted *pro hac vice*
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Tel. (415) 875-2300
Fax (415) 281-1350

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................... 1

II.  STATEMENT OF FACTS .................................................................... 2

     A.   Procedural Background................................................................ 2

     B.   The '189 Patent .......................................................................... 4

     C.   The Accused Google Earth Products ........................................ 6

III. ARGUMENT......................................................................................... 9

     A.   Skyline Fails to Establish It Will Suffer Any Harm, Let Alone an
          Irreparable One, Absent a Preliminary Injunction................................. 9

          1.   Skyline's Significant and Unexcused Delay Undermines Any
               Claim of Imminent Irreparable Injury and Justifies Denial of
               Skyline's Motion.................................................................... 10

          2.   Skyline's Unsubstantiated Argument and Conclusory Assertions
               Fail to Establish that Denial of Its Motion Will Cause an
               Irreparable Injury .................................................................. 13

               a.   Skyline Offers No Actual Evidence That It Is Suffering
                    Irreparable Harm.............................................................. 13

               b.   Skyline Has Not Shown That Alleged (Unsubstantiated)
                    Harm Is Caused by Defendants.......................................... 14

     B.   Skyline Will Not Succeed on the Merits......................................... 15

          1.   Google Earth Does Not Infringe the '189 Patent..................... 16

               a.   Under Any Claim Construction, Google Earth Does Not
                    Infringe Claim 1 ............................................................. 16

                    (1)   Google Earth does not perform the step of
                          "receiving from the renderer one or more
                          coordinates in the terrain along with indication of a
                          respective resolution level"....................................... 17

                    (2)   Google Earth does not have a "renderer" as claimed
                          in the '189 patent .................................................. 18

                    (3)   Google Earth does not have "data blocks belonging
                          to a hierarchical structure"...................................... 20

               b.   Under Defendants' Claim Construction, Google Earth Also
                    Does Not Meet the Last Clause of Claim 1 ........................ 21

**TABLE OF CONTENTS**
**(continued)**

Page(s)

c.  Google Earth Does Not Infringe Claim 12 of the '189
    Patent................................................................................................ 22

2.  The '189 Patent is Vulnerable to Defendants' Invalidity Challenges...... 23

    a.  The Asserted Claims of the '189 Patent are Invalid for Lack
        of Novelty ....................................................................................... 24

    b.  The Asserted Claims of the '189 Patent are Obvious.................. 25

C.  The Balance of Hardships and the Public Interest Further Support Denial
    of Skyline's Motion ............................................................................................ 26

    1.  The Requested Injunction Works the Greatest Hardship to
        Defendants .................................................................................................. 26

    2.  Denying the Injunction Serves the Public Interest in the Right to
        Competition.................................................................................................. 27

D.  Any Injunction Must Be Supported by a Bond................................................. 28

IV. CONCLUSION........................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abbott Labs v. Selfcare, Inc.,*
  17 F. Supp. 2d 43 (D. Mass. 1998) ............................................................... 12

*Akrie Lures, Inc. v. Gene Larew Tackle, Inc.,*
  119 F.3d 953 (Fed. Cir. 1998) ...................................................................... 25

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
  239 F.3d 1343 (Fed. Cir. 2001) ................................................... 10, 16, 24, 25

*American Permahedge, Inc. v. Barcana, Inc.,*
  857 F. Supp. 308 (S.D.N.Y. 1994) ............................................................... 11

*Charlesbank Equity Fund II v. Blinds To Go,*
  370 F.3d 151 (1st Cir. 2004) ........................................................................ 13

*Crucible Materials Corp. v. Sumitomo Special Metals Co. Ltd.,*
  719 F. Supp. 14 (D.D.C. 1989) ..................................................................... 11

*Cybermedia, Inc. v. Symantec Corp.,*
  19 F. Supp. 2d 1070 (N.D. Cal. 1998) .......................................................... 28

*Dana Corp. v. American Axle & Mfg., Inc.,*
  279 F.3d 1372 (Fed. Cir. 2002) .................................................................... 23

*Gillette Co. v. Energizer Holdings, Inc.,*
  405 F.3d 1367 (Fed. Cir. 2005) ...................................................................... 9

*Glaxo Group Ltd. v. Apotex, Inc.,*
  376 F.3d 1339 (Fed. Cir. 2004) .................................................................... 23

*Graham v. John Deere Co.,*
  383 U.S. 1 (1966) ......................................................................................... 25

*Helifix Ltd. v. Blok-lok, Ltd.,*
  208 F.3d 1439 (Fed. Cir. 2000) .................................................................... 24

*High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,*
  49 F.3d 1551 (Fed. Cir. 1995) ...................................................................... 11

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.,*
  906 F.2d 679 (Fed. Cir. 1990) ........................................................... 10, 26, 27

*Intel Corp. v. ULSI Sys. Technology, Inc.,*
  995 F.2d 1566 (Fed. Cir. 1993) ...................................................................... 9

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.,*
  205 F.3d 1377 (Fed. Cir. 2000) .................................................................... 16

*Mannesman Demag Corp. v. Engineered Metal Prods. Co.,*
  793 F.2d 1279 (Fed. Cir. 1986) .................................................................... 16

*Markman v. Westview Instruments, Inc.,*

## TABLE OF AUTHORITIES
### (continued)

Page(s)

52 F.3d 967 (Fed. Cir.1995).................................................................. 16

*Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.,*
446 F.2d 353 (5th Cir. 1971) .................................................... 13

*New England Braiding Co., Inc. v. A.W. Chesterton Co.,*
970 F.2d 878 (Fed. Cir. 1992)................................................... 23

*Nutrition 21 v. United States,*
930 F.2d 867 (Fed. Cir. 1991)............................................. 9, 10, 12, 23

*Oakley, Inc. v. Sunglass Hut International,*
316 F.3d 1331 (Fed. Cir. 2003)................................................ 17

*Polymer Techs., Inc. v. Bridwell,*
103 F.3d 970 (Fed. Cir. 1996)................................................... 9

*Read Corp. v. Powerscreen of America,*
26 F. Supp. 2d 204 (D. Mass. 1998) ................................... 10, 11, 12

*Reebok Int'l, Ltd. v. J. Baker, Inc.,*
32 F.3d 1552 (Fed. Cir. 1994)............................................... 10, 26

*Rockwell Int'l Corp. v. United States,*
147 F.3d 1358 (Fed. Cir. 1998).............................................. 23

*Russell William, Ltd. v. ABC Display and Supply, Inc.,*
11 U.S.P.Q.2d 1812 (E.D.N.Y. 1989)................................... 10, 12

*Smith Int'l, Inc. v. Hughes Tools Co.,*
718 F.2d 1573 (Fed. Cir. 1983).......................................... 15, 24

*TI Group Auto Sys., Inc. v. VDO N. Am. L.L.C.,*
375 F.3d 1126 (Fed. Cir. 2004).............................................. 16

*Verdegaal Bros., Inc. v. Union Oil Co.,*
814 F.2d 628 (Fed. Cir. 1987).................................................. 24

Statutes

35 U.S.C. § 102(b) ......................................................................... 24

35 U.S.C. § 103............................................................................. 26

Fed. R. Civ. P. 65(c) ..................................................................... 28

I.    **INTRODUCTION**

*Nineteen months* after this lawsuit was filed and *fourteen months* after Google was added as a co-defendant, Skyline belatedly seeks the extraordinary remedy of a preliminary injunction. Skyline comes to this Court *fourteen months* after Defendants reduced the price of their product, now claiming that such conduct is the cause of some "mounting and irreparable harm." But it comes without any new facts, and without any reason for its delay. In short, Skyline has no explanation for why it waited over a year to complain about circumstances that have existed since Google was brought into this lawsuit. Such substantial and unjustified delay undermines any claim of irreparable harm, and alone warrants denial of this Motion. Skyline's inability and failure to demonstrate a likelihood of success on the merits also defeats its Motion. Its infringement claims are based on a complete misunderstanding of Defendants' product. Meanwhile, the '189 patent suffers from serious questions of validity. Any of these reasons is sufficient grounds for denying Skyline's Motion for Preliminary Injunction.

Skyline boldly asserts that it is being irreparably harmed by Defendants' decision to lower the price of its Google Earth products. Did that reduction occur just prior to the filing of Skyline's Motion? No. Defendants lowered the price of the Google Earth products in *October 2004 – fourteen months ago*. Those price reductions plainly caused no irreparable harm; otherwise, surely Skyline would have filed its motion in 2004. Its failure to do so was a tacit acknowledgement that Defendants' activities did not, in fact, threaten it with irreparable harm. Nothing has materially changed since then except the passage of time. And the passage of fourteen months before Skyline decided to seek this extraordinary relief only further demonstrates that it has not suffered and is not suffering irreparable injury.

While Skyline alleges "an immediate and permanent" price erosion and damage to its reputation and market position, it offers no evidence of what its own prices and revenues are, or how they have been affected by Defendants, if at all. Nor does Skyline offer any declaration by an economics expert. NASA has been offering free 3D satellite imagery of the Earth, but there is no attempt to show why NASA's provision of free 3D visualization software is not instead the

source of any injury. Instead, Skyline hopes to rely on a presumption of irreparable harm; a presumption that is already rebutted by its substantial delay.

In any event, Skyline is not entitled to any presumption because it will not succeed on the merits of its infringement claims. Skyline bases infringement solely on its purported expert's speculation about how Defendants' system works after just using the software, which is as insufficient as proving a photograph was taken by a digital camera, rather than a film camera, by simply looking at the resulting picture. The '189 patent is directed to the internal operation of various software objects; things not ascertainable from mere operation. Any claimed similarity in result is irrelevant when the patented system is not employed in achieving that result. As shown by the supporting declarations of Michael T. Jones, one of the principal architects of the Keyhole software now known as Google Earth, and Professor Steven K. Feiner, Ph.D., who co-authored the authoritative text on computer graphics, Google Earth internally operates in a fundamentally different fashion, and consequently does not infringe.

In addition, there is at least a substantial question as to whether the asserted claims of the '189 patent are invalid because they are anticipated or obvious in light of the prior art. Skyline was not the first to provide satellite imagery of the Earth. Various other systems, including one developed by world famous SRI International, dating more than one year before Skyline applied for what became the '189 patent, disclosed the system claimed in the '189 patent, rendering it invalid.

Under the circumstances, Skyline is not entitled to a preliminary injunction, much less the extremely overbroad injunction it seeks. Accordingly, Skyline's Motion for Preliminary Injunction should be denied.

## II.     STATEMENT OF FACTS

### A.     Procedural Background

Defendant Keyhole began as a small software infrastructure company providing three-dimensional digital mapping software products. *See* Declaration of Michael T. Jones in Support of Defendants' Opposition ("Jones Decl.") ¶ 1. Founded in 2001, Keyhole quickly became

recognized as a three-dimensional earth visualization pioneer, and now a part of Google, continues to compete in the market with over twenty other companies. *Id.*

Skyline initiated this action against Keyhole on May 28, 2004, alleging that Keyhole's visualization software infringed the '189 patent. *See* Complaint (Docket Entry #1). Finding no merit to Skyline's infringement claims, Google, who was interested in Keyhole's technology, proceeded with an October 27, 2004 acquisition of Keyhole despite the existence of this lawsuit. *See* Skyline's Exs. 1 and 2. On the same day as the acquisition, Google announced a price reduction in Keyhole's product offerings (referred to, collectively with other products, as "Google Earth"). *Id.*

Based on the acquisition, Skyline amended its complaint to add Google as a defendant. *See* First Amended Complaint (Docket Entry #39). When seeking leave and filing its amended complaint, Skyline did not suggest to the Court that Google's entry into the three-dimensional earth visualization market was causing it, or threatened to cause it, irreparable harm. *See* Skyline's Motion for Leave to Amend (Docket Entry #26). Instead, Skyline elected simply to proceed with this lawsuit in the ordinary course.

At the initial scheduling conference in December 2005, Skyline unsuccessfully advocated a schedule with claim construction and fact discovery proceeding on parallel tracks. Rejecting this approach, the Court's Scheduling Order established a phased schedule, efficiently deferring discovery until after resolution of claim construction. *See* Court's Scheduling Order (Docket Entry #38); Declaration of Saundra L. M. Riley in Opposition to Motion for Preliminary Injunction ("Riley Decl.") ¶ 2, Ex. A at 14:21-16:1. Dissatisfied with this outcome, Skyline requested that the Court reconsider its scheduling in its Motion to Compel and Request for Clarification of Scheduling Order. *See* Motion to Compel and Request for Clarification of Scheduling Order (Docket Entry #42). The Court denied Skyline's request. *See* Court's Electronic Order Denying Motion entered February 22, 2005. In its Opening Claim Construction Brief, Skyline made a third attempt to have the Court's phasing reconsidered. *See* Skyline's Opening Claim Construction Brief at 1-2 (Docket Entry #46). It too, was unsuccessful. *See*

3

Defendants' Opposition to Attempted Motion for Reconsideration (Docket Entry #52) and Court's May 19, 2005 Order.

Not once during these requests to the Court did Skyline claim that Defendants' alleged infringement was causing irreparable harm. *See* Skyline's Opening Claim Construction Brief (Docket Entry #46) and Motion to Compel and Request for Clarification of Scheduling Order (Docket Entry #42).

The case thus proceeded through claim construction briefing and to the April 27, 2005 claim construction hearing as scheduled, without any claims that Skyline was suffering irreparable injury. Following the hearing, Skyline let another almost six months pass without any action. Finally, on October 7, 2005, Skyline made an appeal to the Court, but only to inquire as to the status of the litigation, citing its eagerness to commence substantive discovery. *See* Skyline's Letter Brief (Docket Entry #60). After three months without a response from the Court, Skyline filed this Motion for Preliminary Injunction.

Skyline's Motion should not be before this Court. Throughout this case, Skyline's conduct has indicated that it is not suffering any irreparable injury. Its delay in seeking such relief alone is dispositive. Furthermore, Skyline cannot show a reasonable likelihood of success on the merits, as the patented technology and Defendants' product are markedly and fundamentally different. Also, once discovery commences, Defendants are confident that they will obtain further evidence of the '189 patent's invalidity.

**B.    The '189 Patent**

The '189 patent, entitled "Remote Landscape Display and Pilot Training," relates to methods and apparatus for providing three-dimensional terrain images to a computer over a network for use in pilot training. *See* Riley Decl., Ex. B at col. 1:64-2:14. To effectively render three-dimensional terrain over the course of a flight route, for example, a large amount of data is required. *Id.* at col. 1:49-51. Prior art solutions provided the data in advance on CD-ROM, but because of the time needed to deliver a CD-ROM to users, users could not receive frequent or last minute updates. *Id.* at col. 1:55-61. Thus, the '189 patent contemplates streaming data

required for rendering three-dimensional images from a remote server. *Id.* col. 2:6-14.

The terrain data is stored on a remote server in a hierarchical structure. *Id.* at col. 3:13-15. Each successive level of the hierarchy contains blocks of terrain data of an increasingly higher resolution (*i.e.*, blocks having a greater amount of detail per unit). *Id.* at cols. 3:6-9, 8:61-64. The '189 patent explains that the advantages of better time performance in downloading and rendering justify the extra storage space required by the hierarchical data structure. *Id.* at cols. 3:9-12; 10:15-22. It is the hierarchical data structure that allows a data block of low resolution to be downloaded first, before data blocks of higher resolution. *Id.* at cols. 3:16-20; 3:65-4:4. Because the low resolution data blocks contain less data volume per area unit, they can be downloaded and rendered faster. *Id.* at col. 3:17-19; *see also* Motion at 8. Blocks of higher resolution covering the particular terrain area are thereafter downloaded if there is available bandwidth over the communication line. Riley Decl., Ex. B at cols. 3:20-23; 3:65-4:4. Thus, the hierarchical data structure "allows faster rendering of the images on display and allows fast download of required images at low resolution levels." *Id.* at col. 10:19-22; *see also* col. 3:1-3.

Terrain data stored on the remote servers are referenced using coordinates of one of the points in the corresponding terrain. *Id.* at col. 9:35-39; *see also* Skyline's Motion for Preliminary Injunction ("Motion") at 7. That way, a specific data block with a specific resolution can be requested and downloaded with coordinate and resolution information, avoiding the download of data blocks that do not correspond to the user's request. *See* Riley Decl., Ex. B at col. 11:19-23. When possible, the claimed method will avoid downloading from the remote server all together. *Id.* at cols. 3:50-53, 60-61; 11:62-64. If the data block corresponding to the requested area and resolution is available in local memory of the client computer, that data block is provided, eliminating the need to download anything from the remote server. *Id.* at col. 3:58-61.

Only if local memory does not carry the data block at the requested resolution will a request to download additional data blocks be sent after a data block is first provided from local memory. *Id.* at col. 3:62-64. Data blocks of successively higher resolution will continue to be downloaded until a block of the requested resolution is downloaded. *Id.* at cols. 4:29-34; 6:11-

18.

Claim 12 is the apparatus for performing the method of claim 1, comprising a local memory, a communication link, and a processor that performs the steps of claim 1. *Id.* at col. 18:12-31, Motion at 23. Therefore, the asserted claims disclose a method and apparatus that is directed to optimizing time performance in downloading and rendering terrain data obtained from a remote server. *See e.g.* Declaration of Terry Keating, Ph.D. ("Keating Decl.") ¶ 7. Importantly, the claimed method and apparatus is completely "under the hood" and cannot be ascertained from mere observation.

**C.      The Accused Google Earth Products**

Google Earth operates in a fundamentally different way, and as a consequence, its operation does not map to the method steps of the '189 patent and thus does not infringe. Unlike the '189 patent, the Google Earth paradigm is not concerned with limiting the number of downloads or the amount of data downloaded, and thus does not perform the steps of the claimed method. Instead of requesting a specific data block with a specific resolution, thus avoiding the download of data blocks that do not correspond to the user's request, ███████████████. Jones Decl. ¶ 17. ████████████████████████████████████████████████████████████████

Skyline's purported expert attempts to explain how Google Earth operates simply by using the program and reviewing screen shots. *See generally* Keating Decl. Even one of skill in the art, however, cannot determine the operation of Google Earth simply by using the product. Declaration of Professor Steven K. Feiner ("Feiner Decl.") ¶ 9. In fact, the method of operation of Google Earth is a trade secret that Defendants take great lengths in keeping confidential. *See* Declaration of Michael T. Jones in Support of Motion to Impound ¶ 2. Thus, not surprisingly, Skyline's understanding of Google Earth from its cursory use and review of public documents is not only baseless, but incorrect.

The Google Earth client software operates through various software objects ███





. Consequently, unlike in the '189 patent, coordinate and resolution information is not received *from* the Google Earth Renderer.





. Riley Decl., Ex. B at cols. 11:19-23; 4:29-34; 6:11-18.

## III.    ARGUMENT

The Federal Circuit has repeatedly cautioned "that a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Technology, Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *see Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 977 (Fed. Cir. 1996); *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991). As the party seeking such a drastic remedy, Skyline bears the burden of establishing that (1) Skyline has reasonable likelihood of succeeding on the merits; (2) Skyline will suffer irreparable harm if the injunction is not granted; (3) the balance of hardships tips in Skyline's favor; and (4) the public will be adversely impacted if the injunction is denied. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005). "[T]he absence of a sufficient showing with regard to any one factor may . . . preclude preliminary injunctive relief." *Intel*, 995 F.2d at 1570. Skyline has not met its burden with respect to any of the four factors. Its motion for a preliminary injunction should accordingly be denied.

### A.    Skyline Fails to Establish It Will Suffer Any Harm, Let Alone an Irreparable One, Absent a Preliminary Injunction

A preliminary injunction cannot issue unless the moving party will suffer irreparable injury absent the injunction. *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir.

1994). A moving party is entitled to a presumption of irreparable harm only where it makes a *clear* showing of a likelihood of success on the merits. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *see also Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 682 (Fed. Cir. 1990) (presumption did not arise because the patentee's showing of success was not "strong"); *Nutrition 21*, 930 F.2d at 871 ("reasonable likelihood of success" insufficient to raise presumption). Any such "presumption is rebutted or neutralized, however, when the movant delays a significant amount of time in seeking the preliminary injunction." *Russell William, Ltd. v. ABC Display and Supply, Inc.*, 11 U.S.P.Q.2d 1812, 1813 (E.D.N.Y. 1989); *see also Read Corp. v. Powerscreen of America*, 26 F. Supp. 2d 204, 207 n.3 (D. Mass. 1998) ("unexcused delay may rebut the presumption of irreparable harm").

Here, Skyline has not shown it will suffer any irreparable injury without injunctive relief. It waited fourteen months after learning the majority of facts upon which it relies before bringing this Motion, undercutting any sense of urgency to its request. Further, it presents no competent evidence to show it is suffering *any* injury, let alone an irreparable one. Based on either of these reasons alone, the Court should deny Skyline's Motion.

### 1. Skyline's Significant and Unexcused Delay Undermines Any Claim of Imminent Irreparable Injury and Justifies Denial of Skyline's Motion

Skyline contends that the exigency for its Motion is Google's acquisition of Keyhole and its decision to offer consumers its Google Earth services for free and its software products at reduced cost. According to Skyline's own recitation, however, these facts are not new.[1] *See* Motion at 1-2, 5. Rather, Google acquired Keyhole and announced the initial price reduction of which Skyline complains in October 2004, and provided a free software download when it officially launched Google Earth (as distinguished from its Keyhole predecessors) in June 2005. *See* Motion at 1; Riley Decl. ¶ 4, Ex. C. Skyline thus knew of the factual bases for its current

---

[1]    Defendants concurrently move to strike most of Skyline's purported evidence (*see* Defendants' Motion to Strike submitted herewith). Defendants do not waive the objections raised in that motion by citing to or relying on such alleged evidence in this Opposition.

Motion *fourteen* and *six* months, respectively, before filing this Motion.

Skyline's delay alone undermines its arguments of threatened imminent irreparable harm and should preclude the issuance of a preliminary injunction. *See High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (finding that a delay of 17 months before seeking a preliminary injunction demonstrates that there is no apparent urgency to the request for injunctive relief); *see also Read Corp.*, 26 F. Supp. 2d at 206-208 (upholding magistrate's finding that plaintiff's substantial delay "bespeaks in the loudest possible tones that plaintiff did not consider that it was being irreparably harmed by defendant's alleged infringement of its patents"); *American Permahedge, Inc. v. Barcana, Inc.*, 857 F. Supp. 308, 324 (S.D.N.Y. 1994) (failure to move for preliminary injunction for over a year "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests there is, in fact, no irreparable injury") (internal quotation and citation omitted); *Crucible Materials Corp. v. Sumitomo Special Metals Co. Ltd.*, 719 F. Supp. 14, 17 (D.D.C. 1989) ("delay shows the situation is not so urgent or emergent that a preliminary injunction should be issued").

Skyline tries to paint a grand story, beginning with allegations of infringement against Defendant Keyhole in May 2004, followed by "behemoth" Google's acquisition of Keyhole in October 2004. *See* Motion at 4-5. Yet, at no point in its story does Skyline seek preliminary injunctive relief:

- In early 2004, nearly *two years* before filing its present Motion, Skyline notified Keyhole of the alleged infringement, yet failed to act. *See* Motion at 4.

- On May 28, 2004, *over nineteen months* before filing its present Motion, Skyline filed its complaint against Keyhole and, while the complaint prayed for preliminary injunctive relief, Skyline did not request it then or at any time since, until now. *See* Motion at 4; *see also* Complaint at 4 (Docket Entry #1).

- On or about October 27, 2004, *fourteen months* before filing the Motion, Google acquired Keyhole. *See* Motion at 4-5. Google proceeded also (1) to reduce the price of the Keyhole software; and (2) to offer a free seven-day trial of that software. *Id.* Again, Skyline did not act.

- On or about June 28, 2005, *over six months* before filing its present Motion, Google launched Google Earth, which included a free software download. Google also set the yearly subscription price for its Google Earth products, including Google Earth Plus ($20) and Google Earth Pro ($400). *See* Declaration of Ronnie Yaron ("Yaron

Decl.") ¶ 9; Declaration of H. Joseph Hameline ("Hameline Decl.") ¶ 15, Ex. 11; Riley Decl., Ex. C.  Still, Skyline did not act.

- On or about October 7, 2005, Skyline represented by letter to the Count that Defendants' conduct was "severely damaging and irreparably harming Skyline."  *See* Skyline's Letter Brief (Docket Entry #60).  Nonetheless, Skyline waited nearly *another three months* to request preliminary injunctive relief.[2]

Skyline's present claims of threatened irreparable harm are completely contradicted by these repeated, substantial failures to act. *Abbott Labs v. Selfcare, Inc.*, 17 F. Supp. 2d 43, 50 (D. Mass. 1998) (stating that plaintiff's delay of 9 months before seeking a preliminary injunction suggested that the status quo does not irreparably harm it); *see Nutrition 21*, 930 F.2d at 872 (delay "for a substantial period of time before seeking a preliminary injunction at least suggests that the *status quo* does not [cause] irreparabl[e] damage").

Yet, Skyline fails even to acknowledge or *explain* its repeated failures to try to protect itself.  Skyline's failure to offer any changed circumstances justifying its belated request for preliminary injunctive relief requires that its Motion be denied, notwithstanding its claim of presumed irreparable injury.  *See, e.g. Read Corp.*, 26 F. Supp. 2d at 207 n.3 ("unexcused delay may rebut the presumption of irreparable harm").

Skyline's true concern is not the purported irreparable injury, but its dissatisfaction with the progress of the case.  *See* Motion at 5.  However, such dissatisfaction cannot justify preliminary injunctive relief after so long a delay and after so many repeated failures to act.  *See Russell William*, 11 U.S.P.Q.2d at 1813 (stating that "[a] plaintiff's dissatisfaction with the progress of a case . . . certainly is not the type of reason contemplated as an excusable delay" to justify bringing a motion for preliminary injunction 13 months after instituting the action).

Skyline's tale reveals too much:  at best it knew of the alleged injury it was suffering *and failed to act*, belying its injury claims, or at worst, its current cries of irreparable injury are subterfuge for another agenda.  In either case, Skyline's Motion lacks merit; therefore, the Court

---

[2] Skyline also argues that in July 2005 Google Earth was hailed as the most popular software download, and in November 2005, it was ranked as "Top 10 Free Downloads." *See* Motion at 5.  But this is not based on any new conduct on Defendants part.  These claims are based on activities that were previously known to Skyline.

should deny Skyline's Motion for its unexplained, substantial delay in seeking this extraordinary relief.

> **2.    Skyline's Unsubstantiated Argument and Conclusory Assertions Fail to Establish that Denial of Its Motion Will Cause an Irreparable Injury**

Having delayed over a year before filing this Motion, Skyline now requests the extraordinary relief of a preliminary injunction without the requisite evidence of the alleged irreparable injury. Skyline cannot rely on its speculative and inadmissible evidence or unsubstantiated argument to carry its burden. *See e.g., Charlesbank Equity Fund II v. Blinds To Go*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded in something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 357 (5th Cir. 1971) ("extensive use of what appear[ed] to be hearsay with respect to disputed factual issues contribute[d] to error requiring reversal" of preliminary injunction). Furthermore, while Skyline cites activities engaged in by Defendants, it makes no reference to what effect they have upon Skyline. Without more, there can be no finding of irreparable injury.

> **a.    Skyline Offers No Actual Evidence That It Is Suffering Irreparable Harm**

Skyline offers only conclusory allegations and argument to support its claims that Defendants' provision of Google Earth for free or at lower prices is squeezing Skyline out of the 3D visualization market. *See* Motion at 4-5, 27-29. While Skyline argues that Defendants' price reductions impact the market and prevent Skyline from competing, it presents no evidence of the market price for comparable products and services. *See* Motion at 27-28. It also offers no evidence of what it charges for comparable products and services, or the price it could tolerate. *Id*.

In addition, Skyline offers no *evidence*, expert or otherwise, of Defendants' actual or likely impact on the market or Skyline's reputation. Skyline argues the price reductions cause price erosion in the market, but fails to provide any foundation (in fact or expertise) for the

statement. *See, e.g.*, Motion at 28; *see also* Motion to Strike at 4-6. It does not even state whether or how its prices have been affected. *See* Motion at 1-2, 27-28. Skyline's claim that Defendants' alleged misconduct and the impact on the market will adversely impact Skyline's reputation similarly remains unsupported. *See, e.g.*, Motion at 28; Motion to Strike at 4-6.

Skyline's "evidence" of actual or threatened injury is hollow, at best. Remarkably, Skyline's factual showing leaves unanswered key questions:

- Are all of Skyline's products impacted by Defendants' alleged conduct or does Skyline have other products as well?
- What portion of Skyline's business, including sales and revenue, come from the commercial products?
- What actual impact, if any, has Defendants' activities had on Skyline's sales of or its prices for the commercial products?
- What portion of Skyline's business, including sales and revenue, come from the consumer products?
- What actual impact, if any, has Defendants' activities had on Skyline's sales of or its prices for the consumer products?
- Has Skyline experienced a decrease in customer interest?
- What impact, if any, has Defendants' alleged conduct had on the market?

These questions are central to determining whether Skyline has suffered *any* injury, yet Skyline does not even touch upon them despite Skyline's request for extraordinary injunctive relief. *See* Motion at 4-5, 27-29. Because Skyline fails to establish it will suffer irreparable injury without an injunction, the Court should deny Skyline's Motion.

      b.     **Skyline Has Not Shown That Alleged (Unsubstantiated) Harm Is Caused by Defendants**

Skyline also fails to show that any purported harm it is suffering is a consequence of *Defendants'* activities and presence in the market. First, Defendants are not the only ones providing 3D visualization software for free. For example, NASA is currently offering free comparable products providing 3D visualization of the Earth. Riley Decl. ¶ 5, Ex. D. Specifically, NASA provides World Wind 3.1 as a free download to any website visitor, allowing users to "zoom from satellite altitude into any place on Earth. Leveraging Landsat

14

satellite imagery and Shuttle Radar Topography Mission data, World Wind lets you experience Earth terrain in visually rich 3D, just as if you were there." *Id.* Thus, there are other free programs in the market, and Skyline has failed to show how Defendants, rather than others, are the cause of any alleged harm.

Skyline ignores this and instead tries to save its deficient showing by reference to an alleged contract between Google and DigitalGlobe. *See* Motion at 5, 28. Skyline has no foundation to discuss agreements to which it is not a party and to which it is not privy. *See* Motion to Strike at 4-6. Moreover, Skyline has not and cannot show that this relationship is the cause of any harm it may be suffering.

In particular, Skyline offers no evidence that it would be dealing with DigitalGlobe but for Defendants. *See* Motion at 5, 28. Skyline also offers no evidence that DigitalGlobe is the only source for the data it requires. *Compare* Motion at 5 ("DigitalGlobe is the only acceptable provider of very high resolution commercial satellite data.") *with* Yaron Decl. ¶ 11 ("DigitalGlobe is the 'premium provider of high resolution satellite imaging.'"). Furthermore, Skyline has not shown that Defendants' agreement with DigitalGlobe somehow excludes Skyline from entering into negotiations with DigitalGlobe.[3] *See* Motion at 5, 28. Without more, Skyline cannot show Defendants are causing it irreparable harm.

**B.    Skyline Will Not Succeed on the Merits**

Skyline also fails to show that it has a reasonable likelihood of success on its infringement claims. "The usual requirement of a showing of probability of success on the merits before a preliminary injunction will issue has historically been even stronger in a patent case." *Smith Int'l, Inc. v. Hughes Tools Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983). Skyline has not carried its burden of showing that Google Earth infringes the '189 patent *and* that the '189

---

[3] Skyline appears to rely on the term "exclusive" to suggest that it cannot do business with DigitalGlobe or otherwise obtain rights to use its data because of Defendants. Yaron Decl. ¶ 11. However, DigitalGlobe lists at least 18 resellers in the United States, including one that appears to provide services similar to those of Defendants. Riley Decl. ¶ 6, Ex. E. Further, the website indicates the "exclusivity" of the resellers generally applies by geographic region. *Id.* Skyline does not allege Skyline and Google are in the same geographic region and has otherwise failed to explain how any "exclusive" reseller agreement prevents Skyline from doing business with DigitalGlobe. *See* Motion at 5, 28.

patent is likely to withstand Defendants' challenges to its validity. *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1380 (Fed. Cir. 2000) (noting that the likelihood of success factor requires proof on both infringement and validity); *Amazon.com*, 239 F.3d at 1350 (same).

### 1.    Google Earth Does Not Infringe the '189 Patent

To prove infringement, Skyline must show that Google Earth meets each and every element of the asserted claims of the '189 patent. *See Mannesman Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986). The absence of any limitation in the accused products avoids literal infringement. *TI Group Auto Sys., Inc. v. VDO N. Am. L.L.C.*, 375 F.3d 1126, 1139 (Fed. Cir. 2004). Infringement requires an application of the construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984 (Fed. Cir.1995).

Skyline's understanding of how Google Earth operates, however, is based entirely upon the statements of its purported expert, who makes incorrect assumptions and conclusions about Google Earth's operation after simply navigating through the program. *See* Motion at 10-12; *see generally* Keating Decl. One cannot, however, deduce how the Google Earth software operates just by using the program. Feiner Decl. ¶ 9. Skyline's recitation is thus totally inaccurate, and its infringement analysis is consequently flawed. With a true understanding of Google Earth, as set forth in the Jones Declaration, it is clear that Google Earth operates very differently from the method described in the '189 patent; so differently as to avoid infringement for several reasons. *See generally* Feiner Decl. ¶¶ 10-18. As such, Skyline cannot demonstrate a likelihood of success on the merits.

### a.    Under Any Claim Construction, Google Earth Does Not Infringe Claim 1

A claim construction hearing was held before the Court on April 27, 2005, and the construction of the claims of the '189 patent is currently pending before the Court. Under whatever construction the Court adopts, Skyline cannot succeed in proving infringement.

**(1)    Google Earth does not perform the step of *"receiving from the renderer* one or more coordinates in the terrain along with indication of a respective resolution level"**

Claim 1 discloses a method that requires the step of *"receiving **from** the renderer* one or more coordinates in the terrain along with indication of a respective resolution level." Riley Decl., Ex. B at col. 16:32-34. The construction of the terms "coordinates in the terrain" and "indication of a respective resolution level," while still at issue, does not affect the outcome of the infringement analysis, as no object in the Google Earth software receives coordinates and resolution information *from* the renderer. *See* Jones Decl. ¶ 17.

As a preliminary matter, Skyline's Motion for Preliminary Injunction fails to acknowledge the "receiving from the renderer" limitation at all, at one point even incorrectly stating that the '189 patent "requires that the renderer receive one or more coordinates." *See* Motion at 17-19. But Skyline must carry the burden of establishing that it will likely succeed in showing that the accused product practices *each and every limitation. See Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Its failure to meet this burden, alone, defeats is Motion for Preliminary Injunction.

Even if given another opportunity to recite the claim limitation correctly, Skyline still cannot show that Google Earth meets the "receiving from the renderer" limitation.



. The method of the '189 patent contemplates the renderer providing coordinates and resolution information to request a specific data block to draw. *See e.g.* Riley Decl., Ex. B at col. 4:15-17, 35-38, 9:35-38.

[REDACTED] Because Google Earth does not meet the "receiving from the renderer" limitation of claim 1, Skyline cannot demonstrate a likelihood of success on the merits.

**(2)    Google Earth does not have a "renderer" as claimed in the '189 patent**

Furthermore, under any of the proposed constructions of the term, [REDACTED] as claimed in the '189 patent. Feiner Decl. ¶¶ 12-13. Both Defendants' claim construction and the claim construction suggested by the Court at the claim construction hearing require the claimed "renderer" to be a software and/or hardware object that sends or provides coordinates and a corresponding resolution level to another object.[5] [REDACTED] Jones Decl. ¶ 17; *see* Section III.B.1.a.(1) above.

Nor does [REDACTED] meet the "renderer" limitation under Skyline's own construction of the term. Skyline's construction requires the claimed "renderer" to perform one

---

[4] [REDACTED]

[5] Defendants proposed that "renderer" be construed as "a software and/or hardware object that performs each of the following steps: (1) determines the coordinates of the terrain data required to create an image and sends the needed coordinates along with a specified resolution level to another object; (2) receives the data blocks corresponding to the provided coordinates; and (3) uses the received data blocks to create an image." Defendants' Responsive Claim Construction Brief at 15 (Docket Entry #49).

At the claim construction hearing, the Court suggested the following construction of "renderer": a software and/or hardware object that is capable of determining and providing to another object the coordinates corresponding to a data block or blocks, along with a respective resolution level required to create an image of the terrain receiving the requested data blocks, and converting the received data blocks into images." *See* Riley Decl., Ex. F at 25:4-9.

or more of the steps of the recited method.[6]  The first two steps of
the recited method require "receiving from the renderer one or more coordinates in the terrain
along with indication of a respective resolution level" and "providing the renderer with a first
data block." Riley Decl., Ex. B at col. 16:32-34.

*Id.*

The last step of the recited method requires "downloading from a remote server." Riley
Decl., Ex. B at col. 16:40-44.

. Feiner Decl. ¶ 12-13.

Therefore, however the Court decides to construe "renderer," Google Earth does not meet
that limitation of claim 1.

---

[6] Skyline argued that "renderer" should be construed as "something that may be implemented entirely in
software or may include a dedicated hardware processor along with a software package running on a
general purpose processor, **which performs one or more steps of the recited method** and assists in the
display of the terrain based on the data provided." Skyline's Opening Claim Construction Brief at 13
(Docket Entry #46) (emphasis added).

(3)    **Google Earth does not have "data blocks belonging to a hierarchical structure"**

Google Earth also does not meet the "data blocks belonging to a hierarchical structure" limitation of claim 1 under any construction of the term. Both Skyline and Defendants advocated a construction whereby each level of the hierarchical structure contains data blocks having a different resolution than blocks in the preceding level.[7] The Court expressed a similar understanding, stating that the term referred to an "organization whereby each level contains data blocks at the same resolution, and each successive level contains data blocks of a higher resolution." Riley Decl., Ex. F at 42:15-18.

While data in the patent is organized on a remote server in successive levels of different resolutions (*Id.*, Ex. B at col. 3:3-9, 13-15),

[8] Jones Decl. ¶ 10.

As such, Google Earth's data structure is not the type of hierarchical structure claimed in

---

[7] Skyline asked the Court to construe the term as "data blocks arranged in multiple levels of resolution, wherein each level of the structure contains blocks of a different resolution." Skyline's Opening Claim Construction Brief at 12 (Docket Entry #46).

Defendants proposed that the term be construed as "data blocks that are organized into multiple levels of resolution, whereby each level contains data blocks at the same resolution, and each successive level contains blocks of a higher resolution than those in the preceding level." Defendants' Responsive Claim Construction Brief at 19. (Docket Entry #49).

[8]

Defendants reserve their noninfringement arguments regarding "data blocks" until after the Court provides a construction of that term.

the patent and does not infringe claim 1.  Feiner Decl. ¶ 14.

      **b.**      **Under Defendants' Claim Construction, Google Earth Also Does Not Meet the Last Clause of Claim 1**

During claim construction briefing, Defendants argued that the final clause of claim 1 should be construed as "downloading to the local computer from a separate computer one or more additional data blocks *each* having an amount of detail per unit area greater than the amount of detail per unit area of the first data block already in the local memory, which additional data blocks include data corresponding to the one or more coordinates received from the 'renderer,' *upon determination* of the condition that the first data block already in the local memory is not at the indicated amount of detail per unit area received from the renderer." *See* Defendants' Responsive Claim Construction Brief at 31 (Docket # 49) (emphasis added).[9] Under this construction, the patent requires a method and apparatus wherein (1) the downloaded additional data blocks are always at a higher resolution than the first block, and (2) the additional data blocks are downloaded upon a determination that the first block is not at the indicated resolution level.  If the Court adopts Defendants' construction, Defendants also do not infringe because Google Earth does not meet either of these two requirements.



---

[9] Skyline did not propose an alternate construction for this phrase, claiming that construction was unnecessary as the terms within the phrase were already being construed by the Court. *See* Skyline's Reply Claim Construction Brief at 19-20.  Thus, Skyline did not object to Defendants' construction, but merely stated that Defendant's construction should be limited to claim 1.  *Id.* at 20 fn. 14.



Therefore, Google Earth does not download additional data blocks upon a determination that the first block is not at the indicated resolution level.  Feiner Decl. ¶¶ 15-16.  Thus, there can be no infringement of claim 1 for this additional reason.

          **c.**      **Google Earth Does Not Infringe Claim 12 of the '189 Patent**

Claim 12 sets forth the apparatus implementing the method of claim 1.  *See* Motion at 23; Riley Decl., Ex. B at col. 18:12-30.  As such, among other limitations, it claims a processor that

performs each of the steps claimed in claim 1: (1) "receives one or more specified coordinates along with indication of a respective resolution level from a renderer" (2) "provides the renderer with first data block . . . from local memory" (3) "downloads over the communication link one or more data blocks of a resolution level higher than the resolution level of the first data block . . . if the first block is not from the indicated level." *See* Riley Decl., Ex. B at col. 18:12-30; *compare* col. 16:32-44.

Thus, Skyline argues that Defendants infringe claim 12 for the same reasons they infringe claim 1. Motion at 23. As explained above, however, Google Earth does not perform the steps required by claim 1. *See* Section III.B.1.a-b, above. As such, Google Earth does not have a processor that performs these steps and thus, does not infringe claim 12. Feiner Decl. ¶ 17.

## 2. The '189 Patent is Vulnerable to Defendants' Invalidity Challenges

In addition to showing infringement, "because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity[.]" *Nutrition 21*, 930 F.2d at 869. Skyline does not make any showing, and instead relies on the statutory presumption of validity. Motion at 24. But the presumption "is not evidence which can be 'weighed'" and "does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed issues at trial, even when the issue concerns the patent's validity." *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992).

Skyline also mistakenly relies on the clear and convincing standard that attaches at trial, not the standard that is applicable at the preliminary injunction stage. *See* Motion at 24-25.[10] Defendants can successfully challenge the validity of the '189 patent (*i.e.*, raise a substantial question of invalidity) on evidence that would not suffice to support a judgment of invalidity at

---

[10] Skyline cites *Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372 (Fed. Cir. 2002), *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358 (Fed. Cir. 1998), and *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004) to establish the burden of proving invalidity. Motion at 24-25. Those cases do not address preliminary injunctions and only discuss an accused infringer's burden of proving invalidity at trial, a standard not applicable to this Motion.

trial. *Amazon.com*, 239 F.3d at 1358, *citing Helifix Ltd. v. Blok-lok, Ltd.*, 208 F.3d 1439, 1352 (Fed. Cir. 2000). Thus, Defendants need not make out a case of actual invalidity. Instead, vulnerability, not invalidity, is the issue at the preliminary injunction stage. *Amazon.com*, 239 F.3d at 1359.

Here, the '189 patent is at least vulnerable to a validity challenge on the grounds of anticipation and obviousness. As the party seeking a preliminary injunction, Skyline must present a clear case supporting the validity of the '189 patent by showing either that the patent has withstood previous validity challenges in other proceedings, or a long period of industry acquiescence in the patent's validity. *Id.* at 1359; *Smith Int'l*, 718 F.2d at 1578. Skyline has made no such showing here. *See* Motion at 24-27.

      **a.**    **The Asserted Claims of the '189 Patent are Invalid for Lack of Novelty**

An alleged invention is anticipated and lacks novelty if it "was . . . described in a printed publication . . . more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b). A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim. *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987).

Skyline bases its claim of validity on the argument that Defendants' anticipating references do not constitute an invalidating reference under § 102(b) as they are not "printed publications." *See* Motion at 25-26. But in April 1994,[11] SRI International published an article entitled, "TerraVision: A Terrain Visualization System." Feiner Decl., Ex. B. Contrary to Skyline's claim, this article is indeed a § 102(b) reference having been published more than one year before the '189 patent's September 1997 priority date. The TerraVision article discloses a system for visualizing terrain that allows users to view, in real time, a virtual landscape using elevation data and aerial images. *Id.* Specifically, the reference discloses steps of the asserted

---

[11] The article is dated April 22, 1994. Feiner Decl., Ex. B. In addition, several other pre-September 1997 references cite to this article as being published and available at the SRI website in April 1994. *Id.*, Ex. C.

claims of the '189 patent. Feiner Decl. ¶ 21. At the very least, this reference raises a substantial question regarding the validity of the asserted claims of '189 patent, defeating Skyline's request for a preliminary injunction. *Id.*

### b. The Asserted Claims of the '189 Patent are Obvious

A substantial question suggesting an invention is obvious is also sufficient to defeat a motion for preliminary injunction. *Amazon.com*, 239 F.3d at 1365-66 (finding that a prior art reference raised a substantial question of validity, alone and in combination with other cited references). An obviousness analysis entails four factual inquiries: (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) any objective indicia such as commercial success, long felt need, and copying. *Akrie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1998) *citing Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

Despite having the burden on a preliminary injunction motion, Skyline has not articulated any objective indicia of the nonobviousness of the '189 patent claims, failing to address obviousness entirely. *See* Motion at 24-27. Nor can any such indicia help overcome the substantial question of invalidity raised by the following prior art references. *See Amazon.com*, 239 F.3d at 1366 (evidence of copying was insufficient to demonstrate nonobviousness due to validity questions raised by prior art references).

Specifically, there is a substantial question regarding the nonobviousness of the asserted claims of the '189 patent in light of (1) United States Patent No. 5,760,783, entitled "Method and System for Providing Texture Using a Selected Portion of a Texture Map," filed November 6, 1995 ("Migdal")[12], and (2) Michael A. Cosman's article, "Global Terrain Texture: Lowering the Cost," published June 1994 ("Cosman"). Feiner Decl. ¶¶ 20, 22, Ex. A; Riley Decl., Ex. J.

Migdal was cited by the Patent Examiner twice during prosecution of the application that issued as the '189 patent. The Patent Examiner rejected the claims that issued as claims 1 and

---

[12] Interestingly, Michael T. Jones, Chief Technology Officer of Google Earth, is a named inventor on the Migdal patent.

12, claiming that Migdal taught each of the claimed elements. *See* Riley Decl., Ex. G at 3-6,

Ex. H at 2-4. To overcome the Migdal rejection, applicants argued that Migdal did not disclose

downloading blocks of lower resolution before those of higher resolution. *See id*, Ex. I at 9-10.

Cosman is a reference cited in Migdal, and it does disclose the feature of downloading

lower resolution blocks first. *See id.*, Ex. J at 62; Feiner Decl. ¶ 22. A person skilled in the art

would have been motivated to combine Cosman with Migdal based on key language in Cosman

indicating that downloading lower resolution data blocks first ensures that in the case of a paging

overload, a lower resolution version is available and can be used. Riley Decl., Ex. J at 62; Feiner

Decl. ¶ 22. Thus, together, the references teach each element of claims 1 and 12 of the '189

patent and raise a substantial question as to whether claims are invalid as being obvious under 35

U.S.C. § 103). Feiner Decl. ¶ 22.

Therefore, Skyline cannot show a reasonable likelihood of success on the issue of

validity, and its request for a preliminary injunction should be denied on that ground also.

### C.   The Balance of Hardships and the Public Interest Further Support Denial of Skyline's Motion

Because Skyline's showing on the likelihood of success on the merits and irreparable

injury are so weak, the Court need not consider the balance of hardships or the impact of the

injunction on the public interest. *See Reebok*, 32 F.3d at 1556 ("irrespective of relative or public

harms, a movant must establish both likelihood of success on the merits and irreparable harm").

However, even these factors support denial of Skyline's Motion.

#### 1.   The Requested Injunction Works the Greatest Hardship to Defendants

In evaluating the relative hardships, the Court should balance the harm the moving party

will experience if the preliminary injunction is denied with the harm to the allegedly infringing

party if the injunction is granted. *See, e.g., Illinois Tool*, 906 F.2d at 681. "Because the court

must balance the hardships, at least in part in light of its estimate of what is likely to happen at

trial, it must consider the movant's showing of likelihood of success." *Id.* A weak showing on

the merits can tip the balance of hardships in favor of the non-moving party. *See, e.g., id.*

(affirming denial of preliminary injunction and recognizing plaintiff's "weak showing of likelihood of success tips the balance of hardships toward" defendant).

Here, the hardship Defendants will incur from issuance of an injunction outweighs the hardship that Skyline would experience if it is denied. Significantly, through this Motion, Skyline attempts to attack Defendants' business, rather than protect its own from injury. As discussed above, Part III.A., Skyline offers no competent evidence demonstrating injury to its business. It nonetheless requests a complete shut down of the entire Google Earth product line. Moreover, as discussed above, Part III.C., Skyline's showing on the infringement and validity prongs is particularly weak, further "tip[ping] the balance of hardships toward" Defendants. *See Illinois Tool*, 906 F.2d at 681.

Taking into account the lack of evidence of any injury to Skyline, the frailty of Skyline's showing on the merits, the breadth of the requested injunction, and the impact of the injunction on Defendants, particularly Keyhole, the balance of hardships supports denial of Skyline's Motion.

## 2.    Denying the Injunction Serves the Public Interest in the Right to Competition

The final factor a court considers in evaluating the propriety of a preliminary injunction is the impact the injunction will have on the public interest. *See, e.g., Illinois Tool*, 906 F.2d at 684. While the public generally has an interest in protecting patent rights, where a plaintiff's showing on the merits is weak, that interest is counterbalanced by the alleged infringer's right to compete. *Id.* (non-moving party's right to compete "must be seen as legitimate . . . in view of [the plaintiff's] 'remote' showing of likelihood of success in proving infringement at trial"). Here, Skyline's showing on the merits is very weak, so any interest in the protection of patent rights is counterbalanced by Defendants' right to compete with Skyline. Skyline offers no other public interest to justify the requested injunction. Because Skyline fails to show the injunction would promote the public interest, the Court should deny its Motion.

**D.**    **Any Injunction Must Be Supported by a Bond**

Federal Rule of Civil Procedure 65(c) requires Skyline to post a bond or other security before issuance of a preliminary injunction: "No . . . preliminary injunction shall issue except upon the giving of security by the applicant . . . for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined . . . ." While Skyline requests this Court dispense with the bond requirement, it offers no justification for doing so. Indeed, in the very case it cites in support of this argument – *Cybermedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070 (N.D. Cal. 1998) – the court required the moving party to post a bond for over $1.6 million to cover the (1) the profits the non-moving party would have earned during the period of the injunction, (2) out-of-pocket costs associates with promotion of the products it was restricted from selling, (3) damage to the non-moving party's reputation, and (4) expenses associated with complying with the injunction.

Defendants have presented substantial challenges and defenses to the infringement allegations, making injury to Defendants from issuance of an injunction likely. Posting of a bond is intended to protect the defendant should entry of an injunction later be found improper. Fed. R. Civ. P. 65(c). Thus, Skyline's argument that no bond is necessary because Defendants are infringing totally misses the point. *See* Motion at 30. In any event, Defendants have made a strong showing that Google Earth does not infringe and that the '189 patent is invalid. Therefore, the Court should require Skyline to post a bond in an appropriate amount as a prerequisite to issuance of any preliminary injunction, though for the reasons set forth above, no such injunction should issue at all.

IV.    **CONCLUSION**

For the foregoing reasons, Skyline's Motion for Preliminary Injunction should be denied.


Dated:  February 3, 2006                           Respectfully submitted,



                                   By: ____/s/ Darryl M. Woo_____
                                        Darryl M. Woo
                                   **FENWICK & WEST LLP**
                                   Embarcadero Center West
                                   275 Battery Street
                                   San Francisco, CA  94111
                                   Tel.  (415) 875-2300
                                   Fax  (415) 281-1350
                                   email: dwoo@fenwick.com

                                   Attorneys for Defendants and Counterclaimants
                                   KEYHOLE, INC. and GOOGLE INC.

**<u>Certificate of Service</u>**

     I hereby certify that, on February 3, 2006, I caused a true and accurate copy of the foregoing document to be served upon all counsel of record for each party by complying with this Court's Administrative Procedures for Electronic Case Filing.

By: _____/s/ Darryl M. Woo_____
           Darryl M. Woo