**ATTACHMENT 2**

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
**(Cite as: 2005 WL 701053 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
ARTICLE II GUN SHOP, INC., d/b/a Gun World
Plaintiff,
v.
John ASHCROFT, United States Attorney General,
Defendant.
**No. 03 C 4598.**

March 25, 2005.

Michael J. Newman, Michael J. Newman &
Associates Ltd., Skokie, IL, Richard E Gardiner,
Law Offices of Richard E. Gardiner, Fairfax, VA, for
Plaintiff.

Donald R. Lorenzen, United States Attorney's
Office, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.

**\*1** Pursuant to 18 U.S.C. § 923(f)(3), Article II Gun
Shop, Inc., d/b/a, Gun World, petitions for *de novo*
judicial review of the Bureau of Alcohol, Tobacco,
and Firearms' ("ATF") decision to revoke Gun
World's federal license to sell firearms. The
government contends that it was authorized to revoke
Gun World's license under 18 U.S.C. § 923(e), as the
dealer willfully violated several requirements of the
Gun Control Act. This case is before the Court on
defendant's motion for summary judgment, which is
limited to Gun World's alleged record keeping
violations. For the reasons stated below, the Court
grants the government's motion.

*Facts*

Gun World has been a federally licensed firearms
dealer since 1978. Barry Soskin has owned and
worked at the store, located in Bensenville, Illinois,
since that time. Soskin is Gun World's corporate
president, secretary, and treasurer, as well as the sole
director and shareholder. In addition to Soskin, Gun
World employs several employees, most of whom

have worked at the store for years.

ATF inspected Gun World in 1981, 1998, and 2000
for compliance with the Gun Control Act of 1968, 18
U.S.C. § § 921 *et seq.,* and the regulations
promulgated under the Act. On each occasion, ATF
cited Gun World with numerous violations of the
Act, including violations of the Act's record keeping
requirements. Though the ultimate decision to revoke
Gun World's license was based on violations
discovered during the 2000 inspection, we review the
store's history of violations to provide a context for
analyzing the later violations.

The 1981 inspection disclosed that Gun World had
failed to properly complete thirty ATF Forms 4473
[FN1] in violation of 27 C.F.R. § 478.124(c)(2).
Final Notice of Revocation ¶ 3. Specifically, Gun
World failed to have purchasers properly indicate
their correct dates of birth on the forms. Soskin
signed the ATF's report of violations and received a
copy. ATF did not initiate revocation of Gun World's
license at that time.

> FN1. ATF uses Form 4473 to record
> identifying information about gun
> purchasers and the guns they buy, in order to
> facilitate the tracing of firearms involved in
> crimes and to prevent gun transfers to
> persons who are prohibited from possessing
> guns. Def's 56.1 Stmt. ¶ 1. The purchaser is
> required to report his name, sex, height,
> weight, race, address, date of birth, and
> place of birth. The purchaser must also
> respond to a series of certification questions.
> The dealer is prohibited from selling a gun
> to a prospective buyer who responds "yes"
> to certain certification questions. *See* 18
> U.S.C. § 922(d). This prohibition includes
> selling guns to 1) persons under indictment
> or who have been convicted of a felony; 2)
> fugitives from justice; 3) illegal drug users;
> 4) persons who have been adjudicated
> mentally defective or who have been
> committed to a mental institution; 5) persons
> dishonorably discharged from the armed
> forces; 6) illegal aliens; 7) persons who have
> renounced their U.S. citizenship; 8) persons
> subject to domestic restraining orders; and
> 9) persons convicted of domestic violence.
> In addition, the form requires the seller to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
(Cite as: 2005 WL 701053 (N.D.Ill.))

answer several questions identifying the type of firearm to be transferred, the type and number on the buyer's identification, and information regarding the results of a required background check. Finally, the purchaser must re-certify the answers given to the certification questions immediately prior to the transfer of the gun (i.e., after the mandatory waiting period imposed by Illinois has expired). The form comes with instructions for completion. Def's 56.1 Stmt at ¶ 2.

In 1998, ATF discovered that Gun World had failed to properly complete thirty-four Forms 4473 in violation of the Act and its regulations. Final Notice of Revocation ¶ 4. Among these violations were twenty-one instances in which Gun World transferred guns without obtaining answers to all of the necessary certification questions. Def's 56.1 Stmt. ¶ 29. On one occasion, Gun World transferred a gun to someone who admitted that he was illegally in the United States. *Id.* ¶ 30. Additionally, the 1998 inspection revealed that Gun World had failed to properly maintain an acquisition and disposition book in violation of 27 C.F.R. § 425(e). Final Notice of Revocation ¶ 4. Once again, Soskin signed and received a copy of the report of violations. The inspector also reviewed the report of violations with Soskin and discussed what corrective action Gun World needed to take. Soskin Dep. at 47. The 1998 report indicates that "[t]he licensee will ensure the forms will be properly completed in the future." 1998 Report of Violations. ATF again refrained from revoking Gun World's license.

*2 The violations that ultimately led ATF to revoke Gun World's license were discovered during the 2000 compliance inspection. Five counts of violations are set forth in the final notice of revocation, including two separate straw sales; at least fifteen occasions on which Gun World knowingly and willfully failed to record and obtain required information on ATF Forms 4473 in over-the-counter sales of firearms to non-licensees; [FN2] at least forty-nine occasions on which Gun World knowingly and willfully transferred firearms to aliens legally in the United States without obtaining sufficient acceptable documentation that the transferees had resided in the State of Illinois continuously for at least 90 days prior to the transfer; and at least fourteen occasions on which Gun World knowingly and willfully failed to record in the acquisition and disposition book the sale or other disposition of firearms not later than seven days following the date of such transfers.

FN2. These violations include transferring guns to persons who did not indicate whether they had ever been adjudicated mentally defective or been committed to a mental institution; transferring guns without noting the type and/or number of the identification documents provided by the transferee; transferring guns without providing the name of the gun's manufacturer; transferring guns without properly noting the initial result of the background check; and transferring guns without the employee certifying that he believed the transfer to be lawful. Gun World additionally failed to complete a Form 4473 for guns sent out for repair to an unlicensed individual, and returned to the owner a gun on consignment without obtaining a Form 4473. *See* Def's 56.1 Stmt. ¶ ¶ 38-44. Finally, Gun World transferred a gun to someone who indicated on Form 4473 that he was a fugitive from justice, though it is unclear to the Court whether this particular violation constitutes one of the fifteen record keeping violations at issue.

These violations prompted ATF's Chicago Area Supervisor, Nicholas Scouffas, to warn Gun World on May 18, 2000 that ATF was contemplating the revocation of Gun World's license. At a conference on May 31, 2000, Gun World was afforded the opportunity to present evidence as to why its license should not be revoked. Despite Soskin's renewed promises of corrective action at the conference, Gun World continued to violate the record keeping provisions even after this date. [FN3]

FN3. The post-conference violations included transferring a gun without obtaining the transferee's signature verifying that his answers to the certification questions remained true at the time of the actual transfer, failing to note a transferee's complete name, and transferring a gun without obtaining a correct birth date. Def's 56.1 Stmt. ¶ ¶ 47-50.

On July 22, 2002, ATF issued to Gun World a notice of revocation of its license. Gun World requested a hearing to review the revocation in accordance with 18 U.S.C. § 923(f)(2). Hearing Officer Jimmy Skinner conducted the hearing, held on January 29-30, 2003. Skinner forwarded to Richard Alexander, ATF's Chicago Field Division Director of Industry

Not Reported in F.Supp.2d                                                                                         Page 3
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
**(Cite as: 2005 WL 701053 (N.D.Ill.))**

Operations, a report summarizing the evidence introduced at the hearing, as well as his findings of fact, conclusions, and recommendations. After reviewing the evidence, Alexander determined that Gun World had willfully violated the Gun Control Act, and on May 5, 2003, he issued a final notice of revocation. Alexander concluded that Gun World was familiar with the record keeping requirements imposed on federal firearms licensees and that it had "been plainly indifferent to, and in many instances ha[d] acted in purposeful disregard of, these record keeping and other requirements." Final Notice of Revocation at III ¶¶ 1-2.

 The government seeks summary judgment based only on to Alexander's finding that Gun World knowingly and willfully failed to complete fifteen ATF Forms 4473 in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 178.124. [FN4] The Court will therefore disregard the other violations for which Gun World was cited during the 2000 inspection and will decide whether the Form 4473 violations alone authorized ATF to revoke Gun World's license. In a signed declaration dated February 24, 2005, Alexander averred that he would have revoked Gun World's license based solely on the Form 4473 violations. Alexander Declaration ¶ 11. In reaching this decision, he reviewed the record of the proceedings before ATF, including the notice of revocation, the Hearing Officer's report, the presentations and evidence, and the final notice of revocation, and he also considered the similar violations Gun World had been cited for during the 1981 and 1998 inspections. Id. ¶¶ 8, 10. Gun World has made no objection to the government's submission of Alexander's declaration or the Court's reliance upon it.

> FN4. Gun World contends that the government's statement of facts references only twelve of these instances, and thus for the purpose of summary judgment, only twelve Form 4473 violations are at issue. It is not clear to the Court that the government only alleges violations on twelve specific forms, nevertheless, the Court's analysis and holding is unaffected by this small difference in the number of forms.

### Standard of Review

**\*3** The Gun Control Act permits a party whose license has been revoked by ATF to petition a district court for a de novo judicial review of the revocation. 18 U.S.C. § 923(f)(3). Consistent with its charge to review the matter de novo, the Court may give the

Attorney General's findings and decision "such weight as it believes they deserve," but need not accord any particular deference to those findings. *Stein's Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir.1980). The decision may be upheld if the Court determines that the evidence supporting the decision is "substantial." *Id.* Though the Court is free to make an independent determination as to whether Gun World violated the Gun Control Act, if we conclude that it did violate the Act, the Court must defer to the government's selection of a penalty. *Id.* at 464 n. 2 ("Selecting an appropriate penalty for the violations found is a matter committed to the Secretary's discretion."). Thus, the Court may determine only whether the Attorney General's choice of a penalty was "authorized." 18 U.S.C. § 923(f)(3); *Stein's,* 649 F.2d at 464 n. 2.

 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must construe the facts and draw reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the non-moving party cannot rest on the pleadings alone but must instead affirmatively demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there are no genuine disputes regarding material facts, the Court may properly grant summary judgment on the basis of the administrative record without conducting an evidentiary hearing. *See Cucchiara v. Secretary of Treasury,* 652 F.2d 28, 30 n. 1 (9th Cir.1981).

### Discussion

 In accordance with § 923(e), ATF may revoke a gun dealer's license after notice and opportunity for a hearing "if the holder of such license has willfully violated any provision of [the Gun Control Act] ... or any rule or regulation prescribed by the Attorney General" under the Act. 18 U.S.C. § 923(e). A single violation is a sufficient basis for revoking a license. *Appalachian Resources Dev. Corp. v. McCabe,* 387 F.3d 461, 464 (6th Cir.2004); *Breit & Johnson Sporting Goods, Inc.,* 320 F.Supp.2d 671, 678 (N.D.Ill.2004); *DiMartino v. Buckles,* 129 F.Supp.2d 824, 827 (D.Md.2001), aff'd by unpublished order *DiMartino v. Buckley,* 19 Fed. Appx. 114 (4th Cir.2001). A dealer violates the Act and its regulations if it transfers a gun without obtaining a completed Form 4473 or if it knows or has reasonable cause to believe that the form contains false statements. 18 U.S.C. §§ 922(m) &

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 4
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
**(Cite as: 2005 WL 701053 (N.D.Ill.))**

924(a)(1)(A); 27 C.F.R. § § 478.124(a) & (c), 478.125(e). Because Gun World does not dispute that it violated the Act by failing to ensure that all ATF Forms 4473 were properly completed, the principal issue the Court must decide is whether the violations were willful.

**\*4** The parties disagree over the definition of "willfully" as used in § 923(e). The government contends that the statute does not require ATF to show that Gun World acted with a bad purpose or evil motive, but merely that it purposefully disregarded or was plainly indifferent to the law. Gun World, by contrast, maintains that willfulness requires more than simply that a licensee was indifferent to the law. In support, Gun World cites *Bryan v. United States*, 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), arguing that *Bryan* dictates that "willfully" requires a "bad purpose to disobey or to disregard the law." *Id.* at 190 n. 9.

Consistent with the government's proposed interpretation, the majority of circuits, including the Seventh Circuit, have held that the willfulness requirement in § 923 is met when the licensee "knew of [its] legal obligation and purposefully disregarded or was plainly indifferent to" its obligations under the Gun Control Act. *Stein's*, 649 F.2d at 467; *see also McCabe*, 387 F.3d at 464 (citing cases). The Supreme Court's decision in *Bryan* has no impact on our reading of the statute. *See McCabe*, 387 F.3d at 465. In *Bryan*, the Court affirmed a defendant's conviction for dealing in firearms without a license in violation of 18 U.S.C. § 924(a)(1). The Court held that when used in the criminal context, a willful act "is one undertaken with a 'bad purpose,' " that is, " 'with knowledge that his conduct was unlawful.' " *Id.* at 191, 192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). But the Court specifically acknowledged that "disregard of a known legal obligation is sufficient to establish a willful violation." *Id.* at 197-98 and n. 26 (citing *Stein's*, 649 F.2d at 467-68). Thus, even if *Bryan's* holding applies in the civil context, it does not disturb the holdings of *Stein's* and other cases to the effect that proof that the licensee knew its legal responsibilities under the Gun Control Act and purposefully disregarded or was plainly indifferent to them is sufficient.

Gun World contends that the violations alleged in the 1981 and 1998 inspection reports are inadmissible and therefore immaterial to analyzing the willfullness of the 2000 violations. First, Gun World notes that none of these older violations were mentioned in the

initial notice of revocation, which, it argues, means that they were not the basis for the administrative revocation. These violations, however, were mentioned in the final notice of revocation and clearly factored into ATF's decision. Moreover, § 923 specifically permits the Court to consider "any evidence submitted by the parties to the proceedings whether or not such evidence was considered at the hearing." 18 U.S.C. § 923(f)(3). Next, Gun World maintains that the 1981 [FN5] and 1998 inspection reports attached to the affidavit of Thomas Karmgard, an ATF **attorney**, are inadmissible because the **affidavit** is not based on personal knowledge of the substance of the reports and the reports are not sworn or certified copies. Personal knowledge of the matters underlying the reports is unnecessary to lay the foundation for their admissibility. Karmgard's affidavit sufficiently authenticates the reports as records of ATF, *see* **Fed.R.Evid. 901(b)(1)**, and Gun World does not dispute that the reports are accurate copies of the originals. Finally, Gun World argues that consideration of the 1981 report is barred by the statute of limitations. Though the statute of limitations would bar the government from commencing an action with regard to the 1981 violations, it has no impact whatsoever on the Court's ability to consider the older violations for the purpose of determining whether Gun World knew of its legal obligations. Accordingly, Gun World's previous violations are admissible as evidence that, among other things, Gun World knew what the law required when it committed the 2000 violations. *See Breit*, 320 F.Supp.2d at 679.

> FN5. In addition, Gun World contends that the facts concerning the 1981 violations are disputed. Citing Soskin's deposition testimony that the forms at issue did contain date of birth information, Gun World seems to imply that the mistakes on the forms did not constitute violations. Soskin's testimony immediately following the statement cited by Gun World belies this contention, as Soskin agreed that the way the birth dates were written on the forms constituted a violation. Soskin Dep. at 45.

**\*5** Gun World's nearly twenty-year history of repeatedly violating record keeping requirements concerning the use of Forms 4473 leaves no doubt that Gun World's violations in 2000 were "willful" as the term is used in § 923(e). Courts have consistently held that evidence of repeated violations committed with knowledge of the law's requirements is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
**(Cite as: 2005 WL 701053 (N.D.Ill.))**

sufficient to establish willfulness. *Stein's*, 649 F.2d at 468; *Breit*, 320 F.Supp.2d at 678; *Cisewski v. Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 773 F.Supp. 148, 152 (E.D.Wis.1991); *Al's Loan Office, Inc. v. U.S. Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 738 F.Supp. 221, 224 (E.D.Mich.1990).

ATF cited Gun World for violations involving improperly completed Forms 4473 in 1981, 1998, and 2000, and the company persisted in committing such violations even after a warning conference was held in May 2000. Moreover, it is undisputed that Soskin and his employees were aware of what the Gun Control Act required at the time of the 2000 inspection. After each of the previous inspections, ATF inspectors discussed the violations with Soskin, and he signed each report of violations, promising to ensure that Forms 4473 would be properly completed in the future. Elizabeth Rodgers, Gun World's office manager and employee of twenty-five years, confirmed that the store knew its license was dependent upon following the regulations and that failing to obtain sufficient answers to the certification questions on Forms 4473 constituted a serious violation. Rodgers Dep. at 29-30, 41. Yet despite this knowledge, Gun World failed to take the necessary corrective action, thereby demonstrating its indifference to the Act's requirements.

Gun World attempts to refute the government's contention that its Form 4473 violations in 2000 were willful by characterizing them as *de minimis* violations in light of its sales volume. Gun World points out that of the ATF Forms 4473 it prepared during the period from January 1999 to February 2000 (the period during which the cited violations occurred), only twelve of 880 contained errors. This relatively small error rate, it argues, reflects that the violations were merely inadvertent errors or technical mistakes. Gun World, however, has failed to cite authority supporting the idea that repeated but purportedly minor errors should be excepted from the general rule that the willfulness requirement is satisfied by repeated violations. Existing case law supports the opposite conclusion. *See Cisewski*, 773 F.Supp. at 151-52 ("While these repeated episodes could be characterized as minor or insignificant, these repetitions, nevertheless, undermine petitioner's claim to have corrected his ways."); *see also Stein's*, 649 F.2d at 468 (rejecting plaintiff's argument that violations were unintentional, unavoidable, and *de minimis* ).

Moreover, the fact that courts hold that a single violation of the Gun Control Act is sufficient to revoke a dealer's license counsels against finding that *de minimis* violations do not meet the willfulness requirement. Soskin himself testified that he knew there was no *de minimis* number of violations that Gun World could legally commit. Soskin Dep. at 241. The rationale behind the Gun Control Act's record keeping requirements is at least in part to ensure that firearms do not end up in the hands of persons who are legally prohibited from owning such weapons. A dealer with a history of repeat violations, even if claimed to be careless, runs afoul of the Act's requirements to the same extent as a dealer that commits similar errors with a bad purpose. Though the 2000 violations might seem insignificant if viewed in a vacuum, when coupled with Gun World's history of similar violations, they demonstrate that Gun World was plainly indifferent to the Gun Control Act's record keeping requirements.

**\*6** Gun World also suggests that the Form 4473 violations are an insufficient basis for revocation because they are immaterial in light of the government's purported justification for requiring complete and accurate Forms 4473. Gun World reviews each violation separately, arguing that any defects in the forms were cured by the existence of correct information on other non-ATF documents (e.g., sales receipts) or facts known by Gun World employees. The statute, however, contains no materiality requirement, and Gun World has cited no case law to support its argument that a dealer should be excused from compliance with the law if it can provide evidence that firearms sold without proper Form 4473 disclosures did not end up in the hands of persons prohibited from purchasing them. Allowing an excuse of this sort would defeat the purpose of requiring Form 4473 in the first place.

In sum, Gun World has failed to raise a genuine issue of material fact as to whether its violations were willful. Substantial evidence exists to support ATF's conclusion that Gun World willfully violated the record keeping requirements of the Gun Control Act and its regulations.

The only remaining question is whether ATF was authorized to revoke Gun World's license based on these willful violations. Alexander submits that he would have revoked Gun World's license based solely on the fifteen Form 4473 violations. Were penalty selection subject to *de novo* review, the Court would not necessarily impose the same sanction as the one chosen by ATF. The Court, however, may determine only whether the government's choice of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)
**(Cite as: 2005 WL 701053 (N.D.Ill.))**

Page 6

sanction was authorized. 18 U.S.C. § 923(f)(3); *Stein's*, 649 F.2d at 464 n. 2. Because ATF is authorized to revoke a dealer's license based on a single violation of the requirements promulgated under the Gun Control Act, the Court concludes that ATF was authorized to revoke Gun World's license based on the Form 4473 violations.

### Conclusion

For the reasons stated above, the Court grants the defendant's motion for summary judgment [docket no. 9]. The Clerk is directed to enter judgment in favor of the defendant.

Not Reported in F.Supp.2d, 2005 WL 701053 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv04598 (Docket) (Jul. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.