IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> KEYHOLE, INC., and <br> GOOGLE INC. <br><br> Defendants. | CIVIL ACTION NO. 04-11129 DPW <br><br> **PROPOSED BRIEF** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE PORTIONS OF DOCUMENTS AND EXHIBITS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, OBJECTIONS TO EVIDENCE**

Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax: (617) 310-9000

Attorneys for Defendants and
Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

Of Counsel
Darryl M. Woo, admitted *pro hac vice*
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Tel. (415) 875-2300
Fax (415) 281-1350

## TABLE OF CONTENTS

Page(s)

I. DR. KEATING'S IMPROPER CLAIM CONSTRUCTION EVIDENCE SHOULD BE STRICKEN .................................................................................. 1

II. DR. KEATING'S IMPROPER AND UNRELIABLE OPINION TESTIMONY SHOULD BE STRICKEN .................................................................................. 2

    A. Dr. Keating Is Not a Qualified Expert in the Relevant Subject ............................. 3

    B. Dr. Keating's Opinion, Founded on Insufficient Facts and Faulty Methodology, Should be Stricken as Unreliable Under Kumho Tire .................... 4

III. THE PORTIONS OF MR. YARON'S DECLARATION CONTAINING HEARSAY AND IMPROPER OPINION TESTIMONY SHOULD BE STRICKEN .................................................................................................................... 6

IV. INADMISSIBLE TESTIMONY AND EXHIBITS SHOULD BE STRICKEN FROM MR. HAMELINE'S DECLARATION ............................................................ 8

    A. The Authenticated Exhibits, Together with Mr. Hameline's Testimony About such Exhibits, Should Be Stricken ............................................................. 8

    B. The Third Party Documents, Which Plaintiff Essentially Concedes Amount to Hearsay, Should Be Stricken on That Ground Also ........................ 10

    C. The Screen Shots and User Manuals, Which Do Not Demonstrate the Internal Operation of the Google Earth Software, Should Be Stricken as Irrelevant to the Infringement Analysis ............................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Art. II Gun Shop, Inc. v. Ashcroft,*
  No. 03 C 4598, 2005 WL 701053 (N.D. Ill. March 25, 2006) .............................. 8

*Asseo v. Pan Am. Grain Co., Inc.,*
  805 F.2d 23 (1st Cir. 1986) .............................................................................. 6

*Bogosian v. Mercedes-Benz of North Am.,*
  104 F.3d 472 (1st Cir. 1996) ............................................................................ 3

*Flynt Distributing Co. Inc. v. Harvey,*
  734 F.2d 1389 (9th Cir. 1984) ......................................................................... 6

*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ........................................................................................ 3

*Kumho Tires Co. v. Carmichael,*
  526 U.S. 137 (1999) ............................................................................... 3, 4, 5

*National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.,*
  357 F.3d 1319 (Fed. Cir. 2004), *cert. denied*, 540 U.S. 1149 (2004) .................. 6

*United States v. MacMahon,*
  938 F.2d 1501 (1st Cir. 1991) .......................................................................... 8

*Wheelis v. United States,*
  No. CV 01-1905-PHX-PGR, 2003 WL 1908677 (D. Ariz. March 12, 2003) ........ 8

**OTHER AUTHORITIES**

Advisory Comments Notes 2000 Amendments ...................................................... 3, 4

**RULES**

Fed. R. Evid. 701 ................................................................................................. 4
Fed. R. Evid. 702 ................................................................................................. 3
Fed. R. Evid. 703 .............................................................................................. 4, 5
Fed. R. Evid. 901(a) ............................................................................................. 8
Fed. R. Evid. 901(b)(1) ......................................................................................... 9
Fed. R. Evid. 901(b)(7) ......................................................................................... 8
Fed. R. Evid. 902(7) ............................................................................................. 8

Plaintiff Skyline chides Defendants for "attempt[ing] to avoid providing a substantive response," but it is Plaintiff's motion for preliminary injunction and their opposition to Defendants' motion to strike that lacks substance. Defendants provided detailed evidence and expert opinion showing the non-infringing internal operation of the accused Google Earth products, as compared to Plaintiff's speculation based solely on the irrelevant observations of its cartographer about the product in operation. Were these ancient times, Plaintiff's purported map expert might opine that the world is flat, based on his observation that ships disappear over the horizon.

Lacking legitimate bases to contest Defendants' objections to the proffered evidence, Plaintiff employs rhetoric, mischaracterizations of Defendants' arguments, and deflection to hide its evidentiary infirmities. Such ploys notwithstanding, Plaintiff's evidence remains improper and incompetent. As demonstrated in Defendants' Motion to Strike ("Motion") and the below Reply in support of that Motion, the Court should strike Plaintiff's incompetent evidence from the record or, in the alternative, sustain Defendants' objections to such evidence.

## I. DR. KEATING'S IMPROPER CLAIM CONSTRUCTION EVIDENCE SHOULD BE STRICKEN.

Notwithstanding the express language of Dr. Keating's declaration, in which he seeks to offer his opinions about the construction of terms and phrases in the '189 patent, Plaintiff argues that the declaration merely "incorporates" the prior constructions offered by the parties. See Plaintiff's Opposition to Defendants' Motion to Strike ("Opp.") at pp. 1-2. Plaintiff's argument fails, as in its own words: "even a cursory reading of Dr. Keating's Declaration" (*see* Opp. at p. 1) demonstrates he is attempting to offer *new* claim construction evidence of *his* understanding of the claim terms:

- "Given my experience in the relevant field and my reading of the '189 Patent, *I understand* the term 'data block' to mean a quantity, set or amount of information or data representing a portion of the terrain and the term 'terrain' to mean the physical features of an area, object or material." (Declaration of Terry Keating, Ph.D. [Keating Decl.] ¶ 11 [emphasis added].)

- "Based on my reading of the '189 Patent, *I understand* the phrase 'hierarchical structure' to mean data blocks arranged in multiple levels of resolution, with each level of the

structure containing blocks of a different resolution level." (Keating Decl. ¶ 13 [emphasis added].)

- "The '189 Patent *suggests* that the user can enter more than a 'pair' (or two) coordinates, . . . ." (Keating Decl. ¶ 16 [emphasis added].)

- "An 'indication of a respective resolution level' *means* something that indicates, points out, or signifies a respective resolution level." (Keating Decl. ¶ 17 [emphasis added].)

These statements express Dr. Keating's own views of the construction of the terms "data block," "hierarchical structure," "indication of a respective resolution level" and the patent generally. He does not merely adopt the parties' previous constructions, but is offering his understanding as further evidence of their constructions. If indeed by this language he intends only to regurgitate previously offered constructions without adding any weight behind them, then Plaintiff should not mind the Court striking such "evidence" or sustaining Defendants' objections to the extent Plaintiff seeks to augment the evidentiary record on claim construction with Dr. Keating's opinions on how he understands or views the claim terms, as it remains undisputed that Plaintiff did not submit *any* expert evidence during claim construction briefing and argument. To the extent Dr. Keating is offering any opinion as to the meaning of any terms or phrases in the '189 patent, Plaintiff is offering it for the first time as "new" claim construction evidence.[1] As explained in Defendants' Motion (at pp. 1-2), Plaintiff's improper, belated attempt to augment its claim construction record should be rejected.

## II. DR. KEATING'S IMPROPER AND UNRELIABLE OPINION TESTIMONY SHOULD BE STRICKEN.

The Court should strike portions of Dr. Keating's declaration because Dr. Keating is not qualified to opine about the internal operation of the Google Earth products and his opinion is unreliable. For Dr. Keating's expert opinion testimony to be considered, he must have sufficient "knowledge, skill, experience, training, or education" to render the opinion and the opinion must be based on "sufficient facts and data" and "reliable principles and methods." *See* Fed. R. Evid.

---

[1] Plaintiff claims that a recent decision provides a disincentive for Plaintiff to submit expert opinion on claim construction. *See* Opp. at pp. 2-3. Any alleged disincentive is irrelevant, since Plaintiff has, in fact, attempted to offer into evidence Dr. Keating's opinions on construction of the patent generally and on certain specific claim terms.

702; *see also id.* Advisory Comments Notes 2000 Amendments ("the question of whether the expert is relying on a *sufficient* basis of information . . . is governed by the requirements of Rule 702").

Thus, in addition to evaluating the qualifications of the expert, "the court performs a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." *Bogosian v. Mercedes-Benz of North Am.*, 104 F.3d 472, 476 (1st Cir. 1996); *see also Kumho Tires Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (where an expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline") (internal quotation and citation omitted). A court may exclude expert testimony if it finds "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, Dr. Keating's declaration fails to meet any of these threshold evidentiary requirements.

### A.  Dr. Keating Is Not a Qualified Expert in the Relevant Subject.

Dr. Keating lacks the necessary qualifications to opine on matters related to highly specialized computer graphic functions that he discusses in his declaration. In order to determine whether the Google Earth products infringe Plaintiff's patent, one would need special skill in computer science, and particularly in computer graphics. Because Dr. Keating is not a qualified expert in computer graphics, he may not testify about such matters. *See* Fed. R. Evid. 702. In response to Defendants' express challenge to Dr. Keating's qualifications as an alleged expert in the relevant subject of computer graphics (Motion at p. 4), Plaintiff merely argues that expertise may come from experiential (*see* Opp. at 5) as well as formal training. Nowhere, however, does Plaintiff explain how Dr. Keating's experience in GIS and mapping qualify him to offer expert testimony about the internal operation of the Google Earth products (or "computer science" or

"computer graphics").[2] *Compare* Opp. at p. 5 *with* Motion at p. 4 *and* Feiner Decl. ¶ 9. Thus, his opinion testimony is inadmissible under Rule 702.

Nor can Dr. Keating's testimony be qualified as admissible lay testimony. Plaintiff cannot avoid Rule 702's requirement of "special knowledge, skill, experience, training, [and] education" by seeking refuge in Rule 701. *See* Fed. Rule Evid. 701 & Advisory Committee Notes to 2000 Amendments ("[A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). Lay opinion testimony based on "scientific, technical, or other specialized knowledge within the scope of Rule 702" is expressly precluded under subpart (c) of Rule 701. Moreover, to provide admissible lay opinion testimony under Rule 701, the offered opinion would need to be based on personal knowledge. *See* Opp. at 5-6; *see also* Motion at 3-4.[3]

### B. Dr. Keating's Opinion, Founded on Insufficient Facts and Faulty Methodology, Should be Stricken as Unreliable Under *Kumho Tire*.

Dr. Keating's testimony, even if considered under Rule 702 as expert opinion, is unreliable because it is insufficiently grounded in fact and based on faulty principles and methods. Dr. Keating admits that, in making his assessment about the *internal operation* of the Google Earth product, he only reviewed a Google Earth product in operation, and public documents and manuals. None of these sources disclose the internal operations of the renderer or other objects and operations claimed by the patent in suit (*see* Motion at pp. 3-4), and

---

[2] "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho Tire*, 526 U.S. at 157 (internal quotations and citation omitted).

[3] Contrary to Plaintiff's argument (Opp. at pp. 4-5), the Court should not strike any portion of Dr. Feiner's declaration. Dr. Feiner is qualified to render his expert opinion. As Plaintiff admits, an expert can rely on information and belief. *See* Opp. at p. 6; Fed. R. Evid. 703. As such, Dr. Feiner is entitled to offer opinions based, in part, on the declaration of Michael T. Jones regarding the internal operation of the Google Earth products.

therefore are insufficient data on which to base an opinion about the internal operation of the Google Earth products (Feiner Decl. ¶ 9).[4]

For the same reasons, the method by which Dr. Keating reached his opinion – reviewing public documents and a user manual, and comparing the experience of using the Google Earth products and Plaintiff's product – is faulty and unreliable science (*see* Feiner Decl. ¶ 9). Such methods fail to inform as to the internal operations of the renderer or other objects and operations claimed by the patent. *Id.*

Notwithstanding such challenge, Plaintiff fails to justify Dr. Keating's reliance on such limited facts or Dr. Keating's chosen methodology. *See* Opp. at 4-5. The Court should thus strike Dr. Keating's unreliable opinion testimony. *See Kumho Tire*, 526 U.S. at 147-50.

Trying to deflect scrutiny from Dr. Keating, Plaintiff (1) claims that Defendants' expert, Steven Feiner, Ph.D., also relies on unreliable, public information to reach his conclusions, and (2) accuses Defendants of having failed to produce any non-public evidence to support their non-infringement argument. Opp. at pp. 3 & 4-5. Plaintiff's arguments, however, completely ignore the detailed declaration of Michael T. Jones, the current Chief Technical Officer of Google Earth and former Chief Technology Officer of Keyhole, Inc., which declaration provides a thorough description of how the relevant portions of the Google Earth products work. *See generally* Declaration of Michael T. Jones. Plaintiff further implies that Dr. Feiner's reliance on Mr. Jones' sworn testimony is somehow improper (Opp. at 5), but such argument is without merit or legal support. Dr. Feiner properly relies on this non-public information in concluding the Google Earth products do not infringe Plaintiff's patent. Fed. R. Evid 703 (Expert may base an opinion or inference upon those "facts or data . . . made known to the expert") & Advisory Committee Notes to 1972 Proposed Rule ("The third source [of facts or data upon which an

---

[4] Defendants' request to strike portions of Dr. Keating's declaration in no way casts doubt on the "veracity or reliability" of their public statements about Google Earth. *See* Opp. at 2. Rather, it reflects the fact that Dr. Keating reaches conclusions that are not supported by, and could not be reached solely based on, such public statements, none of which describe internal operations, e.g., of the renderer.

expert may rely] contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception.").

### III. THE PORTIONS OF MR. YARON'S DECLARATION CONTAINING HEARSAY AND IMPROPER OPINION TESTIMONY SHOULD BE STRICKEN.

Plaintiff does not contest Defendants' foundation and hearsay objections to Mr. Yaron's testimony. Instead, Plaintiff argues other factors – such as preventing irreparable harm before trial – to justify admission of the incompetent testimony. *See* Opp. at pp. 6-7.

While courts sometimes consider incompetent testimony where urgency and the need for expedition so warrant, such circumstances are completely lacking here. Plaintiff unduly delayed more than fourteen months in presenting its motion for preliminary injunction, thereby negating any claim of urgency. *See* Motion at pp. 2-3. All of the cases Plaintiff cites recognized "urgency" and "need for expedition" to justify consideration of evidence that is otherwise incompetent and inadmissible, but those factors simply are not present. *See Asseo v. Pan Am. Grain Co., Inc.*, 805 F.2d 23 (1st Cir. 1986); *Flynt Distributing Co. Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984). In its Opposition, Plaintiff neither refutes this legal principle nor attempts to show any urgency or need for expedition, because it cannot.[5] Opp. at pp. 6-7. Mr. Yaron's declaration should thus be stricken, as there is no exigency here that would allow consideration of his inadmissible testimony.

Mr. Yaron's testimony furthermore contains improper lay and/or expert testimony. Under Federal Rule of Evidence 701, lay opinion must be "rationally based on the perception of the witness [and] not based on scientific, technical, or other specialized knowledge within the

---

[5] Plaintiff simply claims that only limited discovery has been conducted in this case and Defendants did not provide evidence contradicting Plaintiff's evidence. Opp. at pp. 6-7. Both arguments miss the point: only in cases where exigency or urgency justifies consideration of inadmissible evidence should it be allowed. Where exigency is not present, the motion may wait until competent evidence may be offered to support the extraordinary relief Plaintiff seeks. Further, it is Plaintiff that brought the Motion for Preliminary Injunction and Plaintiff's burden to prove an injunction should issue, not Defendants' burden to prove one should not issue. *See e.g.*, *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1324-25 (Fed. Cir. 2004), *cert. denied*, 540 U.S. 1149 (2004).

scope of Rule 702." Here, Mr. Yaron attempts to testify beyond his "perception" and treads into areas of "scientific, technical, or other specialized knowledge." Objectionable passages of Mr. Yaron's testimony include:

- "Defendants' Google Earth Enterprise Solutions products . . . are based on Skyline's proprietary and patented invention and technology." (Yaron Decl. ¶ 10.)

- "Defendants have been able to enter (and now dominate) the 3D imaging market based [*sic*] and reap the benefits of Skylines patented invention by infringing the '189 Patent." (Yaron Decl. ¶ 12.)

- "Defendants' Google Earth products perform in this same way. . . . The Google Earth products perform this operation in the manner described in the '189 Patent." (Yaron Decl. ¶ 15.)

- "Google has now invested its enormous marketing process and presence on an [*sic*] an effort to eliminate Skyline from the market." (Yaron Decl. ¶ 16.)

- "After a customer has begun to use a particular software product, and has grown accustomed to the features and graphical user interface, it is very difficult to convince them to change. In addition, Google/Keyhole is depressing the price point and attempting to saturate the market with a lower priced product." (Yaron Decl. ¶ 17.)

Such testimony requires "scientific, technical, or other specialized knowledge" about customer behavior, the internal operation of the at-issue products,[6] price depression, and market saturation; consequently, they are not proper subjects of Mr. Yaron's lay testimony.[7] Fed. Rule Evid. 701 & Advisory Committee Notes to 2000 Amendments ("[A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

Plaintiff rests admissibility of this evidence on its argument that Mr. Yaron may "testify as to the value or projected profits of the business . . . because of the particularized knowledge that [he] has by virtue of his . . . position [at Skyline]." Opp. at 8. However, none of Mr. Yaron's statements to which Defendants have objected seek to inform as to "the value or projected profits of [Plaintiff's] business."[8] Rather, the identified passages of Mr. Yaron's

---

[6] In fact, Plaintiff's offer of Dr. Keating's purported expert testimony on this exact matter is an admission that the issue of infringement requires expert testimony.

[7] Skyline never attempts to qualify Mr. Yaron as an expert in any field; consequently, his testimony is not admissible under Rule 702.

[8] Indeed, Defendants cannot object to evidence, whether competent or incompetent, that Plaintiff has altogether failed to provide. *See generally* Yaron Decl. ¶¶ 1-17 (no statement of value or profit).

testimony reach far beyond his "perception" and "knowledge . . . by virtue of his position [at Skyline]," thereby rendering Mr. Yaron unqualified to provide the testimony.

## IV. INADMISSIBLE TESTIMONY AND EXHIBITS SHOULD BE STRICKEN FROM MR. HAMELINE'S DECLARATION.

As discussed above in Part III, Plaintiff's own delay in bringing its Motion for Preliminary Injunction belies any claim of urgency, and thus no exigent circumstances justify the consideration of the inadmissible evidence offered through Mr. Hameline's declaration. Mr. Hameline's unauthenticated documents, hearsay and irrelevant evidence should be stricken.

### A. The Authenticated Exhibits, Together with Mr. Hameline's Testimony About such Exhibits, Should Be Stricken.

This is a significant motion by which Plaintiff seeks to shut down entire product lines, not a discovery motion where attorney declarations are more common (and indeed may provide the best evidence on a particular point), and where authentication requirements may be more relaxed. As such, it is not too much to hold Mr. Hameline to the applicable standards for authentication of documents. Defendants do not contest that attorneys, through declarations, may properly authenticate documents, but even in the cases Plaintiff cites, the attorneys doing so were held to proper authentication standards. *See Wheelis v. United States*, No. CV 01-1905-PHX-PGR, 2003 WL 1908677 at *2 (D. Ariz. March 12, 2003 (finding exhibits authenticated under Rule 901(b)(7) as public records and Rule 902(7) as self-authenticating documents); *Art. II Gun Shop, Inc. v. Ashcroft*, No. 03 C 4598, 2005 WL 701053 at *4 (N.D. Ill. March 25, 2006 (finding ATF attorney had "sufficiently authenticated the reports as records of the ATF"); *United States v. MacMahon*, 938 F.2d 1501, 1508-09 (1st Cir. 1991) (finding note authenticated as party admission by circumstantial evidence).

Mr. Hameline's declaration fails to provide the proper foundation for the exhibits Plaintiff attempts to offer into evidence. Rule 901(a) requires that the proponent of a document offered into evidence provide "as a condition precedent to admissibility . . . evidence sufficient to support a finding that the matter in question is what its proponent claims it to be." Such authentication may be provided, among other ways, through "the testimony of a witness with

knowledge." *See* Fed. Rule Evid. 901(b)(1).

Here, Plaintiff has provided no evidence that Mr. Hameline has such "knowledge." His purported authenticating testimony lacks any number of the following items: the source of the original documents or printouts; when the alleged printouts were made; and/or by whom the alleged printouts were made. Absent this information, Mr. Hameline has failed to show how he is competent (*i.e.*, has personal knowledge) to testify that the exhibits are, in fact, "true and accurate" copies of any documents.

Lacking any excuse for failing to authenticate its proffered evidence, Plaintiff attempts to divert the Court's attention by claiming Defendants have challenged the reliability of the content of their own website. *See* Opp. at p. 9. This argument misses Rule 901's authentication requirement. Plaintiff is required to establish a proper foundation for authentication because it is Plaintiff's burden to establish admissibility, not Defendants' burden to pour through the multitude of website iterations over some unspecified period to try to figure out if the exhibit offered by Plaintiff is what it purports to be. Defendants have not "take[n] the position that the *information contained on their own website* is somehow *unreliable*" (Opp. at p. 9 [emphasis added]); rather, Defendants contest the *admissibility* of the *unauthenticated exhibits*, which, among other documents, include alleged printouts from their website. As Plaintiff is well aware, not all Internet content is reliable, and the authentication requirement simply provides a basic minimum requirement for admissibility so as to place the burden of admission where it belongs, with the proponent of the exhibit.

That "virtually all of the exhibits that Defendants seek to exclude were obtained from Defendants' own websites" (Opp. at 9 [*citing* Exhibits 3, 5-6, 11-14, 16-17, 20-22]) is of no moment, since Defendants cannot begin to check authenticity without Plaintiff supplying the minimum information required for authentication. This same defect applies to all of the identified exhibits, including third-party articles, which similarly lack a proper foundation for authentication and should be stricken.

**B.    The Third Party Documents, Which Plaintiff Essentially Concedes Amount to Hearsay, Should Be Stricken on That Ground Also.**

Plaintiff challenges Defendants' hearsay objection *only* as to Exhibit 6, inaccurately representing it was obtained from Defendants' website. As explained in Defendants' Motion (at p. 7 & n.7), Exhibit 6 is a third-party document, which – on its face – appears to have been obtained from www.chip.de/downloads/c1_downloads_13015193.html. Consequently, Exhibit 6 is an out of court statement offered for the truth of the matter asserted – *i.e.*, inadmissible hearsay.

The remainder of Defendants' hearsay objections (to Exhibits 1, 2, 4, 12, and 13) remain unchallenged. Instead, Plaintiff merely claims that its hearsay evidence should be considered notwithstanding its inadmissibility because of the exigency of its motion. As discussed above in Part III, however, there is no urgency here that saves this inadmissible evidence from being stricken.

**C.    The Screen Shots and User Manuals, Which Do Not Demonstrate the Internal Operation of the Google Earth Software, Should Be Stricken as Irrelevant to the Infringement Analysis.**

Plaintiff's continued refrain notwithstanding, the screen shots from the Google Earth products and the user manuals simply do not reflect the internal operation of the Google Earth products. The user manuals here provide instruction about how a *user* "operates" the software – not how the software operates *internally*. The screen shots at most demonstrate the end product of streaming and/or downloading of information, but no more demonstrate the internal method by which the images were retrieved than a finished photograph inform the viewer whether it was taken by a digital camera or one using 35mm film. In fact, the documents do not even provide a basis from which a person (expert or otherwise) can determine how the product operates: "One cannot deduce whether the Google Earth software operates according to the asserted claims simply by using the software and reading the publicly available information regarding Google Earth." (Feiner Decl. ¶ 9.) Since the documents do not reveal the internal workings of the

Google Earth software, they do not bear on the question of whether the Google Earth products infringe Plaintiff's patent and should be stricken as irrelevant.

## CONCLUSION

For the foregoing reasons, the Court should strike, or in the alternative sustain Defendants' objections to admissibility as to, the identified evidence, and disregard any corresponding argument by Plaintiff based on such evidence.

Dated: March 10, 2006                     Respectfully submitted,


By: ____/s/ Darryl M. Woo_____
    Darryl M. Woo
    **FENWICK & WEST LLP**
    Embarcadero Center West
    275 Battery Street
    San Francisco, CA 94111
    Tel. (415) 875-2300
    Fax (415) 281-1350
    email: dwoo@fenwick.com

    Attorneys for Defendants and
    Counterclaimants
    KEYHOLE, INC. and GOOGLE INC.


### Certificate of Service

I hereby certify that, on March 10, 2006, I caused a true and accurate copy of the foregoing document to be served upon all counsel of record for each party by complying with this Court's Administrative Procedures for Electronic Case Filing.

By: ____/s/ Darryl M. Woo_____
    Darryl M. Woo