*TAB B*

LEXSEE 2005 U.S. DIST. LEXIS 32808

PHG TECHNOLOGIES, LLC, Plaintiff, v. THE ST. JOHN COMPANIES, INC., Defendant.

No. 03:05-0630

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

2005 U.S. Dist. LEXIS 32808

December 5, 2005, Decided
December 5, 2005, Filed

**PRIOR HISTORY:** [*1] Case 3:05-cv-00630.

**COUNSEL:** For PHG Technologies, LLC, Plaintiff: Lea H. Speed, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Memphis, TN.; Wayne Edward Ramage, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, TN.

For St. John Companies, Inc., Defendant: Jennifer M. Phelps, Robert A. Schroeder, Bingham McCutchen, LLP, Los Angeles, CA.; Kathryn A. Stephenson, Paul W. Ambrosius, Trauger, Ney & Tuke, Nashville, TN.

For St. John Companies, Inc., Counter Claimant: Paul W. Ambrosius, Trauger, Ney & Tuke, Nashville, TN.

For PHG Technologies, LLC, Counter Defendant: Wayne Edward Ramage, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, TN.

**JUDGES:** ROBERT L. ECHOLS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ROBERT L. ECHOLS

**OPINION:**

MEMORANDUM

Pending before the Court is Plaintiff PHG Technologies, LLC's ("PHG's") Motion for Preliminary Injunction (Docket Entry No. 3), and Defendant The St. John Companies, Inc.'s ("St. John's") Counter-Motion for Partial Summary Judgment (Docket Entry No. 18), to which the parties have responded in opposition.

PHG brings this action against St. John seeking to enforce its design patents on medical label sheets, U.S. Patent [*2] Des. No. 496,405 S ("the '405 patent") and U.S. Patent Des. No. 503,197 S ("the '197 patent"), and to protect its "EasyID" trademark. PHG's Complaint includes claims for patent infringement under *35 U.S.C. § § 271, 284 & 285* (Counts I & II); false designation of origin, false description, and trademark infringement under *15 U.S.C. § 1125* (Counts III & VII); unfair or deceptive practices under the Tennessee Consumer Protection Act ("TCPA"), *Tenn. Code Ann. § § 47-18-104 & 47-18-109* (Counts IV & VIII); and trademark infringement and unfair competition under Tennessee common law (Counts V, VI, IX & X).

On November 22, 2005, the Court held a hearing on the Motion for Preliminary Injunction, which concerns enforcement of the design patents. At the same hearing, the Court heard oral argument on St. John's Counter-Motion for Partial Summary Judgment, in which St. John contends PHG's design patents are invalid because the design is primarily functional, not ornamental.

I. FACTS

The essential facts are not in dispute. Brian D. Moyer is President and a principal owner of PHG. He founded the predecessor to PHG [*3] in 1990 with the goal of improving hospital efficiency through software management. PHG currently offers six software products for hospitals which track patients and costs. Since 1995, PHG has sold medical patient identification labels and related patient identification labeling software in the United States. PHG's latest product is "EasyID," a patient identification system using barcode technology. PHG was one of the first companies to offer a patient identification product using barcode technology, and "EasyID" is used in many healthcare facilities in the United States.

Originally, PHG offered its customers two separate label sheets: one for chart labels and one for patient wristband identification labels. To respond to the cus-

Case 1:04-cv-11129-DPW    Document 93-3    Filed 03/13/2006    Page 3 of 9

Page 2
2005 U.S. Dist. LEXIS 32808, *

tomers' need to maximize computer efficiency by printing only one sheet of labels, Moyer and Thomas R. Stewart created a special configuration of medical chart labels and patient identification labels on one sheet which PHG markets under its "EasyID" trademark ("PHG Medical Label Sheet"). (Prelim. Inj. Hr'g, Plaintiff's Ex. 2.) At the time PHG created the medical label sheet, no other competitor in the market was promoting a similar label sheet.

Stewart and [*4] Moyer applied for and received two design patents covering the PHG Medical Label Sheet, the '405 patent and the '197 patent. They applied for the first design patent on December 10, 2003, claiming "the ornamental design for a label pattern for a medical label sheet, as shown." (Id., Plaintiff's Ex. 3.) The '405 patent issued on September 21, 2004.

Stewart and Moyer applied for a second design patent on April 30, 2004, claiming "the ornamental design for a label pattern for a medical label sheet, as shown." (Id., Plaintiff's Ex. 4.) The '197 patent issued on March 22, 2005. n1 The patents differ in that the margins which are part of the design shown in the '405 patent are not part of the design shown in the '197 patent.

> n1 On January 4, 2005, Stewart and Moyer obtained a design patent in an alternative embodiment of the medical label sheet, U.S. Patent Reg. No. D500,524 S, (Prelim. Hr'g, Plaintiff's Ex. 5), but that patent is not presently at issue.

The '405 patent depicts the layout of labels on an 8 [*5] 1/2" x 11" sheet by means of bold black lines. According to Moyer, the black lines depict the die cut which separates the labels on the manufactured product. The product as manufactured does not include any black lines or color. n2 (Compare Plaintiff's Ex. 2 and Defendant's Ex. 1.) In designing the label sheet, Moyer and Stewart did not consider the ease of removing labels from the sheet in arriving at the configuration patented. The design patents do not specify the use or dimension of labels on the sheet. While there are alternative ways to arrange the various labels on the sheet, Moyer and Stewart settled on the configuration patented because this arrangement had "the best flow and look."

> n2 St. John contends PHG's patented design is not represented in the die cut labels of PHG's or St. John's products, (Prelim. Hr'g, Plaintiff's Exs. 2 & 6), but rather, PHG's patented design is represented by bold black lines in the configuration shown on the '405 and '197 patents. (Prelim. Inj. Hr'g, Plaintiff's Exs. 3 & 4 & Defendant's Ex. 1.) This contention will be addressed later in this opinion.

[*6]

Moyer and Stewart assigned all right, title and interest in the two patents to PHG. The design patent applications were a continuation of their utility patent application, No. 09/952,425, for the PHG Medical Label Sheet filed on September 14, 2001. The utility patent application includes multiple embodiments, but does not specify a particular layout of the medical labels on the sheet. The utility patent application is still pending.

PHG spent a significant amount of money to advertise and promote the PHG Medical Label Sheet and associated products in the United States and thereby achieved substantial sales of the products. PHG claims that, as a result of its long and exclusive use of the PHG Medical Label Sheet and its promotional and sales activities, the PHG Medical Label Sheet has achieved widespread and favorable public acceptance, recognition and goodwill and has become distinctive in the industry.

St. John also sells medical patient identification labels in the United States in competition with PHG, which is a smaller company than St. John. On July 9, 2003, St. John began selling a medical patient identification label sheet under the name "EASY ID" in a configuration substantially [*7] identical to PHG's Medical Label Sheet. (Prelim. Inj. Hr'g, Plaintiff's Ex. 6.)

St. John's Chief Executive Officer, Adam Press, explained that St. John tries to be a "one-stop shop" to satisfy the supply needs of hospitals. St. John obtains contracts with the parent companies of hospitals, and then visits the hospitals within the group to gather copies of labels and other printed materials the hospitals are then currently using. St. John provides bids on all of the supplies needed by the hospitals based on volume and price. St. John obtained PHG's Medical Label Sheet from a hospital in this manner and copied it. St. John generates approximately $ 250,000 in sales annually through its competing medical label sheet.

According to Press, companies selling the same products as St. John routinely design new label sheets for their customers, and competitors commonly copy designs from one another and manufacture their own nearly identical competing products. In Press's view, hospitals buy medical labels based on their function, not their ornamentation, and hospitals decrease their costs by buying from one vendor. If medical label designs are protected as proprietary, then companies like [*8] St. John cannot serve as the "one-stop shop" a hospital seeks to fill its needs, and hospital costs rise.

Case 1:04-cv-11129-DPW    Document 93-3    Filed 03/13/2006    Page 4 of 9

Page 3
2005 U.S. Dist. LEXIS 32808, *

According to Press, St. John utilized the same design for a medical label sheet as PHG because function is best served in doing so. St. John placed labels for adult and pediatric wristbands at the bottom of the label sheet, as did PHG, because a wristband label logically is removed first when admitting the patient to the hospital. Moreover, the wristband label is easier to remove from the backing sheet when it is placed at the bottom edge. Chart labels are arranged in three rows of nine starting at the top of the sheet because the die cuts are easier and cheaper to make.

Moyer testified that, as of the November 22 preliminary injunction hearing, one can type in the search term "Easy ID" on St. John's Internet website and will be directed to St. John's medical label sheet that is identical to PHG's patented design. According to Moyer, St. John's copying of the PHG Medical Label Sheet, coupled with use of a confusingly similar name, "EASY ID," has caused confusion among customers, resulting in loss of business and goodwill to PHG.

PHG first learned about St. John's copying from [*9] a customer in April 2004. On May 13, 2004, PHG's attorney informed St. John by letter that St. John's medical label sheet infringed PHG's intellectual property rights. (Id., Plaintiff's Ex. 7.) PHG informed St. John that the U.S. Patent and Trademark Office ("PTO") had issued a "notice of allowance" in regard to the design of PHG's Medical Label Sheet and PHG expected a patent to issue in the next several weeks. PHG also informed St. John that additional design and utility patent applications concerning PHG's medical patient label systems were pending and that PHG expected additional patents to issue in the future. St. John had notice of PHG's patent rights because the PHG Medical Label Sheet was appropriately marked.

Upon receiving the May 2004 letter from PHG, St. John sought the advice of counsel and then continued to sell its medical label sheet. PHG could not file suit against St. John for patent infringement because the design patents had not yet issued. PHG lost customers and business opportunities to St. John's, the price of PHG's Medical Label Sheet eroded, and time advanced on PHG's exclusive 14-year patent period. Moyer estimates PHG lost $ 3 million in sales over the [*10] last two years as a consequence of St. John's conduct. PHG has not licensed its patented design to any individual or entity, although in the May 2004 letter, PHG offered to discuss with St. John any interest it might have in "obtaining a license to make and/or distribute PHG's medical patient label sheets." (Id., Plaintiff's Ex. 7.) At the hearing, Moyer disavowed any desire on the part of PHG to license use of its design to St. John.

II. STANDARDS OF REVIEW

Whether to grant a preliminary injunction under *35 U.S.C. § § 283* is within the Court's discretion. *Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1579 (Fed. Cir. 1983)*. In determining whether PHG has established a right to preliminary injunctive relief, the Court must consider four factors: (1) whether PHG has sufficiently established a reasonable likelihood of success on the merits; (2) whether PHG would suffer irreparable harm if the injunction were not granted; (3) whether the balance of hardships tips in PHG's favor; and (4) the impact, if any, of the injunction on the public interest. See *Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1451 (Fed. Cir. 1988)*. [*11] The Court must weigh and assess each factor against the others and against the form and magnitude of the relief requested. Id. Although the Federal Circuit cautioned that a preliminary injunction is a drastic and extraordinary remedy that should not be routinely granted, *Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991)*, the court subsequently explained that injunctive relief is not meant to be rare or practically unattainable. Rather, injunctive relief "must be thoroughly justified[,]" and it cannot be granted as a matter of right. *Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 977 (Fed. Cir. 1996)*.

St. John may succeed in defeating the motion for a preliminary injunction if it raises a substantial question of patent invalidity. *Amazon.com, Inc. v. BarnesandNoble.com, Inc., 239 F.3d 1343, 1358 (Fed. Cir. 2001)*. St. John need not produce the clear and convincing evidence of patent invalidity that would be required at trial. *Id. at 1359*. Instead, St. John must show only that PHG's design patents are vulnerable to a validity challenge. Id. To prevail' on its motion for summary judgment [*12] on the ground of invalidity, however, St. John "must demonstrate a lack of genuine dispute about material facts and show that the facts not in dispute are clear and convincing in demonstrating invalidity." Id. On summary judgment, the Court must take the facts in the light most favorable to PHG and determine whether St. John is entitled to judgment on patent validity as a matter of law. See id.; *Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

III. ANALYSIS

A. The preliminary injunction and motion for summary judgment

*1. PHG's likelihood of success on the merits*

**a. Validity of the patents**

A design patent may be granted for a "new, original and ornamental design." *35 U.S.C. § 171*. There is no functionality requirement in obtaining a design patent. See id.; *Continental Plastic Containers v. Owens Brockway Plastic Prods., 141 F.3d 1073, 1079 (Fed. Cir.*

Case 1:04-cv-11129-DPW    Document 93-3    Filed 03/13/2006    Page 5 of 9

Page 4
2005 U.S. Dist. LEXIS 32808, *

*1998)*. Once issued, a design patent is entitled to a presumption of validity. *35 U.S.C. § 282*. The burden to establish invalidity of the patent rests on the party asserting invalidity. Id.

A design is usually [*13] claimed "as shown" or "as shown and described"; that is, by its drawing. *37 C.F.R. § 1.153(a)*. The title of the design designates the particular article to be patented. No description of the design, other than a reference to the drawing, is required, and thus, more than one claim is not permitted. *L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1122-1123 (Fed. Cir. 1993)*. A design patent has almost no scope, and the claim at bar is limited to what is shown in the application drawings. See *Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995)*. The Court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent. *Berry Sterling Corp. v. Prescor Plastics, Inc., 122 F.3d 1452, 1455 (Fed. Cir. 1997)*.

A design patent concerns the appearance of an article of manufacture, and it protects the nonfunctional aspects of an ornamental design as shown in the patent. See *Seiko Epson Corp. v. Nu-Kote Int'l, Inc., 190 F.3d 1360, 1368 (Fed. Cir. 1999)*. The design need not be aesthetically pleasing; [*14] the "ornamental" requirement means that "the design must not be governed solely by function, that is, this is not the only possible form of the article that could perform its function." Id. An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article "is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear, Inc., 988 F.2d at 1123* (quoting *In re Carletti, 328 F.2d 1020, 1022, 51 C.C.P.A. 1094, 1964 Dec. Comm'r Pat. 440 (C.C.P.A. 1964))*.

St. John contends PHG's design patents are invalid because PHG's designs are primarily functional rather than ornamental. See *Power Controls Corp. v. Hybrinetics, Inc., 806 F.2d 234, 238 (Fed. Cir. 1986)*; *In re Carletti, 328 F.2d at 1022* ("it has long been settled that when a configuration is a result of functional considerations only, the resulting design is not patentable as an ornamental design for the simple reason that it . . . was not created for the purpose of ornamenting."); *L.A. Gear, Inc., 988 F.2d at 1123* (observing design cannot be subject of patent if it is essential to use of [*15] the article).

PHG identifies the ornamental features of its design as the size and the placement of labels on the Medical Label Sheet. St. John suggests, however, that the placement of the different-sized labels on PHG's Medical Label Sheet was driven purely by function in label use and the cost of manufacture, as detailed in the prosecution history of PHG's pending utility patent application for the same Medical Label Sheet.

A design may embody functional features, however, and still be patentable. There is a distinction "between the functionality of an article or features thereof and the functionality of the particular design of such article or features thereof that perform a function." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1563 (Fed. Cir. 1988)*. If that were not true, it would be impossible to obtain a design patent on a utilitarian article of manufacture or to obtain design and utility patents on the same article. Id.

In order to be patentable, the design must have "'an unobvious appearance, distinct from that dictated solely by functional considerations.'" *In re Carletti, 328 F.2d at 1022* (quoted case omitted). [*16] The Court must consider the overall appearance of the design. *L.A. Gear, Inc., 988 F.2d at 1123*. If there are several ways to achieve the function of the article of manufacture, the design is more likely to serve a primarily ornamental purpose. *Avia Group Int'l, Inc., 853 F.2d at 1563*.

The Court determines that St. John has not carried its burden to show a substantial question about the invalidity of PHG's design patents to defeat the motion for preliminary injunction, nor has St. John carried its burden by clear and convincing evidence to show it is entitled to partial summary judgment as a matter of law. See *Amazon.com, Inc., 239 F.3d at 1358*. The testimony revealed there are a multitude of ways to arrange different sizes of labels on an 8 1/2" x 11" sheet. Brian Moyer testified that PHG considered various arrangements for medical label sheets and settled on the design ultimately patented because it had "the best flow and look." The design is not dictated by its function. The prior art identified by the patent examiner revealed earlier design patents that were issued for the ornamental design of a paper sheet or for the ornamental [*17] arrangement of labels on a sheet (Prelim. Inj. Hr'g, Plaintiff's Collective Ex. 1 at '654, '044, '404, '933, '264, '031), but the novel features of PHG's Medical Label Sheet, particularly the placement of various sizes of labels at the bottom of the sheet, distinguished PHG's ornamental design from the prior art, resulting in issuance of PHG's design patents '405 and '197. Moreover, the Court is not permitted to consider the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent. See *Berry Sterling Corp., 122 F.3d at 1455*.

St. John points to Ashby, et al., U.S. Patent Reg. No. 4,876,131 as revealing years earlier the use of, in St. John's words, "a rectangular, laminated label sheet of standard 8 1/2 x 11 inch proportions with multiple rows of rectangular labels with a row of differently-sized la-

Case 1:04-cv-11129-DPW   Document 93-3   Filed 03/13/2006   Page 6 of 9

Page 5
2005 U.S. Dist. LEXIS 32808, *

bels at the bottom of the page and that utilized the entire sheet." (Docket Entry No. 25, Memorandum at 7.) St. John contends the differences between PHG's design patents and the '131 patent are "purely functional." (Id.)

Even assuming St. John's characterization of the '131 utility patent [*18] is correct, the overall appearance of PHG's ornamental design can be easily distinguished from the overall appearance of the configuration demonstrated in the '131 patent. The different sizes of labels and the arrangement of those labels on PHG's Medical Label Sheet are primarily ornamental because there are other ways to arrange different sizes of labels on an 8 1/2" x 11" sheet. See *Seiko Epson Corp., 190 F.3d at 1368*. PHG experimented with different arrangements and chose the ornamental design of the version it patented. The design patents thus protect the ornamental aspects of PHG's design, even though the design also has functional features. Id.

### b. Infringement

Whether a design patent is infringed is determined by first construing the claim to the design and then comparing it to the accused design. *Elmer, 67 F.3d at 1577*; *OddzOn Prods. v. Just Toys, Inc., 122 F.3d 1396, 1404 (Fed. Cir. 1997)*. The Court must determine whether the patented design as a whole is substantially similar in appearance to the accused design. *OddzOn Prods., 122 F.3d at 1405*. The patented and accused designs are compared [*19] for overall visual similarity. *Elmer, 67 F.3d at 1577*; *Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002)*.

Comparison of the patented design to the accused design involves two distinct tests, both of which must be satisfied in order to find infringement: (1) the "ordinary observer" test and (2) the "point of novelty" test. *Contessa Food Prods., Inc., 282 F.3d at 1376*; *Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990 (Fed. Cir. 1993)*; *Unidynamics Corp. v. Automatic Prods. Int'l Ltd., 157 F.3d 1311, 1323 (Fed. Cir. 1998)*.

The "ordinary observer" test originated in *Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528, 20 L. Ed. 731 (1871)*:

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Under *Gorham* the focus is on the overall ornamental appearance of the claimed design, not selected ornamental [*20] features. *Elmer, 67 F.3d at 1578*. Proper application of the Gorham test requires that an accused design be compared to the claimed design, not to a commercial embodiment. *Payless Shoesource, Inc., 998 F.2d at 990*.

The "point of novelty" test requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *Contessa Food Prods., Inc., 282 F.3d at 1377*. Although application of the two tests may sometimes lead to the same result, it is legal error to merge the two tests, for example, by relying on the claimed overall design as the point of novelty. *Contessa Food Prods., Inc., 282 F.3d at 1377*. The focus of the "point of novelty" test is on those aspects of the patented design that make it different from prior art. Id. The ultimate question is whether the effect of the accused design viewed as a whole is substantially the same as the patented design. *Payless Shoesource, Inc., 998 F.2d at 991*.

PHG's claim in the '405 patent is the "ornamental design for the medical label sheet, as shown." (Prelim. Inj. Hr'g, Plaintiff's Ex. 3.) Figures [*21] 1 and 2 show the front view and front perspective view of the Medical Label Sheet. Figures 3, 5 and 6 show three alternative embodiments of the Medical Label Sheet.

The Court rejects St. John's contention that an ordinary person would not be led to believe St. John had appropriated PHG's patented design because the design covered by the '405 patent is a "pattern of starkly drawn, easily seen, well defined black lines on a contrasting background [,]" while St. John's product is a "plain, unadorned sheet of 8.5" x 11" white paper, the most commonplace and mundane item one can imagine." (Docket Entry No. 25, Memorandum at 18; Prelim. Inj. Hr'g Defendant's Ex. 1; Plaintiff's Ex. 6.) St. John cites *37 C.F.R. § 1.145* for the proposition that solid black surface shading is not permitted on design drawings except when used to represent the color black as well as color contrast.

The cited regulation does not pertain to design drawings. Rather, *37 C.F.R. § 1.152* concerns design drawings and states in pertinent part (emphasis added):

> The design must be represented by a drawing that complies with the requirements of §§ 1.84 and must [*22] contain a sufficient number of views to constitute a complete disclosure of the appearance of the design. Appropriate and adequate surface shading should be used to show

Case 1:04-cv-11129-DPW    Document 93-3    Filed 03/13/2006    Page 7 of 9

Page 6
2005 U.S. Dist. LEXIS 32808, *

the character or contour of the surfaces represented. Solid black surface shading is not permitted except when used to represent the color black as well as color contrast. Broken lines may be used to show visible environmental structure, but may not be used to show hidden planes and surfaces that cannot be seen through opaque materials.

Thus, read in context, it appears that "appropriate and adequate surface shading" should be used to show "the character or contour" of the surfaces represented. Other design patents have employed black lines to indicate the placement of labels on a sheet. (Prelim. Inj. Hr'g, Plaintiff's Collective Ex. 1, "Tab Compatible Divider Label Sheet," Burke, et al. (U.S. Pat. No. Des. 423,044); "Print Indicia and Address Label Sheet", Hamilton et al. (U.S. Pat. No. D448,404 S); "Label Form," Sanford et al. (U.S. Pat. No. D473,264 S); "Label Sheet," Hodsdon et al. (U.S. Pat. No. D476,031 S).) Consequently, the Court determines it is improper to compare St. John's product (Prelim. Inj. [*23] Hr'g, Plaintiff's Ex. 6) to PHG's product with black lines drawn on it to resemble the drawing in PHG's '405 design patent. (Prelim. Inj. Hr'g, Defendant's Ex. 1.)

The critical comparison is the overall design of St. John's medical label sheet to the ornamental depiction contained in PHG's design patents. When compared, St. John's accused design and PHG's patented design are identical. An ordinary observer would be very hard-pressed to identify any differences in the two designs. Moreover, St. John's accused design appropriates the novelty of PHG's patented design which distinguishes it from the prior art, that is, the different sizes of labels and their placement on the sheet. See *Contessa Food Prods., Inc.*, 282 F.3d at 1377. Accordingly, the Court concludes that PHG has shown a likelihood of success on the merits regarding infringement.

### 2. PHG's showing of irreparable harm

Having established the first factor of likelihood of success on the merits through a "clear showing" of both patent validity and infringement, PHG is entitled to a rebuttable presumption of irreparable harm. See *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003); [*24] *Amazon.com, Inc.*, 239 F.3d at 1350; *Polymer Technologies, Inc.*, 103 F.3d at 973. This presumption acts as a procedural device "'which places the ultimate burden of production on the question of irreparable harm onto the alleged infringer.'" Id. (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)).

The design patents grant PHG the right to exclude others from using the design without permission. See *Polymer Technologies, Inc.*, 103 F.3d at 975. This is a valuable property right, and "inventors with small markets are entitled to exclusivity under the patent statute as are those with large markets." Id. It is not enough to rebut the presumption of irreparable harm to argue, as St. John does, that competitors in the medical label marketplace commonly replicate one another's designs in an effort to offer hospitals the best price. PHG has expended the time, effort and money required to obtain patents on its design, and those patents are entitled to protection and enforcement. The fact that infringers other than St. John may exist in the marketplace does not negate the irreparable harm [*25] St. John has and will cause to PHG. Id. Moreover, experience teaches that "competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's . . . exclusive position by an award of damages and a permanent injunction[,]" because customers may have established relationships with infringers. Id. Thus, St. John has not rebutted the presumption of irreparable harm.

To the contrary, the evidence confirms PHG has already suffered, and will continue to suffer, substantial damage in lost sales, business opportunities, and customer goodwill if St. John is not enjoined from continuing to market the accused design. Although St. John suggests PHG can be made whole solely through a monetary award, damages alone cannot rectify the past and impending destruction of PHG's relationships with its customers who may be duped into purchasing St. John's accused infringing medical label sheet because of its identical appearance to PHG's patented design.

There is some appeal to St. John's claim that irreparable harm does not exist because PHG waited too long to seek injunctive relief. Although the '405 patent issued in September 2004, and the broader [*26] '197 patent issued in March 2005, PHG waited until August 2005 to file suit and seek injunctive relief. PHG tries to ameliorate the passage of time by pointing out it did not have standing to sue until the patents issued, that it had to find appropriate counsel to undertake the litigation, it had to conduct due diligence and investigate the claims, and it had to determine whether it could afford the litigation financially. While the Court believes PHG may have been able to move more quickly to protect its rights, the passage of time, as asserted by St. John, does not alone rebut the presumption of irreparable harm that arises in PHG's favor, nor does it rebut the evidence of irreparable harm PHG has and will continue to suffer if a preliminary injunction is not issued. The cases St. John cites all involved delays of seven months or more. *High Tech Med. Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (seventeen months); *T.J.*

Case 1:04-cv-11129-DPW  Document 93-3  Filed 03/13/2006  Page 8 of 9

Page 7
2005 U.S. Dist. LEXIS 32808, *

*Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc., 821 F.2d 646, 648 (Fed. Cir. 1987)* (fifteen months); *Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)* (nine months); [*27] *Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602, 609 (S.D.N.Y. 1979)* (twelve months); *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc., 335 F. Supp. 278, 280 (S.D.N.Y. 1971)* (seven and one-half months).

Here, PHG brought suit within five months after the broader '197 patent issued. Therefore, the Court concludes the passage of time alone should not preclude otherwise appropriate injunctive relief.

*3. The balance of hardships*

St. John concedes it is a larger company than PHG and St. John's claims it sells various products to eighty percent (80%) of the hospital market in the United States. The threat posed to PHG by St. John's alleged infringement is readily apparent.

PHG's design patents lie at the heart of its software business. The commercial embodiment of the patented design, PHG's Medical Label Sheet, is sold in tandem with PHG's software products. As a smaller business entity, PHG has fewer resources at its disposal to devote to enforcement of its design patents and to counteract St. John's infringing conduct in the marketplace. The evidence shows that the price for goods PHG previously obtained has eroded as a result [*28] of the marketing of St. John's accused product. St. John, on the other hand, sells more than 20,000 different labels and has greater resources available to maintain its position in the market. Thus, the Court concludes the balance of hardships tips in favor of PHG.

*4. The impact of an injunction on the public interest*

St. John attempts to justify its use of a medical label sheet that is identical to the patented PHG Medical Label Sheet on the ground that hospitals are entitled to seek the lowest price available for the goods they use. Further, St. John contends that protecting the proprietary nature of certain label designs will preclude St. John from presenting itself to hospitals as a "one stop shop."

Assisting hospitals in the achievement of cost savings through competition is a laudable goal of interest to the public. No evidence was presented, however, as to the number of cases of medical label sheets PHG and St. John sell to hospitals each year or how much money hospitals save by using St. John's accused product rather than PHG's patented product. Brian Moyer testified that the cost of PHG's product had dropped from a high of $ 123 to $ 179 per case before St. John began [*29] using a competing label design to $ 88 to $ 120 per case afterward. Thus, the price drop per case ranges from $ 35 to $ 59. Assuming for the purpose of illustration that 20,000 cases of St. John's accused product are sold at a price reduction of $ 47 per case, hospitals across the country save, collectively, $ 940,000.

Viewed in the context of millions in hospital costs incurred nationwide each year, $ 940,000 is little more than the proverbial "drop in the bucket." Any such cost savings are overshadowed by the greater public interest in the protection of intellectual property, as guided by the federal statutes, regulations and cases pertaining to patents and trademarks. St. John's private interest in selling a lower-priced product does not justify infringing a patent. *Payless Shoesource, Inc., 998 F.2d at 991*. "Were that to be a justification for patent infringement, most injunctions would be denied because copiers universally price their products lower than innovators." Id. Thus, the Court concludes the public interest factor weighs in favor of PHG as well.

Because PHG has made a sufficient showing on each of the four factors, injunctive relief is warranted, [*30] and PHG's Motion for a Preliminary Injunction will be GRANTED. See *Amazon.com, Inc., 239 F.3d at 1350*. St. John's Counter-Motion for Partial Summary Judgment on the issue of patent validity will be DENIED.

**B. Tennessee Consumer Protection Act claims**

St. John seeks summary judgment on PHG's claims brought under the TCPA, Counts IV and VIII, on the ground the claims are time-barred. St. John contends PHG knew when it sent the May 13, 2004 letter that St. John was selling a nearly identical medical label sheet, and by waiting until August 2005 to file suit, PHG allowed its TCPA claims to lapse under the one-year statute of limitations. *Tenn. Code Ann. § 47-18-110* (requiring suit within one (1) year from "discovery of the unlawful act or practice[.]"); *Heatherly v. Merrimack Mut. Fire Ins. Co., 43 S.W.3d 911, 916 (Tenn. Ct. App. 2001)*. PHG contends it did not have standing to bring its claims against St. John until the design patents issued. PHG filed suit within five months after the '197 patent issued and less than one year after the '405 patent issued, well within the statute of limitations.

Counts IV and [*31] VIII of the Complaint, however, do not assert patent infringement claims. Rather, those counts track the claims for false designation of origin, false description, and trademark infringement brought under *section 43(a)* of the Lanham Act, *15 U.S.C. § 1125(a)*, as stated in Counts III and VII of the Complaint. See *Syncor Int'l Corp. v. Newbaker, 12 F. Supp. 2d 781, 783 (W.D. Tenn. 1998)* (noting claims of unfair and deceptive acts brought under TCPA are substantially similar to claims that may be brought under Lanham Act). The applicable statute of limitations is thus

Case 1:04-cv-11129-DPW    Document 93-3    Filed 03/13/2006    Page 9 of 9

Page 8
2005 U.S. Dist. LEXIS 32808, *

one year. See *Johnny's Fine Foods, Inc. v. Johnny's Inc., 286 F. Supp. 2d 876, 881 (M.D. Tenn. 2003)*; *Federal Express Corp. v. U.S.P.S., 75 F. Supp. 2d 807, 815-816 (W.D. Tenn. 1999)*.

PHG knew by the time it instructed counsel to send St. John the May 13, 2004 letter that St. John was selling a medical label sheet confusingly similar in appearance to PHG's product and that doing so would deceive the public into falsely associating St. John's product with PHG or would deceive the public into believing St. John's product originated from PHG. PHG did not [*32] sue on the claim until August 11, 2005. Thus, Count IV of the Complaint is time-barred.

Count VIII asserts a TCPA claim that is similar to the "EasyID" trademark infringement claim stated in Count VII under *15 U.S.C. § 1125(a)*. There is no evidence in the record, however, as to the date PHG discovered that St. John was using the confusingly similar "EASY ID" trademark. Therefore, St. John has not shown that it is entitled to summary judgment on a statute of limitations defense with regard to Count VIII.

### IV. CONCLUSION

In summary, a preliminary injunction against St. John is warranted because St. John failed to carry its burden to establish a substantial question concerning the invalidity of PHG's design patents, '405 and '197, PHG established a reasonable likelihood that it will prevail on the issues of patent validity and infringement, PHG established irreparable harm, and the balance of hardships and the public interest weigh in PHG's favor. Therefore, PHG's Motion for Preliminary Injunction will be GRANTED. The Court will require PHG to post a bond in the amount of $ 250,000 in compliance with *Federal Rule of Civil Procedure 65(c)* [*33] .

St. John did not carry its burden on summary judgment to show by clear and convincing evidence that PHG's patents are invalid and therefore, it is not entitled to partial summary judgment on Counts I and II. St. John is entitled to partial summary judgment on Count IV of the Complaint because the count is time-barred under the one-year statute of limitations applicable under the TCPA. Count IV will be dismissed from the Complaint with prejudice. St. John is not entitled to partial summary judgment on Count VIII because there is no evidence from which the Court can establish when PHG discovered that St. John was using the confusingly similar trademark, "EASY ID." Thus, St. John's Counter-Motion for Partial Summary Judgment will be GRANTED IN PART and DENIED IN PART.

An appropriate Order shall be entered.

ROBERT L. ECHOLS

UNITED STATES DISTRICT JUDGE

### ORDER

For the reasons explained in the Memorandum entered contemporaneously herewith, the Court rules as follows:

(1) Plaintiff PHG Technologies, LLC's Motion for Preliminary Injunction (Docket Entry No. 3) is hereby GRANTED.

(2) Defendant St. John Companies, Inc.'s Counter-Motion for Partial Summary Judgment (Docket Entry [*34] No. 18) is hereby GRANTED IN PART AND DENIED IN PART.

(3) Defendant St. John Companies, Inc.'s Motion to Request to Take Judicial Notice (Docket Entry No. 20) is hereby GRANTED.

(4) Plaintiff PHG Technologies, LLC's Motion to Request Take Judicial Notice (Docket Entry No. 35) is hereby GRANTED.

(5) Pursuant to *Federal Rule of Civil Procedure 65* Defendant The St. John Companies, Inc., and its officers, agents, servants, employees and attorneys are hereby preliminarily enjoined and restrained from making, using, offering to sell, selling or importing into the United States a medical label sheet with an appearance similar to the design depicted in Plaintiff PHG. Technologies, LLC's design patents, U.S. Patent Des. No. 496,405 S and U.S. Patent Des. No. 503,197 S.

(6) This preliminary injunction applies to all persons, officers, agents, servants, employees, and attorneys acting in concert with or participating with The St. John Companies, Inc., who receive actual notice of this Order by personal service or otherwise.

(7) Pursuant to *Federal Rule of Civil Procedure 65(c)*, Plaintiff PHG Technologies, LLC, [*35] shall file with the Clerk of this Court, no later than Monday, December 12, 2005, a surety bond in the amount of $ 250,000, in such form as is acceptable to the Clerk of Court.

(8) This Order shall remain in effect during the pendency of this action and until further Order of this Court unless Plaintiff fails to file the surety bond as required in paragraph (7) above.

(9) Count IV of the Complaint is hereby DISMISSED WITH PREJUDICE.

It is so ORDERED.

ROBERT L. ECHOLS

UNITED STATES DISTRICT JUDGE