SKYLINE V KEYHOLE>

FILED
IN CLERKS OFFICE

2006 JUN 14  A 11: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * *

SKYLINE SOFTWARE SYSTEMS, INC.

         Plaintiff

    VERSUS                CA-04-11129-DPW

KEYHOLE CORPORATION
GOOGLE, INC.

         Defendants

* * * * * * * *, * * * * * * * * * *

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

UNITED STATES DISTRICT COURT JUDGE

MOTION HEARING

MARCH 22, 2006

APPEARANCES:

    J. JOSEPH HAMELINE, ESQ., IBRAHIM M. HALLAJ, ESQ. AND
    GERI L. HAIGHT, Mintz, Levin, Cohn, Ferris, Glovsky &
    Popeo, PC, One Financial Center, Boston, Massachusetts
    02111, on behalf of the Plaintiff

    CAROLYN CHANG, ESQ., Fenwick & West, LLP, Silicon Valley
    Center, 801 California Street, Mountain View, California
    94041, on behalf of Keyhole Corp. and Google, Inc.,
    Defendants

    DARRYL M. WOO, ESQ., Fenwick & West, LLP, 275 Battery
    Street, San Francisco, California 94111, on behalf of
    Keyhole Corp. and Google, Inc., Defendants

(Appearances continued next page)

REDACTED #100

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

## Page 2

1
APPEARANCES (Con'd):
2
NELSON G. APJOHN, ESQ., Nutter, McClennen & Fish, LLP,
3 World Trade Center West, 155 Seaport Boulevard, Boston,
Massachusetts 02210-2699, on behalf of Keyhole Corp.,
4 Defendant
5 MICHAEL KWUN, ESQ., 1600 Amphitheatre Parkway, Mountain
View, California 94043, Litigation Counsel for Google,
6 Inc., Defendant
7
8
9
10
11
12
13
14
15
16
17
18
19              CourtroomNo.1 - 3rd Floor
                1 Courthouse Way
20              Boston, Massachusetts 02210
                2:30 P.M. - 4:45 P.M.
21
22 Pamela R. Owens - Official Court Reporter
   John Joseph Moakley District Courthouse
23   1 Courthouse Way - Suite 3200
     Boston, Massachusetts 02210
24
25

## Page 3

1                   CA-04-11129-DPW
2                   MARCH 22, 2006
3        THE COURT: Well, Ms. Rynne indicated -- and I see
4 from the stuff that's been passed up to me -- that you have a
5 formal presentation that you want to make. And there's been
6 some question raised about confidentiality, I guess, too. So,
7 let me just understand what you would like to do as opposed to
8 what you may end up doing.
9        MR. WOO: Yes, Your Honor. Darryl Woo for the
10 defendants, Keyhole and Google, Inc., Your Honor.
11        The discussion of the non-infringement issues will
12 involve a discussion of the technology at issue in our product
13 which discusses the internal operations of software. And these
14 operations are held by us as closely-guarded trade secrets. We
15 have an agreement with opposing counsel, Mr. Hameline, that
16 those discussions may be under seal if it so please the Court.
17 I see that there's nobody else in the courtroom except for
18 outside counsel and Your Honor's staff. So that should not
19 present a problem except for the transcript.
20        THE COURT: Okay. But what do you propose to do?
21 I mean, this, I take it, is Power Point stuff.
22        MR. WOO: Whatever Your Honor pleases. If you
23 have specific questions about the technology, you want us to
24 discuss that portion first --
25        THE COURT: Well, I think I want to go actually --

## Page 4

1 I mean yes, I suppose, but I think I want to talk about it in a
2 more general way, which is the limitations I think that
3 plaintiff has been laboring under here in constructing its
4 case, in part, because of scheduling that I've influenced to a
5 large degree. I will look to plaintiff first, I guess, because
6 I'm disinclined to think that this is a case in which I'm going
7 to grant the preliminary injunction that you ask for. But I'm
8 interested in proposals for how to get to a fuller resolution.
9 If I had thought about this a little differently at a different
10 time, I probably would have scheduled it for merging
11 preliminary injunction with trial on the merits.
12        But I guess I'd like to understand, Mr. Hameline,
13 what you think in the context of the unlikelihood that I'm
14 going to issue interlocutory relief here.
15        MR. HAMELINE: I'm sorry. I didn't hear.
16        THE COURT: The unlikelihood that I'm going to
17 issue interlocutory relief.
18        MR. HAMELINE: I missed the first --
19        THE COURT: The unlikelihood that I will issue
20 interlocutory relief.
21        MR. HAMELINE: I missed the first -- I'm sorry. I
22 miss the first part of the sentence. In the context, what
23 would I propose?
24        THE COURT: Yes. What do you want under those
25 circumstances assuming that that's --

## Page 5

1        MR. HAMELINE: Assume you deny the preliminary
2 injunction --
3        THE COURT: Yes.
4        MR. HAMELINE: -- where do we go from here?
5        THE COURT: Yes.
6        MR. HAMELINE: I think what we need, Your Honor, is
7 -- can you hear me? I think what we need, Your Honor, is --
8 let me step back. I think this process -- again, I think we do
9 meet the standard. But this process has refined the issues to
10 a considerable extent as sometimes the ping pong of discovery
11 tries to avoid or sort of gloss over some of the key issues. I
12 think this has been a process in which the fluff has been
13 widowed and we've really focused in on two or three
14 infringement contentions and one or two invalidity contentions.
15 So, in that sense, it is a productive process. It does help
16 focus where we go from here. What we would need would be what
17 you typically need in a case like this and what Google has
18 argued repeatedly, which is that their User Manual doesn't
19 provide enough detail in terms of the software processes and
20 that their own CTO's admissions to his affidavit don't provide
21 enough. So, what we would want, in particular, would be the
22 documentation that show in discovery --
23        THE COURT: Let me put it in a different context.
24 How much time do you think you need for discovery to bring it
25 to conclusion?

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 6

1       MR. HAMELINE: So, to think out loud, we need the
2   documents. We need depositions, I think at least a 30(b)(6)
3   deposition of Google and Keyhole, and there may be some follow-
4   on depositions that may be more than one or two people. And
5   then if -- assuming we're doing damages later, which I think
6   Your Honor had mentioned and obviously we're now open to the
7   Court's discretion, depositions of the experts, just expert
8   disclosure, et cetera. I think we could do that in four months
9   just in terms of the 30 days to get documents and maybe 30 days
10  to get schedules set and 30 days for the expert reports and 30
11  days for depositions. That may be -- but that's what I'm
12  thinking of sort of on the fly here standing on my feet in
13  terms of getting this done.
14      THE COURT: All right. Now, turning -- well,
15  Mr. Woo, what about you? Is that a reasonable amount of time?
16      MR. WOO: Four months seem adequate for the
17  discovery that they are proposing, Your Honor, especially if
18  we're limited to non-damages.
19      THE COURT: I think I --
20      MR. WOO: I would make another suggestion. And
21  that is instead of possibly merging the preliminary injunction
22  with a trial, we think that based on the indications from the
23  claim construction transcript and so forth and the facts that
24  are coming out in this case, that we should brief the issue of
25  summary judgment and have that combined perhaps with a deferred

Page 7

1   preliminary injunction hearing.
2       THE COURT: I don't think it's going to be
3   deferred. I think I want to hear both of you today and even
4   directed to the question of preliminary injunction although, as
5   I said, I have some reservations about whether or not that's
6   the appropriate way for me to deal with this. But as I looked
7   through this and thought about it a bit, it seemed to me that
8   four months of discovery was appropriate in that I could merge
9   the -- without damages and that I could merge the summary
10  judgment process into trial preparation, so that it would be
11  following on relatively promptly. Preparing for summary
12  judgment in some ways is not dissimilar to a trial preparation,
13  but with a view toward getting to the ultimate merits in the
14  case now.
15      MR. WOO: All right. So, summary judgment after
16  the four months of discovery and then some period of months and
17  then trial.
18      THE COURT: Not period of months. Almost
19  immediately after, it either goes to trial promptly after or
20  the case doesn't make it on liability. But it will be a
21  contained period of time.
22      MR. WOO: The only practical problem with that is
23  that we would have to sort of do things in parallel. But I
24  think we could avoid that expense. We feel strongly that we
25  should be able to get summary judgment in this case if we can

Page 8

1   get the claim construction hearing soon.
2       THE COURT: I think what's going to happen is that
3   you will get a claim construction, I would hope, by Friday, but
4   perhaps earlier than that or perhaps a little later than that,
5   but not much later than that, although I think that, for the
6   most part, the effective claim construction, I'm sure, will be
7   to suggest other alternative initiatives on both sides. But I
8   don't think that there is really that much difference as I
9   read through the preliminary injunction materials and the
10  contentions that the parties were making in the preliminary
11  injunction materials. I think that the claim construction
12  necessarily is at a very high level of generality. It's going
13  to have to be a fairly high level of generality. I'm not sure
14  it's going to answer questions that people want, although it
15  will refine the way in which you proceed. So, once you
16  maybe by the end of the week -- I hope so -- but certainly
17  relatively shortly thereafter. And, so, we're talking about
18  going forward with that in hand and a discovery schedule that
19  completes discovery on the merits, with the exception of
20  damages, the 28th of July with -- sorry to say it, but unless
21  the parties want to talk me out of it or feel that they
22  should -- opening briefs on the 25th of August, the reply
23  briefs on the 21st of September, and then a hearing on this
24  case on summary judgment motions. I guess I'd like to squeeze
25  this a little bit more and make it the 18th of August for

Page 9

1   summary judgment briefing, the 15th of August (sic) for the
2   responses.
3       MR. HAMELINE: September, Your Honor.
4       THE COURT: I mean, September. It will be just
5   those two sets of briefing. I assume that there will be cross
6   motions for summary judgment.
7       MR. HAMELINE: Your Honor, Ms. Haight and I both
8   have vacations for about a week and a half the first week of
9   August. I don't know if that's going to have any import on
10  changing it. We would therefore --
11      THE COURT: What would you prefer, having in mind
12  that you need -- that you're entitled to vacation?
13      MR. HAMELINE: We're looking for expedited
14  discovery.
15      THE COURT: Sure, I understand that.
16      MR. HAMELINE: But if we had another week on top of
17  the 15th, that would make our lives much easier.
18      THE COURT: Well, then I'm going to go back to --
19  why don't I say September 1 for the opening briefs and give you
20  September 29 for the closing briefs. In just realistically
21  looking at my trial schedule, November 1 for hearing, but
22  telling you on the motion for summary judgment, telling you
23  that you should be prepared and hold yourselves available for
24  trial starting the middle of November. That may be refined.
25  But what I'm planning on doing is keeping that time period from

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

| Page 10 | |
|---|---|
| 1 | mid-November through December open for what I would think would |
| 2 | be no more than seven days of trial. I can't see anything more |
| 3 | than that. Does that seem realistic to you? That probably |
| 4 | does. |
| 5 | MR. HAMELINE: That's fair, Your Honor. |
| 6 | THE COURT: Okay. |
| 7 | MR. WOO: Again, Your Honor, that squeezes things |
| 8 | quite a bit because we won't know the results of the summary |
| 9 | judgment. |
| 10 | THE COURT: No, you won't, but you'll have an idea |
| 11 | of what the issues are. And if you think the thing is going to |
| 12 | go away, you'll be happy; and if it doesn't, you'll be |
| 13 | prepared. |
| 14 | MR. WOO: But, Your Honor, is the four-month period |
| 15 | going to be inclusive of the expert discovery? |
| 16 | THE COURT: Yes. You both know who your experts |
| 17 | are. You have got some preliminary version of it. |
| 18 | Now, let me go back to the preliminary injunction |
| 19 | issue. To some degree, the irreparable harm is out of this now |
| 20 | if we just go to the merits of it. But the irreparable harm |
| 21 | here strikes me as more or less talking the market. Is there |
| 22 | anything else, Mr. Hameline? |
| 23 | MR. HAMELINE: Sure, Your Honor. I suppose there |
| 24 | is a spectrum of harm on the market in every case. But the |
| 25 | irreparable harm here is that Skyline is a small developing |

| Page 11 | |
|---|---|
| 1 | company. |
| 2 | THE COURT: Well, but disparity of resources. I |
| 3 | guess there doesn't appear to be — maybe you'd never want to |
| 4 | tell me in this context — the prospect of the company going |
| 5 | under. |
| 6 | MR. HAMELINE: Well, there is that prospect, Your |
| 7 | Honor. |
| 8 | THE COURT: Well, how do I make that determination |
| 9 | on this record? The affidavits are, as I said, at a fairly |
| 10 | high level of generality and concern and I wonder whether or |
| 11 | not I can find something like that. |
| 12 | MR. HAMELINE: Correct, Your Honor. Contextually, |
| 13 | let me talk about a couple of details. Contextually, it's a |
| 14 | small company in sales and that applies only to an amount |
| 15 | increasing in light of Google's presence. Its customers are |
| 16 | moving to Google. Its consultants and representatives who are |
| 17 | developing applications on top of these programs for specific |
| 18 | business applications are moving to the Google Earth platform |
| 19 | because that's the visceral platform that their clients are |
| 20 | talking about. They are the multi-billion dollar inlet in the |
| 21 | market. And to try to move into and capture the market here is |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| Page 12 | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | **REDACTED** |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| Page 13 | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | **REDACTED** |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

| Page 14 | Page 16 |
|---|---|
| 1 | 1  you haven't shown that it's exclusive in the sense that it |
| 2 | 2  excludes you from getting that information. But you bear the |
| 3 | 3  burden on irreparable harm. |
| 4 | 4  MR. HAMELINE: Correct. |
| 5 | 5  THE COURT: And as a consequence, I'm trying to |
| 6 | 6  understand what there is, apart from anxious concern. |
| 7 | 7  MR. HAMELINE: Well, there also is the loss of both |
| 8  **REDACTED** | 8  the customers and the consultants. We have a university of |
| 9 | 9  professors. We have customers who are -- and again it's in |
| 10 | 10  Mr. Yaron's affidavit -- talking about trying to promote a |
| 11 | 11  product and coming to basically dead ends in the process. |
| 12 | 12  THE COURT: Well, but who said they won't deal with |
| 13 | 13  you anymore in those words? They say that there is pressure |
| 14 | 14  out there and that people are trying to develop stops for |
| 15 | 15  Google Earth. Not surprising. But there is nobody who says |
| 16 | 16  "we're not going to deal with you" or at least I don't see |
| 17 | 17  anything here. |
| 18 | 18  MR. HAMELINE: Paragraph (5) refers to Professor |
| 19 | 19  Noland at the University of Alaska -- |
| 20 | 20  THE COURT: Right. |
| 21 | 21  MR. HAMELINE: -- one of the developers of |
| 22 | 22  applications. It talks about the general representative |
| 23 | 23  from -- his presentation talks about the problems that they are |
| 24 | 24  facing. |
| 25 | 25  THE COURT: What Mr. Yaron says is Mr. Noland says |

| Page 15 | Page 17 |
|---|---|
| 1 | 1  that he is having difficulty justifying. Now, put to one |
| 2 | 2  size -- because I obviously ease it up for preliminary |
| 3 | 3  injunction purposes. But putting to one side the totem pole |
| 4 | 4  quality to the hearsay in a circumstance in which I would have |
| 5 | 5  expected Professor Noland to provide an affidavit as opposed |
| 6 | 6  to Mr. Yaron, what that means is there is vigor in the |
| 7 | 7  marketplace, but it doesn't mean you have lost customers or it |
| 8 | 8  doesn't say you've lost customers. |
| 9  **REDACTED** | 9  MR. HAMELINE: Paragraph (10) talks about the |
| 10 | 10  defense market where at "Presentations, Sales Presentation |
| 11 | 11  Promotions," et cetera, Skyline is running into again that dead |
| 12 | 12  wall where it says that -- |
| 13 | 13  THE COURT: Paragraph (10)? |
| 14 | 14  MR. HAMELINE: Of the initial declaration. It |
| 15 | 15  says -- I can read it to Your Honor. |
| 16 | 16  THE COURT: Well, I've got it. I just want to be |
| 17  THE COURT: So, what else is there for purposes of | 17  sure which one we're talking about. Both of them bear the name |
| 18  irreparable harm here, except little guy, big guy kinds of | 18  "Declaration of Mr. Yaron," so I can't -- it's hard to go back |
| 19  stuff? | 19  and forth. |
| 20  MR. HAMELINE: Well, I would say that other points | 20  MR. HAMELINE: I should have said. I recognize |
| 21  are that Google denies everything and quibbles and disputes | 21  that. |
| 22  with everything and files a motion to strike everything. | 22  THE COURT: Well, I mean, I look at it and there |
| 23  Notably, this is one thing they didn't deny a dispute over. | 23  are sales pitches and product demonstrations. And it's not |
| 24  THE COURT: Well, that's not altogether true. In | 24  altogether clear what the nature of the conflict is or the |
| 25  their briefing, they focus on the reseller and point out that | 25  cross demand is on this. I guess -- all I'm getting at -- I |

5 (Pages 14 to 17)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 18

1 recognize, I suppose, the difficulties that you have. But what
2 I'm getting at is it's very hard to find irreparable harm in
3 the sense that I would want to find irreparable harm even in
4 the context of the patent infringement circumstance. But is
5 there anything else that I've got to --
6     MR. HAMELINE: No. I think, Your Honor, what's in
7 those two affidavits is the presentation on behalf of the
8 company with respect to the market impact on a small-growing
9 company who had a billion dollar market player come in, cut
10 prices, and take over the clients and take over the data
11 supplier. That's the general presentation.
12     THE COURT: But you say take over the clients. I
13 don't have evidence of taking over clients. What I have is
14
15
16
17
18
19          **REDACTED**
20
21
22
23
24
25
          **REDACTED**

Page 19

1
2     MR. HAMELINE: Right. Your Honor, I think in terms
3 of the context, had I known that these questions were going to
4 come up, I thought the focus of this would be infringement
5 analysis. And we probably should have put a little more detail
6 in the irreparable harm wing. My presumption in this context
7 is that where you have a patented technology, assume
8 infringement in this market context, my reaction to that is
9 that is the kind of irreparable harm that comes from the
10 context. I understand that --
11     THE COURT: There's something like a presumption
12 out there. I don't know exactly what it is. But you still
13 have to consider what the weight to be attached to it is. I
14 think it's probably decided in each individual case. But you
15 have to consider the various factors enter se. And it depends
16 to some degree on the weight of the likelihood of success on
17 the merits. But one of the things that kind of animates me to
18 think about preliminary injunction is whether or not there is
19 some cognizable -- apart from the fact that you're entitled not
20 to have your patent infringed on, some cognizable form of
21 irreparable harm. And that brings me to just a very specific
22 kind of thing. Is it your intention to try to a jury the
23 question of infringement and invalidity, assuming that we're
24 not dealing with damages at the time?
25     MR. HAMELINE: Are you asking me would we be

Page 20

1 waiving the jury claim?
2     THE COURT: No. I'm just asking -- well, maybe
3 I'm asking. We're going to be -- what we're looking at -- I
4 mean, the relief that you would get -- assume that you're
5 successful --
6     MR. HAMELINE: Right.
7     THE COURT: -- not necessarily on summary judgment,
8 but on the liability dimension of it, you'd be looking for an
9 injunction at that point and then time to think about what your
10 damages are.
11     MR. HAMELINE: Right. At this point, I would not
12 be waiving the jury presentation for that. I'd have to think
13 about that because I have not thought about the context.
14     THE COURT: So then it would be an advisory jury
15 for purposes of the liability questions?
16     MR. HAMELINE: Well, I don't believe so because I
17 think the liability questions would then proceed to the damages
18 case.
19     THE COURT: How do I -- am I trying it
20 coincidentally with the jury? That is to say, a jury can't
21 give you an injunction. I give you an injunction.
22     MR. HAMELINE: Correct.
23     THE COURT: In order for me to give you an
24 injunction, I have to make the necessary findings of fact. At
25 the same time, you have a jury sitting there. Now, what am I

Page 21

1 doing with the jury? Am I using them simply for purposes of
2 damages or am I using them for advisory purposes in connection
3 with the injunction that I assume that you'll be looking for
4 even at that first phase?
5     MR. HAMELINE: I don't believe it is advisory in
6 that context. If it is a trial on the merits for those issues,
7 it is a trial on the merits for those issue. And then you
8 would look at whatever the decision is by the jury and decide
9 at that point post resolution of those issues, apply the
10 appropriate standard. It wouldn't be a Rule 65 standard at
11 that point. It would be whatever standard comes out of -- I
12 guess E-Bay/Merck Exchange case which is now pending and
13 however the Supreme Court decides to tinker with or not tinker
14 with the presumed application for preliminary injunction or of
15 an injunction at that point.
16     THE COURT: Right. Okay. Well --
17     MR. HAMELINE: I hadn't thought of it in the
18 context that you're reasoning.
19     THE COURT: And I'm not holding you to anything
20 that you say there. I'm just trying to get a sense of what I'm
21 likely to be dealing with.
22     Now, let me turn you to the question of invalidity
23 here. And without making any final determinations, I have some
24 concerns about the Teravision article. And I want to get some
25 fuller understanding of the timing, because timing has become

6 (Pages 18 to 21)

MARCH 22, 2006>

SKYLINE V KEYHOLE>

**Page 22**

1 an issue here. I've had to kind of sift through, to some
2 degree, to figure out exactly when it became publicly available
3 simply because there are various kinds of contradictory bits
4 and pieces of evidence here. A copy I have indicates that it's
5 a draft of January 26th, 1995, but it appears to have been
6 obtained from a website. It's not altogether clear when that
7 happened. And I just want to understand what you say is the
8 time that this was published and whether or not it -- as a
9 consequence -- may be considered or not. So, maybe you can
10 walk me through your position on that.
11        MR. HAMELINE: Sure. Our position on that is that
12 is a document which is stamped "Draft." When defendants,
13 Google and Keyhole, subpoenaed SRI for this document, SRI
14 responded -- this is in our papers -- with an objection saying
15 "this is all confidential" and they would not produce it. So,
16 taking those two facts together, my understanding is that SRI's
17 position is this is not a public article, not publicly
18 available. It is confidential and was never published to the
19 general public. The fact that it's stamped "Draft" indicates
20 to me that somebody who ended up at Keyhole got a copy of this
21 perhaps while they were involved, I assume, in this project
22 because there seems to be some overlap between some of the
23 people at Keyhole who were working in connection with this
24 project. I don't see, therefore, that this was ever publicly
25 available.

**Page 23**

1        THE COURT: Well, but what do I do with references
2 to it in publicly-available materials? I guess the -- what is
3 it, Acrinoff and LeClerc? Is that the two articles that we're
4 talking about here?
5        MR. HAMELINE: There are two articles which are in
6 defendant's papers which reference either the general project
7 or one of them references the paper.
8        THE COURT: Right.
9        MR. HAMELINE: Neither one of them actually
10 discloses what's in the paper. They both refer to it. Again,
11 in that context, my understanding would be that SRI considers
12 this to be confidential. The people who wrote that paper were
13 allowed to comment on the project without releasing the level
14 of detail that's in the article. So, whatever is in those
15 articles, which Google doesn't claim are anticipatory
16 references, is all that's been disclosed publicly in this
17 context.
18        THE COURT: Okay. So, the circumstance is that you
19 need some sort of compulsion order to get it or they need some
20 sort of compulsion order to get it to raise the issue.
21        MR. HAMELINE: That would be my -- since not only
22 do they need a compulsion order, but if they need a compulsion
23 order and SRI's position is that this is not publicly
24 available, that this was a confidential document and disclosed
25 only to people who were involved in the project who then went

**Page 24**

1 off and referenced, perhaps with permission, that this is not
2 publicly available.
3        THE COURT: Okay. Mr. Woo, what do I do with that?
4        MR. WOO: Your Honor, I don't think you can read
5 anything into SRI's objections.
6        THE COURT: Well, but what can I do? Now we're
7 back to what's the foundation for your contention and
8 particularly in light of the fact that you bear a more
9 substantial burden with respect to invalidity.
10        MR. WOO: Yes. Well, as I was starting to say, I
11 don't think we can read too much into the fact that they object
12 blatantly to the subpoena because people do that to preserve
13 their right to confidentiality. It doesn't mean that
14 everything about the project was not in public. And in fact,
15 if we look at the Feiner declaration, Exhibit B, on its face,
16 it says that it was approved for public distribution, public
17 release and distribution unlimited. So, even the document
18 itself suggests that it was certainly public at a time --
19        THE COURT: Well, let me look at the Feiner
20 declaration on this issue. Where am I looking?
21        MR. WOO: Exhibit B, Your Honor.
22        THE COURT: All right. I don't have it up here
23 with me. Sorry. Do you have a copy of Exhibit B?
24        MR. WOO: I do, Your Honor. May we approach the
25 Court?

**Page 25**

1        THE COURT: Well, where is the reference in the
2 affidavit itself or the declaration? I mean, this is the
3 document. But where is the reference in the affidavit that
4 said this was publicly available before -- and I guess the
5 magic date here --
6        MR. WOO: The document itself says that it was
7 available, Your Honor. I don't know that the document by
8 Feiner has personal knowledge to --
9        THE COURT: Well, but the document bears on its
10 face something that says "Approved for public release,
11 distribution unlimited."
12        MR. WOO: Correct.
13        THE COURT: Okay. Now, I'm not sure what I make of
14 something like that. Is this a draft of the thing that was
15 going to be approved for public release? The short of it is
16 I'm not sure that there has been proof that would be adequate
17 at trial, anyway. Put to one side that we're dealing on
18 summary judgment with the seat of the pants problem of
19 evidentiary production that would establish that this thing was
20 publicly available.
21        MR. WOO: Well, we --
22        THE COURT: And just so I'm clear on this, you
23 suggested that September 1997 is the priority date.
24        MR. WOO: Well, that would be the earliest possible
25 one. I'm not so sure that that is actually true --

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 26

1    THE COURT: Right.
2    MR. WOO: -- because of this patent issue from the
3    continuation in part application which added substantial new
4    matter. So, I think the priority date is probably '99.
5    THE COURT: '99 or '98.
6    MR. WOO: I believe that's the end date of the
7    application.
8    THE COURT: I think the application was '99, which
9    would make the priority date '98, wouldn't it?
10    MR. WOO: That's correct.
11    THE COURT: February of '98?
12    MR. WOO: That would be -- the priority date would
13    be '99, but then the magic date would be --
14    THE COURT: Right. February of '98.
15    MR. WOO: Right.
16    THE COURT: So, what I have is -- in respect of the
17    Teravision paper -- documents that are supposed to speak for
18    themselves because they have no affiants who are speaking for
19    them, right? That is, one of them says "Draft." This one says
20    "Approved for public release" and apparently it didn't resonate
21    in the forest when it was delivered.
22    MR. WOO: Well, that at least suggests that it was
23    made public, Your Honor.
24    THE COURT: Okay. So --
25    MR. WOO: And since we haven't been able to do

Page 27

1    discovery either because of the phasing --
2    THE COURT: Right.
3    MR. WOO: -- we haven't been able to pursue that.
4    But we have --
5    THE COURT: Let me pass it back. Let me assume for
6    these purposes -- I'm going to do it in a decision tree basis.
7    Assume that I say you have got insufficient evidence to satisfy
8    me that this was publicly available at the time, what else do
9    you have for purposes of invalidity really?
10    MR. WOO: Well, we have the Migdal and Cosman
11    references.
12    THE COURT: Right. Admittedly weaker.
13    MR. WOO: Pardon me?
14    THE COURT: Admittedly weaker for purposes of
15    invalidity.
16    MR. WOO: Well, perhaps because the Migdal
17    reference was referenced in the patent. But there is certainly
18    a suggestion within the reference themselves to combine the two
19    references into a 103 obviousness invalidity. And assuming
20    that we could, what would allow discovery to prove up that this
21    document was, in fact -- this Teravision system was, in fact,
22    in the public domain prior to the critical date, we can see
23    that it maps almost entirely to the patent claims in this
24    case.
25    THE COURT: Well, put that to one side for a

Page 28

1    moment, although I will ask to some degree -- or ask
2    Mr. Hameline about this. But at this point -- that is, at the
3    summary judgment point -- for purposes of your invalidity
4    claim, it doesn't have the robustness that would be necessary,
5    does it, to provide an effective undermining of what is
6    essentially a presumption on their part that they've got a
7    valid patent. What I have is a document, the timing -- the
8    public disclosure of which is unclear or at least not supported
9    in the way that I would expect it to be supported by a cast of
10    thousands saying, "oh, yes, in 1995, I read this and was
11    stunned by it." I don't have anything like that. I just have
12    two cover pages or two competing cover pages. And then I have
13    Migdal, which is, as you point out, disclosed. Now, does that
14    deal with obviousness? No, it doesn't entirely. But you need
15    more discovery to deal with that. But is there anything else
16    to validity that would say you're going to be likely to
17    demonstrate that by clear and convincing evidence?
18    MR. WOO: Well, we have since then found two
19    additional articles that suggest that this --
20    THE COURT: Do I have them?
21    MR. WOO: Not currently, Your Honor. I have copies
22    here.
23    THE COURT: This was the time if I'm going to be
24    using them.
25    MR. WOO: Right.

Page 29

1    THE COURT: I mean, no, not handing it up today.
2    MR. WOO: I see. Correct, Your Honor. I don't
3    have those in the present record as it stands right now.
4    THE COURT: Okay. So, for purposes of the
5    invalidity claim here as against the motion for preliminary
6    injunction, I think, if I'm satisfied that I cannot reach the
7    question of Teravision, then I can't say that there is a
8    sufficient defense here to overcome a demand for preliminary
9    injunction.
10    MR. WOO: Well, all we have to raise is a serious
11    question in the likelihood of proving invalidity. And I think
12    that's what --
13    THE COURT: Well, yes, but against a standard that
14    really involves a spectrum, I think. I mean, the reason I
15    think the courts say "likelihood" is that that doesn't help us
16    down to saying how much of a likelihood. And, so, at this
17    stage, it's hard for me to assess the likelihood that you're
18    going to be successful on your invalidity claim because of the
19    two peculiar circumstances: One, the question of public
20    availability at Teravision; and the other that the examiner
21    just didn't have it in front of him and actually rejected some
22    claims as a result of that. So, he carefully thought about it.
23    MR. WOO: Well, actually the record indicates just
24    the opposite. It indicates that the examiner found one element
25    missing from Migdal and he said what that was. And the Cosman

8  (Pages 26 to 29)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f5cc34be5ec5

SKYLINE V KEYHOLE>

Page 30

1   article supplies that missing element which suggests to me that
2   the examiner was not careful and didn't realize it because had
3   he read the two, he would have come to that conclusion.
4        THE COURT: Okay. But that's what I have to say,
5   isn't it, that the examiner wasn't very careful?
6        MR. WOO: Well, that would seem to be the case,
7   Your Honor.
8        THE COURT: Okay. So, Mr. Hameline --
9        MR. HAMELINE: Your Honor --
10       THE COURT: -- let's assume that I do say that
11  we're on summary judgment or we're on preliminary injunction, I
12  have got some scope in drawing my own circumstantial views
13  concerning this, that Teravision was out there, what does that
14  do for you?
15       MR. HAMELINE: Just to back up a couple of points
16  to clarify. One is I think the magic date is September 1996
17  because there's an earlier -- this is a continuation.
18       THE COURT: Well, I guess I want to be sure that
19  this is a real dispute. You've got a continuation here. It
20  seems to me that unless you just get in there so early that you
21  foreclose everything, that things that would have been
22  considered or could have been considered by the examiner ought
23  to be considered by me. And, so, I would use the magic date of
24  February 1999, wouldn't I?
25       MR. HAMELINE: I would think that the examiner

Page 31

1   would use the date of September of 1996 because the initial
2   application was filed September of 1997. This is a
3   continuation, in part, out of that application. So, I'm not an
4   expert in patent procedure, but my understanding is that that
5   MPE, that the patent examiner would look to the date on the
6   face of the application or the application family and look at
7   that. I'm not sure that that's -- I just wanted to point that
8   out because there are still some dates before that --
9        THE COURT: Right.
10       MR. HAMELINE: -- that we're talking about here.
11  And just to clarify a couple of points here, it's interesting
12  that Migdal cites Cosman as one of the Article I references.
13  And, so, the examiner would have both of those in front of
14  him. Second, it's interesting that one of the inventors on
15  Migdal is Michael T. Jones, who is the Chief Technical Officer
16  for Keyhole. When the Migdal Jones patent was filed, SRI is
17  never referenced. It post-dates the SRI references we have
18  here.
19       THE COURT: Apart from a delicious irony, what does
20  that have to do with making a judgment about the question of
21  invalidity for you?
22       MR. HAMELINE: If Migdal is an obviousness
23  reference and SRI is an anticipation reference -- the two of
24  them are really on top of each other -- clearly they should
25  have been cited. SRI should have been cited in Migdal and the

Page 32

1   examiner --
2        THE COURT: So then if somebody -- if there is a
3   failure to provide a complete disclosure in the prior --
4        MR. HAMELINE: I think I know where you're going.
5        THE COURT: -- in the prior art, then that
6   disqualifies the prior art from being considered?
7        MR. HAMELINE: No. I think we're talking about
8   litigation representations and the real world non-litigation
9   representation. Mr. Jones made a representation to the patent
10  office under all the sort of oaths that you sign in
11  representations of good faith and diligence in the Migdal that
12  SRI was not relevant or didn't know about it. Now, years
13  later, he's making the reference when it's in his interest in
14  the litigation context that SRI is right on point and
15  relevant. That's the context.
16       THE COURT: Well, so that's just a credibility
17  issue.
18       MR. HAMELINE: Well, it's an indicator --
19       THE COURT: You know, what kind of person doesn't
20  tell the patent examiner when he does tell the Judge eight
21  years later or however much later?
22       MR. HAMELINE: It's either a credibility issue in
23  the sense that he didn't think that it was on point then or he
24  didn't know about it then and it was a question of whether it
25  was public and whether it could be disclosed to the patent

Page 33

1   office or whatever becomes -- I think all of those come
2   together. So that's just a point I wanted to make.
3
4
5
6
7
8
9
10
11

**REDACTED**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

9 (Pages 30 to 33)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 34

REDACTED

Page 36

1  that are referenced in things that are listed, right?
2          MR. WOO: Well, no. We can only assume that he
3  looked at and considered the things that were actually
4  referenced, not the reference within a reference.
5          THE COURT: Well, does it —
6          MR. WOO: Because —
7          THE COURT: — become become absolutely necessary
8  that every possible reference be included on the front page as
9  a matter of procedure or are only the most significant prior
10 references necessary?
11         MR. WOO: The things that the patent examiner —
12 officially for the purposes of the record and for the purposes
13 of our purposes here.
14         THE COURT: How do I know that? And this is a
15 question on patent procedure that I'm simply — one of the many
16 parts of patent procedure I'm unfamiliar with. But is there
17 some obligation on the part of the patent examiner to list all
18 of those on which he relies; and if he doesn't, then he can't
19 be said to have relied on them?
20         MR. WOO: The purpose of the file history is this
21 public notice function. And, therefore, if it's not listed —
22         THE COURT: Are there — well, I'll be more
23 specific. Are there patent examiner's procedures and handbooks
24 that tell them they have to do that?
25         MR. WOOD: There are. And I don't know off hand if

Page 35

REDACTED

23         THE COURT: Well, but what do I do? Yes, maybe
24 that's right. Maybe he didn't put it on the front page of the
25 patent. But I have to assume that he did not look at things

Page 37

1  there is a specific patent procedure requirement for this, but
2  I can look it up and provide it to Your Honor.
3          But the point I want to make today is simply that,
4  first of all, going back to the point of Mr. Jones not saying
5  anything about the SRI reference because the Migdal reference
6  doesn't fully anticipate — at least we're not asserting that
7  it fully anticipates — the Skyline patent, we don't know why
8  he didn't disclose it. It may have been cumulative as another
9  reference. It may have been —
10         THE COURT: Well, but I mean he's your guy.
11         MR. WOO: Yes, true. But—
12         THE COURT: I mean, this is like a Victorian
13 marriage. There are some things you don't talk about; is that
14 it?
15         MR. WOO: No, no. But he was trying — he would
16 only have to disclose what's pertinent to his patent at the
17 time. The patent at the time wasn't fully anticipatory of
18 their patent. So, therefore, he may or may not have had an
19 obligation to even disclose the SRI reference. That's the only
20 point I'm making.
21         And we don't know any of this because discovery
22 hasn't taken place.
23         THE COURT: Okay. But I mean that goes back — to
24 the degree that you bear the burden, it's improper to say it
25 quite that way. But because of the increased degree of

10 (Pages 34 to 37)

MARCH 22, 2006>

SKYLINE V KEYHOLE>

Page 38

1  scrutiny that has to be given to invalidity claims, it amounts
2  to the same thing, that you're going to have to show with some
3  degree of specificity -- that is, reliable here -- enough to
4  make me of the view that you have a substantial likelihood of
5  succeeding on validity.
6         MR. WOO: And the combination. I mean, even again,
7  the combination of the two references clearly discloses all
8  three elements that are --
9         THE COURT: Okay. So, what I have to look at is
10 Migdal and Cosman to be satisfied that you're a long way home
11 on invalidity; is that it?
12        MR. WOO: Well, again, it's on the sliding scale
13 Your Honor would apply. But yes, there is at least a serious
14 question of invalidity because at least one of the articles --
15 the Cosman article, is clearly shown -- isn't shown to have
16 been considered by the examiner. The combination with the
17 Migdal reference does cover all the elements of the Skyline
18 patent. There's a motivation to combine because the reference
19 itself suggests that. And we have all the elements we need for
20 a '103 obviousness invalidity finding. And as a result of
21 that, we have shown, Your Honor, that we have a serious
22 question of invalidity that should preclude preliminary
23 injunction from issuing here.
24        THE COURT: All right.
25        MR. WOO: Now, of course, we have non-infringement

Page 39

1  which we haven't talked about.
2
3
4
5
6
7
8
9            REDACTED
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 40

1
2
3
4
5            REDACTED
6
7
8
9
10
11
12
13
14        THE COURT: All right. Go ahead.
15        MR. WOO: If we could just start off with -- as
16 a preface to this, first of all, Your Honor, plainly the
17 patent --
18        THE COURT: Do you guys have it?
19        MR. HAMELINE: No. We can move down there.
20        THE COURT: No, no. I should be able to do it.
21        MR. HAMELINE: We have it. We do.
22        MR. WOO: So, first of all, addressing plaintiff's
23 arguments about screening and sound-like images, this is a
24 patent case. The patent is not directed -- it's about what's
25 claimed. It's not about the overall effect. They just can't

Page 41

1  point to the overall system and say "well" --
2         THE COURT: But to some degree, they do get some
3  benefit from the doctrine of equivalents.
4         MR. WOO: Well, they might be able to do that. But
5  I can show Your Honor how it doesn't do it in the same way at
6  all. What I have here on the screen are the claim elements
7  that are at issue. And we can see that they are very
8  specifically directed to the internal operation of the
9  software. Their expert has only observed the external
10 operation. And from that, you can't determine really much of
11 anything.
12        THE COURT: Well, but that just then goes to the
13 question of we're here on a preliminary basis before they're in
14 a position fully to respond to what you have to say.
15        MR. WOO: But as a matter of evidence, I'm just
16 directing Your Honor to the second bullet -- the last bullet
17 point on this page. The Keating declaration is fatal to their
18 present motion because all he ever does is argue the reverse of
19
20
21
22
23          REDACTED
24
25

MARCH 22, 2006>

0354130b-5d69-4374-857d-f8cc34be5ec5

SKYLINE V KEYHOLE>

Page 42

REDACTED

9     The second point, as Your Honor alluded to, is that
10 the public documentation doesn't speak to the internal
11 operation. There is no evidence about --
12     THE COURT: Let me stop with that --
13     MR. WOO: Yes.
14     THE COURT: -- in the same way that I stopped about
15 the jury thinking about it at the time. Is there going to be a
16 major discovery problem here?
17     MR. WOO: In what respect, Your Honor?
18     THE COURT: The disclosure of your internal
19 operations.
20     MR. WOO: There could be. In terms of the
21 confidentiality, there could be. I mean, we do hold this
22 operation as a trade secret because it operates in so
23 fundamentally a different way from pretty much anything in the
24 way of --
25     THE COURT: Okay. Well, it's going to be disclosed

Page 43

1 sooner or later. How are we going to get to it? It's going to
2 be disclosed to someone sooner or later that's able to respond
3 to it.
4     MR. WOO: Correct. That's correct, Your Honor.
5 And it would be disclosed to Your Honor. We'll disclose it to
6 the fact-finding jury.
7     THE COURT: No, I understand all of that. But I'm
8 just talking about the discovery stage that I'm going to be
9 faced with --
10     MR. WOO: Well, as to confidentiality, we have been
11 working with Mr. Hameline's office to come up with a proposed
12 form of protective order that would guard adequately the
13 confidentiality of the --
14     THE COURT: And are you enthusiastically
15 optimistic, cautiously optimistic, or you just have no idea
16 what's going to happen?
17     MR. WOO: You know, it's hard to know. But I think
18 Mr. Hameline and I can work out a reasonable protective order
19 that's going to provide adequate safeguards.
20     THE COURT: All right. Mr. Hameline, what's your
21 temperature?
22     MR. HAMELINE: Ms. Haight has been more recently in
23 those communications. I understand there are about three open
24 issues. If we can't close three open issues, I would be
25 surprised. We're certainly hopeful.

Page 44

1     THE COURT: Okay. All right.
2     MR. HAMELINE: That's where we are.
3     THE COURT: I'm just thinking about things to keep
4 me awake at night.
5     MR. HAMELINE: And those are within the four
6 corners of the document as it now exists. With those three
7 open issues, there would be a disclosure of, as I understand
8 it, a source code and related documentation.
9     THE COURT: Okay.
10     MR. WOO: That's correct, Your Honor.
11     THE COURT: All right.
12     MR. WOOD: Once Your Honor grants us the protective
13 order that is currently on the table, we have a few things to
14 resolve, but we should be able to --
15     THE COURT: Okay. Now, let's go back to the screen
16 here. The argument on this slide is essentially failure of
17 proof, not that it isn't the case, but failure of proof.

REDACTED

Page 45

REDACTED

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 46

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REDACTED

Page 48

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REDACTED

Page 47

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REDACTED

Page 49

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REDACTED

13 (Pages 46 to 49)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

| Page 50 | Page 52 |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |

| Page 51 | Page 53 |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |

14 (Pages 50 to 53)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f8cc34be5ec5

SKYLINE V KEYHOLE>

| Page 54 | Page 56 |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |
| Page 55 | Page 57 |
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |

15 (Pages 54 to 57)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34ba5ec5

SKYLINE V KEYHOLE>

| Page 58 | | Page 60 |
|---|---|---|
| 1 | 1 | |
| 2 | 2 | |
| 3 | 3 | |
| 4 | 4 | |
| 5 | 5 | |
| 6 | 6 | |
| 7 | 7 | |
| 8 | 8 | |
| 9 | 9 | |
| 10 | 10 | |
| 11 | 11 | |
| 12 | 12 | |
| 13 | 13 | |
| 14 | 14 | |
| 15 | 15 | |
| 16 REDACTED | 16 | REDACTED |
| 17 | 17 | |
| 18 | 18 | |
| 19 | 19 | |
| 20 | 20 | |
| 21 | 21 | |
| 22 | 22 | |
| 23 | 23 | |
| 24 | 24 | |
| 25 | 25 | |

| Page 59 | | Page 61 |
|---|---|---|
| 1 | 1 | |
| 2 | 2 | |
| 3 | 3 | |
| 4 | 4 | |
| 5 | 5 | |
| 6 | 6 | |
| 7 | 7 | |
| 8 | 8 | |
| 9 | 9 | |
| 10 | 10 | |
| 11 REDACTED | 11 | REDACTED |
| 12 | 12 | |
| 13 | 13 | |
| 14 | 14 | |
| 15 | 15 | |
| 16 | 16 | |
| 17 | 17 | |
| 18 | 18 | |
| 19 | 19 | |
| 20 | 20 | |
| 21 | 21 | |
| 22 | 22 | |
| 23 | 23 | |
| 24 | 24 | |
| 25 | 25 | |

16 (Pages 58 to 61)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f8cc34be5ec5

SKYLINE V KEYHOLE>

| Page 62 | Page 64 |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |
| **Page 63** | **Page 65** |
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |

17 (Pages 62 to 65)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

```
Page 66                          Page 68
1                               1
2                               2
3                               3
4                               4
5                               5
6                               6
7                               7
8                               8
9                               9
10                              10
11                              11
12     REDACTED                 12
13                              13      REDACTED
14                              14
15                              15
16                              16
17                              17
18                              18
19                              19
20                              20
21                              21
22                              22
23                              23
24                              24
25                              25
```

```
Page 67                          Page 69
1                               1
2                               2
3                               3
4                               4
5                               5
6                               6
7                               7
8      REDACTED                 8
9                               9
10                              10
11                              11      REDACTED
12                              12
13                              13
14                              14
15                              15
16                              16
17                              17
18                              18
19                              19
20                              20
21                              21
22                              22
23                              23
24              y               24
25                              25
```

18 (Pages 66 to 69)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f8cc34be5ec5

SKYLINE V KEYHOLE>

| | Page 70 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | REDACTED |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | Page 72 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | REDACTED |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | Page 71 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | REDACTED |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | Page 73 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | REDACTED |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

19 (Pages 70 to 73)

MARCH 22, 2006>

SKYLINE V KEYHOLE>

| Page 74 | Page 76 |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |
| Page 75 | Page 77 |
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED | 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>REDACTED |

20 (Pages 74 to 77)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

| Page 78 | | Page 80 | |
|---|---|---|---|
| 1 | | 1 | |
| 2 | | 2 | |
| 3 | | 3 | |
| 4 | | 4 | |
| 5 | | 5 | |
| 6 | | 6 | |
| 7 | | 7 | |
| 8 | | 8 | |
| 9 | | 9 | |
| 10 | | 10 | |
| 11 | | 11 | |
| 12 | | 12 | |
| 13 | REDACTED | 13 | |
| 14 | | 14 | |
| 15 | | 15 | REDACTED |
| 16 | | 16 | |
| 17 | | 17 | |
| 18 | | 18 | |
| 19 | | 19 | |
| 20 | | 20 | |
| 21 | | 21 | |
| 22 | | 22 | |
| 23 | | 23 | |
| 24 | | 24 | |
| 25 | | 25 | |

| Page 79 | | Page 81 | |
|---|---|---|---|
| 1 | | 1 | |
| 2 | | 2 | |
| 3 | | 3 | |
| 4 | | 4 | |
| 5 | | 5 | |
| 6 | | 6 | |
| 7 | | 7 | |
| 8 | | 8 | |
| 9 | | 9 | |
| 10 | | 10 | |
| 11 | | 11 | |
| 12 | | 12 | |
| 13 | REDACTED | 13 | REDACTED |
| 14 | | 14 | |
| 15 | | 15 | |
| 16 | | 16 | |
| 17 | | 17 | |
| 18 | | 18 | |
| 19 | | 19 | |
| 20 | | 20 | |
| 21 | | 21 | |
| 22 | | 22 | |
| 23 | | 23 | |
| 24 | | 24 | |
| 25 | | 25 | |

21 (Pages 78 to 81)

MARCH 22, 2006>

SKYLINE V KEYHOLE>

Page 82

**REDACTED**

16    THE COURT: All right. Let me outline a bit what I
17 have in mind. As I said, I will try and have the claim
18 construction to you in the next several days, I hope. I always
19 am fearful of saying something like that because I invariably
20 disappoint myself and thereby disappoint you. But I think I'm
21 about there on that.
22    We have a schedule that I think is a realistic
23 schedule for getting to this promptly. I have, as I have
24 indicated, some reservations about preliminary injunction, but
25 I'm not making a final determination at this point concerning

Page 83

1 that until I have a chance really to reflect a bit on the
2 argument this afternoon and look more carefully at some of the
3 slides.
4    I have one specific question: Does Keyhole still
5 have to be in the case? Is there something having to do with
6 the acquisition that makes it appropriate to keep Keyhole in
7 the case? That's just a --
8    MR. HAMELINE: I believe it does, Your Honor. It
9 was infringing initially. I'm not sure --
10    THE COURT: So you don't --
11    MR. HAMELINE: I'm not sure if it continues to be a
12 corporate entity or not.
13    THE COURT: Okay.
14    MR. HAMELINE: I assume that it is. But yes.
15    THE COURT: I mean, do you know if it's assumed all
16 of the obligations -- Google has assumed all the obligations of
17 Keyhole or do you know?
18    MR. WOO: I don't have that present knowledge, Your
19 Honor.
20    THE COURT: Well, I'm thinking ahead in terms of
21 presentation to a jury not to have multiple defendants and the
22 problems that that sometimes creates. And, so, just think
23 about it. It's not something I have to deal with right away.
24 Second, the dates I've given you are real -- that is, for trial
25 and for summary judgment. This case requires enough

Page 84

1 preliminary work that I will be scheduling it in a pretty rigid
2 sort of way. And, so, while you may chose to do your discovery
3 in particular ways at particular times and so on, those dates
4 for filing and for hearing and for trial are real. I'm carving
5 them out. They're not going to be -- nobody is going to
6 intrude on them during that time period. So, I really want you
7 to hold to those there. And I think I would be -- I don't
8 think I have mislead you and I think I would be misleading you
9 if I thought there was a likelihood that I would be granting a
10 preliminary injunction in this case. But I'm going to give it
11 another full set of considerations before I finally do that.
12 But you have to move on the assumption that I will not begin
13 your discovery accordingly.
14    Now, is there anything else that we need to take.
15 up?
16    MR. HAMELINE: Your Honor, just in light of the --
17 I suppose in some ways -- brevity compared to other patent
18 cases of the discovery period, if there's some process where we
19 could if we have a dispute that is fairly defined, et cetera,
20 send a letter to the Court or make a call to the Court. I'm
21 just thinking of expediting the issue if there is a discovery
22 issue that comes up --
23    THE COURT: I mean, I'm here. And I'm frequently
24 surprised that people don't call in the middle of depositions
25 because I'll try to answer the questions promptly. If I feel

Page 85

1 overburdened, you'll learn that I feel overburdened pretty
2 quickly. But I'll try to respond promptly to discovery
3 disputes. I tire easily of discovery disputes, so keep that in
4 mind.
5    MR. HAMELINE: I was just saying if some issue was
6 going to be a dating item to get something else done and we
7 need something to bring to your attention --
8    THE COURT: No. Put in a call. Ms. Rynne gets to
9 me right away. And we'll try to deal with it. And if I can't,
10 I'll try to deal with it. I'm not going to send this to a
11 Magistrate. It seems to me to be an invitation to disaster to
12 -- or not disaster, but just to have the thing go on forever
13 back and forth. So I'll try to keep control of it.
14    MR. WOO: One other thing, Your Honor. Because of
15 all the extensive discussion about the internal operation of
16 our software, if Your Honor could have the record sealed as to
17 that portion?
18    THE COURT: What I think I'm going to do on this is
19 to the degree that -- when the transcript is created, assuming
20 that you order one, I'll require the parties to indicate what
21 they want to have redacted out of the transcript. My general
22 view -- this is different because it's patents or more
23 demanding because it's patents -- is to look initially to the
24 parties to propose redactions. I do whatever I can to make as
25 much as possible public, but with due recognition of the

22 (Pages 82 to 85)

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5

SKYLINE V KEYHOLE>

Page 86

1    importance of commercial confidentiality.
2         So, the first step is to have you look at that
3    transcript to decide what's going to be covered and presumably
4    agree upon it.
5         MR. WOO:  We will, Your Honor.
6         THE COURT:  All right.  If there's nothing further,
7    then we'll be in recess.  Thank you.
8         MR. WOO:  Thank you, Your Honor.
9         MR. HAMELINE:  Thank you, Your Honor.
10        RECESSED AT 4:45 P.M.
11
12        - - - - - - -
13        CERTIFICATION
14        I certify that the foregoing is a correct
15   transcript of the record of proceedings in the above-entitled
16   matter to the best of my skill and ability.
17
18
19   Pamela R. Owens            Date
20   Official Court Reporter
21
22
23
24
25

MARCH 22, 2006>

0354130b-5d69-4374-857d-f6cc34be5ec5