## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SKYLINE SOFTWARE SYSTEMS, INC.,

        Plaintiff,

   v.

KEYHOLE, INC., and
GOOGLE INC.

        Defendants.

CIVIL ACTION NO. 04-11129 DPW
& 06-10980 DPW

## DEFENDANTS' OPPOSITION TO SKYLINE'S
## MOTION TO COMPEL DEFENDANTS TO PRODUCE
## WITNESS FOR 30(B)(6) DEPOSITION

Nelson G. Apjohn (BBO No. 020373)
**NUTTER McCLENNEN & FISH LLP**
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000
Fax:  (617) 310-9000

Attorneys for Defendants and
Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

<u>Of Counsel</u>
Darryl M. Woo, admitted *pro hac vice*
Michael J. Sacksteder, admitted *pro hac vice*
Heather N. Mewes, admitted *pro hac vice*
Carolyn Chang, admitted *pro hac vice*
Saundra L. M. Riley, admitted *pro hac vice*
**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111
Tel.  (415) 875-2300
Fax  (415) 281-1350

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 3

    A.   DEFENDANTS PRODUCED MICHAEL JONES, A WITNESS
        COMPETENT TO TESTIFY ON TOPIC 2, INCLUDING "THE
        CONTENT AND FUNCTIONALITY OF THE SOURCE CODE." .................. 3

    B.   SKYLINE DEPRIVED MR. JONES A FAIR OPPORTUNITY TO
        TESTIFY ABOUT THE CONTENT AND FUNCTIONALITY OF THE
        SOURCE CODE ................................................................................... 4

    C.   IN ADDITION TO MR. JONES AS AN INDIVIDUAL AND RULE
        30(B)(6) WITNESS, SKYLINE HAS DEPOSED THE SEVEN OTHER
        ENGINEERS, INCLUDING MR. ROHLF, KNOWLEDGEABLE
        ABOUT THE SOURCE CODE OF THE ACCUSED PRODUCTS .................. 6

    D.   SKYLINE DEMANDED FURTHER RULE 30(B)(6) TESTIMONY ON
        DEFENDANTS' CLIENT SOURCE CODE, BUT REFUSED TO MEET
        AND CONFER IN GOOD FAITH TO IDENTIFY THE ALLEGED
        AREAS OF DEFICIENCY OR FURTHER INQUIRY ............................... 7

III.  ARGUMENT .................................................................................................. 8

    A.   MICHAEL JONES WAS FULLY QUALIFIED AND PREPARED TO
        TESTIFY ON THE CONTENT AND FUNCTION OF DEFENDANTS'
        SOURCE CODE ................................................................................... 8

    B.   DEFENDANTS HAVE PRODUCED SIGNIFICANT DISCOVERY ON
        THEIR SOURCE CODE, INCLUDING EIGHT ENGINEERS, TWO OF
        WHICH WERE EXPRESSLY IDENTIFIED AS KNOWLEDGEABLE
        ON THE SOURCE CODE ................................................................... 11

    C.   EVEN THOUGH SKYLINE WAS RESPONSIBLE FOR ITS OWN
        DISSATISFACTION, DEFENDANTS REASONABLY ATTEMPTED
        TO ENGAGE SKYLINE ABOUT THE SCOPE OF THE REQUESTED
        FURTHER DEPOSITION; SKYLINE FILED ITS MOTION INSTEAD ........ 12

    D.   SANCTIONS ARE NOT APPROPRIATE BECAUSE SKYLINE'S
        MOTION WAS PREMATURE AND DEFENDANTS ACTED IN
        GOOD FAITH IN DESIGNATING MR. JONES ............................... 14

IV.   CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. Federal Bureau of Investigation,*
     186 F.R.D. 137 (D.D.C. 1998)................................................................................................ 10, 15

*Berwind Prop. Grp. Inc. v. Environmental Mgmt Grp.,*
     233 F.R.D. 62 (D. Mass. 2005)........................................................................................ 11, 15, 16

*Black Horse Lane Assoc. v. Dow Chem. Corp.,*
     228 F.3d 275 (3d Cir. 2000)................................................................................................... 15, 16

*Calzaturficio S.C.A.R.P.A. S.P.A., v. Fabiano Shoe Co.,*
     201 F.R.D. 33 (D. Mass. 2001) ............................................................................................ 15, 16

*Cummings v. General Motors Corp.,*
     No. CIV-00-1562-W,
     2002 U.S. Dist. LEXIS 27627 (W.D. Okla,. June 18, 2002) ................................................. 9, 13

*Dravo Corp. v. Liberty Mut. Ins. Co.,*
     164 F.R.D. 70 (D. Neb. 1995).................................................................................................... 9

*EEOC v. American Int'l Grp.,*
     No. 93-CIV-6390, 1994 U.S. Dist. LEXIS 9815 (S.D.N.Y. Jul. 18, 1994)........................... 10

*Marker v. Union Fidelity Life Ins. Co.,*
     125 F.R.D. 121 (M.D.N.C. 1989)........................................................................................... 9, 15

*Resolution Trust Corp. v. Southern Union Co.,*
     985 F.2d 196 (5th Cir. 1993) .................................................................................................... 15

*United States v. LaRouche Campaign,*
     682 F. Supp. 610 (D. Mass. 1987) ............................................................................................. 4

*Zappia Middle E. Constr. v. Emirate of Abu Dhab,*
     No. 94-CIV-1942, 1995 U.S. Dist. LEXIS 17187 (S.D.N.Y. Nove. 17, 1995).................... 10

## STATUTES

Federal Rule of Civil Procedure 30(b)(6) ...................................................................................... 12, 16

Federal Rule of Civil Procedure 37(a)(2)(A)-(B) ............................................................................. 13

Federal Rule of Civil Procedure 37(a)(4)(A)..................................................................................... 14

## I.    **INTRODUCTION**

Skyline's Motion to Compel is little more than an improper attempt to dictate to defendants Keyhole, Inc. and Google Inc. ("Defendants") whom they should designate as their corporate representative on a particular Rule 30(b)(6) topic.  Skyline's tactic becomes even more transparent in light of the fact that Skyline deposed its preferred witness – Google engineer John Rohlf – shortly after the Rule 30(b)(6) deposition of which Skyline now complains.  Yet even though Defendants' Rule 30(b)(6) designee had previously indicated that Mr. Rohlf would be a good person to examine further concerning the source code for Google Earth, Skyline almost completely neglected to examine Mr. Rohlf on that topic.  It now brings this Motion in a gamesman's attempt to get a second bite at the apple, having already deposed Mr. Rohlf for a full day.

However, Skyline is not entitled to that second bite.  Contrary to Skyline's contention, Defendants' Rule 30(b)(6) designee, Chief Technologist of Google Earth, Maps, and Local, Michael T. Jones, was fully qualified to testify concerning the Google Earth source code.  Skyline's own unreasonable examination techniques, not Mr. Jones' knowledge or preparation, are to blame for Skyline's failure to elicit the testimony they now seek.  Rather than permitting Mr. Jones to see the voluminous source code on which Skyline purported to examine him, Skyline's counsel effectively required Mr. Jones to testify concerning that source code from memory, denying him the opportunity to see the enormous volume of computer instructions about which he was being asked to testify.  Under those circumstances, no one could have answered Skyline's questions.

Defendants have also provided significant additional discovery concerning the operation of Google Earth and concerning the source code for the product.  No fewer than eight Keyhole and Google engineers have testified in depositions, and two of them (Mr. Rohlf and Francois Bailly) were specifically identified by other witnesses as having particular knowledge of the source code.  Moreover, although one of Skyline's lawyers provides a *faux* expert declaration in support of the Motion to Compel, it is significant that Skyline's actual technical expert had no

trouble navigating the Google Earth source code without additional testimony – relying extensively on particular portions of the source code in his expert report. Indeed, that designated expert conspicuously submits no declaration in support of Skyline's Motion.

Notwithstanding these facts, Defendants were fully willing to negotiate concerning the possibility of producing a witness to provide additional Rule 30(b)(6) testimony on source code. In order to do so, however, Defendants reasonably asked Skyline to identify the particular portions of the source code about which the supplemental witness should be prepared. The best Skyline could do was to identify the source code for the Google Earth "client" – in other words, the source code for the entire product that operates on the user's computer. That source code is tens if not hundreds of thousands of lines in length,[1] and no one engineer is knowledgeable concerning of the code in its entirety. Along similar lines, Defendants asked Skyline to identify the particular areas of Rule 30(b)(6) testimony that it considers deficient – again in an effort to determine the information that Skyline contends remains to be provided. No meaningful response was provided.

Instead, Skyline ran directly to the Court, circumventing the meet-and-confer process. Indeed, Defendants' requests and offer to designate an additional witness were still pending when Skyline prematurely filed this Motion in derogation of its obligation to meet and confer in good faith before filing. Under these circumstances, Skyline is not entitled to succeed on its motion\ to compel, nor is it entitled to the requested sanctions. The situation in which Skyline finds itself is of Skyline's own making, and Defendants should not be made to suffer for Skyline's purposeful conduct.

---

[1]  Skyline's brief chides counsel for reference to "millions" of lines, but the point being made was simply that the sheer number of lines makes it impossible for any one person to know all of it, so it is incumbent on Skyline to identify with at least some specificity, what portions they are most interested in, so that the appropriate designee may be offered.

## II.     STATEMENT OF FACTS

### A.     Defendants Produced Michael Jones, a Witness Competent To Testify on Topic 2, Including "the Content and Functionality of the Source Code."

In its original and amended Notice of Rule 30(b)(6) Deposition, Skyline identified as Topic 2 "[t]he design, structure, function, and operation of each of the Accused Products, including the content and function of the source code" ("Topic 2").  *See* Declaration of Saundra L. M. Riley in Opposition to Motion to Compel, ¶ 3, Ex. A.  Defendants objected to Skyline's deposition notices, including each deposition topic, on grounds including overbreadth and failure to designate topics with sufficient particularity to allow defendants to designate an appropriate witness.  *See* Riley Decl., ¶ 3, Ex. B at p. 1.  Defendants similarly objected to Topic 2 and its phrase "content and functionality of the source code" on grounds including overbreadth.  *See id.* at p. 5.  Without waiving their objections, Defendants produced Michael T. Jones for two days of deposition, including to testify on the at-issue Topic 2.  Riley Decl., ¶ 3.

Mr. Jones was the Chief Technology Officer of Keyhole and, after the acquisition by Google, the Chief Technology Officer of Google Earth, and is now the Chief Technologist for Google Earth, Maps, and Local.  Riley Decl., ¶ 12, Ex. H ["Jones Depo."] at 363:4-18.  In these roles, he is very familiar with Defendants' products and, in particular, the overall structure and functionality of the products.  Indeed, Mr. Jones expressly indicated that he was competent to testify as to what the functions of the products were and "how things work structurally."  Jones Depo. at 405:24-25; *see also* Jones Depo. at 17:18-22:19 (indicating Mr. Jones is competent to testify on Topic 2), 406:25-407:1 (indicating Mr. Jones can testify as to what the code does, but not why it was coded any particular way).  Given Mr. Jones' institutional knowledge and extensive knowledge about computer science (including source code), there was no need for Mr. Jones to read "line by line what could be 100,000 lines of source code" to "cram" for a deposition.  *See* Jones Depo. at 405:10-406:3.

**B.**    **Skyline Deprived Mr. Jones a Fair Opportunity To Testify About the Content and Functionality of the Source Code.**

Rather than avail themselves of Mr. Jones' knowledge and abilities, Skyline insisted upon a game of "hide the ball" in its examination of Mr. Jones. Instead of showing him various parts of the source code or simply even asking him how the accused program worked, Skyline conducted a memory test. Skyline's litigation counsel Flavio Rose (its newly minted "expert" who submitted his declaration in support of the present Motion instead of Skyline's disclosed Rule 26 expert, Dr. Dinesh Manocha[2]), with limited exception, refused to allow Mr. Jones to examine the code or find portions in it so that he could testify accurately as to its operation. *See, e.g.,* Jones Depo. at 412:20-413:12 (Mr. Jones states need to look at the source code to answer the question); 417:8-419:4 (Mr. Jones reiterates need to look at source code); 435:4-20 (Mr. Jones again states inability to answer question without source code, Skyline continues with questioning); 436:14-437:2 (Mr. Jones states need to look at source code); 454:23-455:12 (Mr. Jones suggests looking at source code, but Skyline continues with questioning); 460:2-23 (Mr. Jones states that questioning would be more efficient with a way to look at the source code); 494:2-15 (Skyline states that providing source code would take up too much time); 514:1-515:7 (same); 525:10-18 (Mr. Jones indicates Skyline is asking him to "look around a directory of 10,000 or more files"). Skyline's counsel's excuse was merely, "I'm not going to spend the time to do that." Jones Depo. at 494:12-15.

Skyline's ineffective deposition techniques regarding the inner workings of thousands of lines of complex code stand in stark contrast to Defendants' deposition of Ofer Shor, Skyline's

---

[2]    Under Massachusetts Rule of Professional Code Rule 3.7, such interjection by litigation counsel is highly questionable. Comment 2 to Rule 3.7 highlights the exact problem such dual roles presents: "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." *See also United States v. LaRouche Campaign,* 682 F. Supp. 610, 616-617 (D. Mass. 1987) (discussing former rule on same topic; expressing concerns about dual role of advocates as witnesses).

designee on its source code.[3]  As noted by Skyline in its Motion, Defendants identified and presented Mr. Shor with 45 exhibits, each containing a specific portion of Skyline's source code. *See* Memo. at p. 9.  Unlike the method employed by Skyline, Mr. Shor was not asked to conjure his explanations about the source code out of thin air.  Rather, Defendants' counsel  initially presented Mr. Shor with a list of "projects" – essentially source code directories – and had him identify which ones related to a specific functionality.  *See, e.g.,* Riley Decl., ¶ 13, Ex. I ["Shor Depo."] 76:1-119:17.  Defendants' counsel next presented Mr. Shor with a list of source code modules contained in the relevant projects and repeated the process until they reached the point where Mr. Shor was shown the actual relevant source code files.  *See, e.g., id.* at 199:10-200:16, 201:1-203:19.  Consequently, Mr. Shor was able to consult the excerpted source code during his deposition and testify about it.  When Mr. Jones requested this same opportunity to consult the source code (he did not request the careful process described above, rather just any chance to look at the source code), Skyline refused to provide Mr. Jones with the portions of source code about which it wanted testimony.  *See, e.g.,* Jones Depo. at 412:20-413:12, 417:8-419:4, 435:4-20, 436:14-437:2, 454:23-455:12, 460:2-23, 494:2-15, 514:1-515:7, 525:10-18.

Once it became clear that Skyline's failure to provide Mr. Jones with the source code presented an obstacle, counsel for Defendants offered to identify (post-deposition) those portions of the code that performed or were involved in various functions, so that the deposition time could be devoted to other matters.  Jones Depo. at 524:9-17 (Darryl Woo, counsel for Defendants, stating that "I understand that we also made an offer to plaintiff's counsel to supply information as to where to find the files that evidently he is trying to have this witness locate by real time on the record by some other means, if that would mean that we could move on from this.").  Skyline refused this offer.  *See, e.g.*, Jones Depo. at 527:20-538:23.

---

[3]      Skyline misleadingly states that Mr. Shor testified for two days.  *See* Memo. at p. 9.  Skyline omits the fact that Skyline requested that Mr. Shor be permitted to testify in Hebrew, with an interpreter to translate questions into Hebrew and answers into English.  Pursuant to that request, an interpreter was provided, and the time that the translation process required effectively cut in half Shor's deposition time.

Notwithstanding Skyline's chosen ineffective and unfair method for conducting the deposition, including its hiding the actual source code from the witness, Mr. Jones still provided competent testimony on the source code. *See, e.g.*, Jones Depo at 417:18-425:22, 454:23-459:14 (testifying as to the meaning of "Lod" and how a terrain tile is represented inside Google Earth after request to consult source code denied). In the rare instance that Skyline's counsel would allow Mr. Jones to see the source code, for instance, Mr. Jones competently testified about code that was part of the "updater." *See* Jones Depo. 442:21-445:24 (Mr. Jones testifying regarding functionality of source code). Further, while Mr. Jones did describe Mr. Rohlf as the "architect" of the source code and as a person knowledgeable on the topic,[4] Mr. Jones nevertheless testified competently on a wide range of topics, including the source code (*id.*), the meaning of "Lod" (Jones Depo. at 417:8-425:22), and how a terrain tile is represented inside Google Earth (Jones Depo. at 454:23-459:14).

### C.   In Addition to Mr. Jones as an Individual and Rule 30(b)(6) Witness, Skyline Has Deposed the Seven Other Engineers, Including Mr. Rohlf, Knowledgeable About the Source Code of the Accused Products.

Since June 1, 2006, Defendants have produced, in addition to Mr. Jones as a Rule 30(b)(6) witness and as an individual, eight other witnesses (seven of whom were engineers): Mark Aubin, Francois Bailly, John Hanke, Philip Keslin, Brian McClendon, Chikai Ohazama, John Rohlf, and Edward Ruben. Riley Decl., ¶ 2. Each of those witnesses was involved in the development of the accused products, and many had some familiarity with the accused products' source code. *See, e.g.*, Riley Decl., ¶ 14, Ex. J ["Rohlf Depo."] at 90:1-91:20; ¶ 15, Ex. K ["Bailly Depo."] at 12:4-23; ¶ 16, Ex. L [Keslin Depo.] at 25:6-18, 27:3-7, 205:22-221:19; ¶ 17, Ex. H [Ohazama Depo.] at 6:11-14:12.

Most notably, the day after Skyline completed Mr. Jones' allegedly inadequate deposition, Skyline deposed Mr. Rohlf (on June 28, 2006). *See* Riley Decl., ¶¶ 2, 14, Ex. J. Mr. Rohlf is a staff engineer and has written a large part of the code for Google Earth. Rohlf Depo.

---

[4]     Skyline deposed Mr. Rohlf on June 28, 2006 – the day after Mr. Jones' deposition. Riley Decl., ¶¶ 2, 14, Ex. J.

at 90:2-91:20. Skyline also deposed Francois Bailly after Mr. Jones' deposition (on September 12, 2006). Riley Decl., ¶¶ 3, 15, Ex. K. Bailly is a Google Earth engineer who, among other things, is responsible for a large section of code including that which relates to interaction between the Google Earth client and the Google servers. Bailly Depo. at 12:4-23. To the extent Skyline's counsel was prepared at all to ask source code questions of Mr. Jones, there is no reason why Skyline's counsel could not have asked thee same questions of Mr. Rohlf the next day at Mr. Rohlf's deposition, or over two months later at Bailly's deposition. Indeed, as Skyline conceded repeatedly, Mr. Jones identified Mr. Rohlf as another source for competent testimony on the source code. Further, Mr. Rohlf identified Mr. Bailly as knowledgeable on the source code before Skyline deposed Mr. Bailly. *See, e.g.*, Rohlf Depo. at 73:15-74:10, 208:2-12.

**D.    Skyline Demanded Further Rule 30(b)(6) Testimony on Defendants' Client Source Code, but Refused to Meet and Confer in Good Faith To Identify the Alleged Areas of Deficiency or Further Inquiry.**

Two weeks after Mr. Jones' and Mr. Rohlf's depositions (and before Mr. Bailly's deposition), Skyline requested that Defendants produce Mr. Rohlf as a Rule 30(b)(6) deponent on Defendants' source code, arguing Mr. Jones lacked sufficient knowledge on the topic and requesting Mr. Rohlf as a substitute 30(b)(6) witness. *See* Riley Decl., ¶ 4, Ex. C. As part of the meet and confer process, Defendants have considered, but, as reflected in their August 21, 2006 response, disagreed with Skyline's contention that Mr. Jones was an inadequate witness.[5] Riley Decl. ¶ 6, Ex. D. Defendants have invited Skyline "to identify the specific matters regarding the source code about which it believe[d] Defendants ha[d] provided inadequate testimony." *See id.*

---

[5]    Skyline makes much of the five weeks that passed  between its July 13, 2006 request for additional Rule 30(b)(6) deposition testimony and Defendants' August 21, 2006 response to that request, but ignores that the parties were in continual contact on a host of issues the two weeks following the request, including regarding the scheduling of additional depositions, the scope of the action, other discovery issues, and the proposed revised case calendar. Riley Decl., ¶ 5. Plaintiffs' counsel responsible for the meet and confer was then unavailable (out of the country) for about two weeks – through the second week of August. *Id.* Defendants responded to Skyline's request within a week of Skyline's counsel's return. *Id.* Furthermore, Skyline references "repeated demands" during this five-week timeframe, but provides no evidence (through declaration or otherwise) of those alleged "repeated demands."

Rather than provide the requested information, Skyline merely continued its assertions that Mr. Jones' testimony was inadequate. *See* Riley Decl., ¶ 7, Ex. E.

On or about September 14, 2006, counsel for the parties met telephonically to discuss Skyline's request for further Rule 30(b)(6) testimony on Defendants' source code. Riley Decl., ¶ 8. During the call, Skyline's counsel requested further testimony on Defendants' client source code, but otherwise was "not prepared" to identify the particular modules, functions, or files of the client source code about which it allegedly received inadequate testimony or about which it required further testimony. *Id.* Rather, Skyline's counsel indicated she thought it was "not reasonable" of Defendants to request such identification (without further explanation) and insisted that Defendants produce a further Rule 30(b)(6) designee on the vast topic of client source code, suggesting that Mr. Rohlf should be so designated. *Id.* Skyline confirmed its position in a letter later that same day and demanded a final response by close of business the next day. Riley Decl., ¶ 8, Ex. F.

On September 15, 2006, Defendants sent Skyline a letter again addressing Skyline's failure to identify the areas on which it believed it required further testimony and outlining Defendants' efforts to resolve the dispute and their concerns with Skyline's proposed resolution. Riley Decl., ¶ 9, Ex. G. Defendants further indicated they hoped to be able to resolve the matter informally the following week (*id.*); however, instead of contacting Defendants, Skyline filed its Motion (Riley Decl., ¶ 10).[6]

## III.    ARGUMENT

### A.    Michael Jones Was Fully Qualified and Prepared To Testify on the Content and Function of Defendants' Source Code.

Mr. Jones, as corporate designee, was properly designated and prepared to testify on Topic 2 of Skyline's deposition notice. *See* Jones Depo. at 405:10-406:3; *Dravo Corp. v. Liberty*

---

[6]    In its memorandum, Skyline insinuates that Defendants have failed to designate a witness to testify on topics identified in its further Rule 30(b)(6) deposition notice of August 22, 2006. *See* Memo. at p. 2, n.2. The subsequent Rule 30(b)(6) deposition notice is unrelated to this Motion. Moreover, Skyline's commentary is premature (and potentially misleading) because it ignores the parties' agreement to reconsider the scope of *each party's* further Rule 30(b)(6) deposition notice, discuss limitations on those topics, and then discuss the designees on those limited topics. Riley Decl., ¶ 11.

*Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995); *Marker v. Union Fidelity Life Ins. Co.*, 125

F.R.D. 121, 126 (M.D.N.C. 1989). As Chief Technology Officer for Keyhole and Google Earth

and then Chief Technologist for Google Earth, Maps, and Local, Mr. Jones was very involved

with the Keyhole product from inception to its present form in the Google Earth product. Jones

Depo. at 363:4-18. Skyline's argument that, because Mr. Jones did not "cram" for the

deposition, he was not sufficiently knowledgeable about the products and source code (*see*

Memo. at pp. 11-15) lacks merit:

> Q. So the answer is that you did not speak to anyone other than your lawyers
> about the design and implementation of Google Earth in order to prepare for this
> 30(b)(6) deposition; correct?
>
> Woo: Object to the form. Mischaracterizes the testimony.
>
> The Witness: What I actually said was that, although I have spent years, what
> feels like a lifetime, understanding how things work and deciding how things
> should work and debating how things might work better or worse, I haven't spent
> any time reading line by line what could be 100,000 lines of source code…If you
> want to know what functions were done, how things work structurally, I can tell
> you how that works. If you actually want to know why is there an underscore in
> that variable name, you should talk to the author of that software.

Jones Depo. at 405:10-406:3. Mr. Jones' experience provided him a greater familiarity with the

product than one can learn in a few hours of "cramming." *See Cummings v. General Motors*

*Corp.*, No. CIV-00-1562-W, 2002 U.S. Dist. LEXIS 27627, *26 (W.D. Okla,. June 18, 2002)

(motion to compel further Rule 30(b)(6) deposition denied; deponent's failure to review certain

documents to prepare for deposition did not create doubt as to his knowledge); *Marker*, 125

F.R.D. at 126 (M.D.N.C. 1989) (obligated to prepare witness *if* the witness lacks personal

knowledge of the subject areas), *cited by Dravo*, 164 F.R.D. at 75 (D. Neb. 1995).

    In fact, Skyline owes its dissatisfaction to its own ineffective deposition techniques:

Skyline refused to show Mr. Jones the source code. While Defendants used a careful, deliberate

process to identify with Skyline's source code designee Mr. Shor the relevant passages of source

code and then provided Mr. Shor with the actual source code during his deposition, Mr. Jones

was denied the opportunity to review the source code despite repeated requests to do so. *See,*

*e.g.,* Jones Depo. at 412:20-413:12, 417:8-419:4, 435:4-20, 436:14-437:2, 454:23-455:12, 460:2-23, 494:2-15, 514:1-515:7; 525:10-18.  In short, Skyline did not conduct a deposition; it attempted an improper "memory contest."  *See Alexander v. Federal Bureau of Investigation,* 186 F.R.D. 137, 143 (D.D.C. 1998) ("Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'... Rule 30(b)(6) puts several duties on the designating party and on the deponent, but one of them is not omniscience."); *Zappia Middle E. Constr. v. Emirate of Abu Dhab,* No. 94-CIV-1942, 1995 U.S. Dist. LEXIS 17187, *10 (S.D.N.Y. Nove. 17, 1995) (same); *EEOC v. American Int'l Grp.,* No. 93-CIV-6390, 1994 U.S. Dist. LEXIS 9815, *8 (S.D.N.Y. Jul. 18, 1994) (same).  Skyline's tactics notwithstanding, Mr. Jones still provided competent testimony regarding the Google Earth source code, particularly in the limited instances where he was provided the source code. *See, e.g.,* Jones Depo. at 417:5-425:22, 442:21-445:24, 454:23-459:14.

Through its unreasonable deposition techniques, Skyline burdened Mr. Jones with an impossible task.  The source code contains tens of thousands of lines of code.  *See* Jones Depo. at 405:16-406:3 (referring to "what could be 100,000 lines of source code").  Neither Mr. Jones nor any other witness could possibly know every single line of the code, particularly where the deposing party refuses to allow the deponent to consult the source code.  With only limited guidance as to topic ("source code"), and without the source code in front of him, it is neither surprising nor a violation of Rule 30(b)(6) that Mr. Jones could not recall every piece of the code.  Skyline's current dissatisfaction is not due to alleged inadequacies with Mr. Jones' knowledge or preparation; rather it stems from Skyline's own failure to provide Mr. Jones with a fair opportunity to testify on the source code.

### B.    Defendants Have Produced Significant Discovery on Their Source Code, Including Eight Engineers, Two of Which Were Expressly Identified as Knowledgeable on the Source Code.

Skyline's purported dissatisfaction with the testimony concerning the Google Earth client source code rings particularly hollow in light of the extensive discovery Defendants have provided about their source code and the operation of Google Earth.  In addition to Mr. Jones, as

the corporate designee and as an engineer knowledgeable about the accused products, Defendants have also made nearly every engineer with significant involvement in the development of the source code for the accused products available for deposition, resulting in *seven additional depositions*. *See* Riley Decl., ¶ 2. Two of those engineers – Messrs. Rohlf (as conceded by Skyline) and Bailly (as shown in Mr. Rohlf's deposition testimony) – were specifically identified by other witnesses *before* their depositions as being knowledgeable on the source code, and both testified *after* Mr. Jones' allegedly inadequate deposition testimony. Rohlf Depo at 73:15-74:10, 208:2-12. To the extent that Skyline needed more details about the source code from Mr. Rohlf, Skyline deposed him *the day after Mr. Jones' deposition* and could easily have asked him the very same questions concerning the source code that it was prepared to ask Mr. Jones. The same is true of Mr. Bailly, who was deposed *two months* after the depositions of Messrs. Jones and Rohlf and Skyline's request for further Rule 30(b)(6) testimony.

Surely in light of of these further depositions of knowledgeable witnesses, Skyline had the opportunity to obtain testimony on the inner workings of the Google Earth source code. Skyline's contention that only a Rule 30(b)(6) witness will suffice on this topic is unsupported – indeed, it is directly contradicted by recent precedent in this District. *See, e.g., Berwind Prop. Grp. Inc. v. Environmental Mgmt Grp.*, 233 F.R.D. 62, 66 (D. Mass. 2005) (stating that company not obligated to produce further 30(b)(6) designee on topics that were adequately addressed by non-30(b)(6) witnesses). It would be absurd for Defendants to try to disclaim the sworn testimony of its engineers who wrote the code or built the product on the ground that they were not corporate designees.[7] However, even though Skyline was clearly on notice of the scope and nature of these witnesses' knowledge, Skyline largely elected not to examine them in depth on the details of the Google Earth source code. Defendants cannot be held responsible for this decision by Skyline.

---

[7]    If Skyline was concerned about whether such testimony was binding, it could have, but never even requested, that Google agree to that the testimony be binding, either informally or via a Rule 36 request for admission.

Furthermore, it is far from clear whether any further testimony concerning the Google Earth source code is necessary in any event. Skyline's designated technical expert Dr. Manocha apparently had no trouble navigating the Google Earth source code to prepare and submit his expert report regarding the alleged infringement. On or about July 10, 2006, Skyline provided Defendants with Dr. Manocha's report on his opinions as to whether the Google Earth products infringe Claims 1 and 12 of Skyline's patent. *See* Riley Decl., ¶ 18, Ex. N ["Skyline Expert Report" (without exhibits)]. Nowhere in the report does Dr. Manocha indicate that he lacked sufficient testimony from Mr. Jones or any other witness to understand the source code or identify the files relevant to the infringement analysis. Indeed, Dr. Manocha not only relied on the source code in his report, but also cited specific *client source code files* relevant to his analysis of the alleged infringement. *See* Skyline Expert Report at pp. 23-25. In light of this fact, it is significant that Skyline offers no declaration from its technical expert in support of its Motion, relying only on a declaration by its litigation counsel to provide *faux* expert opinions concerning the purported need for additional deposition testimony on the source code.

**C.    Even Though Skyline Was Responsible for Its Own Dissatisfaction, Defendants Reasonably Attempted To Engage Skyline about the Scope of the Requested Further Deposition; Skyline Filed its Motion Instead.**

As discussed more fully above, Defendants produced an appropriate Rule 30(b)(6) designee whom Skyline then failed to adequately depose. Because Defendants had met their obligations under Rule 30(b)(6), Skyline's demand for further testimony lacked merit. Nonetheless, Defendants attempted to meet and confer efforts with Skyline concerning its demand.

Contrary to Skyline's characterization, Defendants have not "steadfastly refused" to produce a designee for further Rule 30(b)(6) testimony. Rather, as part of their meet and confer efforts, Defendants sought a reasonably particular identification of the topics (*i.e.*, functions, modules, or files in the client source code[8]) on which Skyline claimed to lack adequate testimony

---

[8]    Skyline's continued demand for further testimony on Defendants' "client source code" is overbroad and lacks the reasonable particularity Defendants require to be able to properly respond to Skyline's request for further Rule 30(b)(6) testimony. *See* Fed. R. Civ. P. 30(b)(6). Even in their

and needed further inquiry. *See* Riley Decl., ¶¶ 6, 8-9. Yet, in the September 14, 2006 teleconference between counsel, Skyline refused to provide the identification, indicating it was "not prepared" to identify the subject of further inquiry beyond the "client source code." *Id.* ¶ 9. Defendants' September 15, 2006 letter again articulated Defendants' concern about Skyline's failure to more specifically identify the alleged inadequacies in Defendants' testimony and indicated Defendants would be available to discuss the matter further in the hopes of resolving the issues. *Id.* ¶ 9.

Instead of responding to Defendants, Skyline improperly cut short the meet and confer efforts by filing its premature Motion to Compel, seeking an order that Defendants produce Mr. Rohlf as a further Rule 30(b)(6) witness. *Id.* ¶ 10; *see* Fed. R. Civ. P. 37(a)(2)(A)-(B) (parties obligated to meet and confer regarding discovery disputes in effort to resolve differences). Skyline, however, cites no authority supporting the proposition that a deposing party may force a deponent to designate a particular person as a corporate designee. Indeed, no such authority exists. *See, e.g., Cummings*, 2002 U.S. Dist. LEXIS at *16 (stating that Rule 30(b)(6) does not permit the deposing party to designate the individuals for the 30(b)(6) deposition).

Defendants' efforts to obtain a more particular identification of the potential topics for further Rule 30(b)(6) testimony were not only reasonable, they were absolutely necessary. First, Defendants required such identification in order to be able to identify and, if necessary, prepare their further witness for the deposition.[9] As noted above, Defendants have already produced eight engineers for deposition in this matter (not including the Rule 30(b)(6) designee). While these engineers are most knowledgeable on Google Earth, the source code, and the design,

---

objections, Defendants recognized the deficiency of Skyline's identification of its topics, objecting to the topics on grounds including overbreadth and failure to designate topics with sufficient particularity to allow defendants to designate an appropriate witness. *See* Ex. B (at p. 1) to Haight Decl. In fact, Defendants specifically identified Skyline's use of the phrase "content and functionality of the source code" as overbroad and unintelligible. *See* Ex. B (at p. 5) to Haight Decl. Still, subject to those objections, Defendants produced Mr. Jones to testify on Topic 2.

[9]    Skyline argues that "[t]here can be no question as to what this deposition would entail" (Memo. at p. 9), but that statement begs the question which Defendants already put to Skyline during meet and confer efforts and which Skyline still fails to answer through its Motion: What information was Skyline unable to get through the depositions already taken and/or what areas of information pertaining to the source code does it seek through the further inquiry?

operation, and functionality of the products, Skyline claims it did not obtain sufficient testimony from Defendants about their client source code during the first round of depositions. In order to address Skyline's complaints, it was necessary for Defendants to know what potential testimony Skyline claims is missing.

Second, given Skyline's opportunities to obtain information about the source code and its dissatisfaction notwithstanding the numerous depositions it has taken, Defendants are reasonably concerned that no witness they provide will ever be able to satisfy Skyline's unarticulated requirements for an "adequate" Rule 30(b)(6) witness. With such testimony already under its belt, Skyline must have pinpointed those areas on which further information is required, yet Skyline still refuses to pinpoint those areas on which a further witness would need to be prepared. Only through appropriate identification of the alleged deficiencies and areas for further inquiry will Defendants (1) be able to provide a witness prepared to address Skyline's concerns and (2) be protected against endless serial depositions due to Skyline's unexplained dissatisfaction with Defendants' testimony.

D.    **Sanctions Are Not Appropriate Because Skyline's Motion Was Premature and Defendants Acted in Good Faith in Designating Mr. Jones.**

Sanctions are not warranted where, as here, the deponent acts in good faith to designate a proper Rule 30(b)(6) witness and engage in meet and confer discussions, particularly where the moving party prematurely end those discussion. *See* Fed. R. Civ. P. 37(a)(4)(A) (no sanctions where "the court finds that the motion was filed without the movant's first making a *good faith effort* to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust"). As discussed above, Skyline prematurely brought its Motion notwithstanding Defendants' then-ongoing efforts to resolve this dispute informally. In the last communication between the parties, counsel for Defendants specifically indicated he would be available to work with Skyline in hopes of resolving Skyline's request for further Rule 30(b)(6) deposition testimony and Defendants' request for a further identification of topics. *See*

Riley Decl., ¶ 9, Ex. G.  Instead of continuing in a discussion between the parties, Skyline imprudently (and prematurely) elevated this dispute to the Court.  *See, id.,* ¶ 10.  Defendants cannot be held responsible for this ill-advised decision by Skyline.

Moreover, Skyline's demand for sanctions is wholly unwarranted in any event.  Though case law on the standard for imposing sanctions for Rule 30(b)(6) depositions is relatively sparse, even Skyline's cited authorities recognize that sanctions are appropriate only where an improper 30(b)(6) designation amounts to a "failure to appear."  *Compare Berwind*, 233 F.R.D. at 65 (no sanctions because being "less than appropriately knowledgeable and forthcoming" did not amount to a complete failure to appear); *Alexander*, 186 F.R.D. at 143 (citing "failure to appear" standard; no sanctions where Rule 30(b)(6) deponent was designated in good faith and testified competently to a wide range of areas) *with Calzaturficio S.C.A.R.P.A. S.P.A., v. Fabiano Shoe Co.*, 201 F.R.D. 33, 41 (D. Mass. 2001) (awarding sanctions where witnesses' lack of knowledge "glaringly obvious" and counsel engaged in improper behavior); *Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (awarding sanctions where witness first failed to appear for deposition and then "failed to offer meaningful testimony about most, if not all, of the [deposition topics]"); *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (awarding sanctions where witnesses' lack of knowledge so extreme they were impeached by their own counsel).  *See also Marker*, 125 F.R.D. at 126 (no sanctions awarded where defendant failed to redesignate Rule 30(b)(6) deponent, even though court ordered further response to Rule 30(b)(6) deposition request).

By no stretch of the imagination does Mr. Jones' testimony constitute a "failure to appear."  Like the deponent in *Alexander*, Mr. Jones "was able to answer many of plaintiffs' relevant questions" and as to those he was unable to answer, he "was generally able to state who would be most likely to answer those questions."  *Alexander*, 186 F.R.D. at 140.  Further, unlike cases in which sanctions were warranted, Defendants did not act in bad faith, nor did Mr. Mr.

Jones.[10]  Rather, Defendants designated a competent, forthcoming witness, who was extremely knowledgeable about a wide range of topics relating to Google Earth, and made every effort to answer Plaintiff's questions.  *See, e.g.*, Jones Depo. at 407:4-6 (counsel for Skyline recognizing Mr. Jones had "valuable knowledge").  Because Defendants designated and produced Mr. Jones in good faith, sanctions are simply inappropriate.  *Berwind*, 233 F.R.D. at 65 (finding no bad faith or willful obstruction of the discovery process on the part deponent corporation and refusing to award sanctions); *Google*, 2006 U.S. Dist. LEXIS 58970, *7 (court found good faith on all sides and did not award sanctions).

## IV.  **CONCLUSION**

Contrary to Skyline's contentions, Defendants have provided ample opportunity for Skyline to obtain the testimony it seeks concerning source code.  Defendants cannot be held responsible for Skyline's failure to take advantage of these opportunities.  Moreover, in spite of these facts, Defendants engaged in the meet and confer process in good faith in an effort to address Skyline's concerns.  That process ended when Skyline refused to provide necessary information and elected to file its Motion instead.  Under such circumstances, Skyline's tactical maneuver to force defendants to make an already-deposed witness available for further testimony

---

[10]      For example, in *Calzaturficio*, one 30(b)(6) deponent, when asked about the company's knowledge on a certain topic responded, "Ask the company, I'll go get you a business card and you can talk to that." *Calzaturficio*, 201 F.R.D. at 37, n5.  In *Black Horse*, the court stated that the 30(b)(6) deponent "failed to offer meaningful testimony about most, if not all, of the items specified in the notice of deposition" and characterized his deposition as a "non-event." *Black Horse Lane Assoc.*, 228 F.3d, at 304-305.  By contrast, Mr. Jones testified for two full days concerning a wide variety of technical topics, many of which were the subject of numerous Rule 30(b)(6) topics for which he had been designated.

should not succeed, nor should Skyline's unwarranted request for sanctions.  Accordingly,

Skyline's Motion should be denied.


Dated:  October 6, 2006                    Respectfully submitted,



                                     By: /s/ Darryl Woo
                                         Darryl Woo

**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111
Tel.  (415) 875-2300
Fax  (415) 281-1350
email: dwoo@fenwick.com

Attorneys for Defendants and Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

## Certificate of Service

I hereby certify that, on October 6th, 2006, I caused a true and accurate copy of the foregoing document to be served upon all counsel of record for each party by complying with this Court's Administrative Procedures for Electronic Case Filing.


By:  _____/s/ Saundra L. M. Riley_____
          Saundra L. M. Riley

**FENWICK & WEST LLP**
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111
Tel.  (415) 875-2300
Fax  (415) 281-1350
email: sriley@fenwick.com

Attorneys for Defendants and Counterclaimants
KEYHOLE, INC. and GOOGLE INC.

A1000/00102/LIT/1256731.1