**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

———————————————————
                                     )

SKYLINE SOFTWARE SYSTEMS, INC.,  )
           Plaintiff,                )
                                     )

v.                                   )     CIVIL ACTION NO. 04-11129-DPW
                                     )

KEYHOLE, INC. and                 )
GOOGLE, INC.,                   )
               Defendants.         )
———————————————————)

**PLAINTIFF SKYLINE SOFTWARE SYSTEMS, INC.'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

H. Joseph Hameline, BBO #218710
Geri L. Haight, BBO# 638185
Mintz, Levin, Cohn, Ferris
 Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Attorneys for Plaintiff
Skyline Software Systems, Inc.

Dated:  October 11, 2006

In an attempt to get a second bite at the claim construction apple, Defendants Keyhole, Inc and Google Inc. ("Google") devote a large part of their Opening Claim Construction Brief to argument concerning claim terms that appear in Claims 1 and 12. Claim terms that appear in these claims are not at issue now. The Court's Order directed the parties to file claim construction briefs directed to disputed claim terms in "all claims *other than claims 1 and 12*." *See* Docket No. 110, <u>Exh. H</u>.[1]

When not trying to re-argue the meaning of claim terms found in Claim 1 and 12, Google improperly attempts to take purported characteristics of the preferred embodiment described in the '189 Patent and read them or other unnecessary limitations into the claims. This is impermissible. The Federal Circuit has repeatedly warned against confining the claims to embodiments found in the specification. *See, e.g.*, *Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification").[2]

## <u>LEGAL ANALYSIS</u>

Although the specification often describes very specific embodiments of the invention, the Federal Circuit has repeatedly warned against confining the claims to those embodiments. *See, e.g.*, *Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906-08

---

[1] All exhibits cited in this memorandum are consecutively lettered and attached to either the Haight Declaration (September 29, 2006, attaching <u>Exhibits A-G</u>) or the Declaration of H. Joseph Hameline (filed herewith, attaching <u>Exhibits H-J</u>).

[2] Google says a great deal about the '189 Patent, in line with its seeming view that the preferred embodiment may be read freely into the claims. Because many of its characterizations are irrelevant, Skyline does not rebut all of Google's mischaracterizations of the inventions described and claimed in the '189 Patent. Absence of a rebuttal, however, in no way implies acceptance of Google's views.

(Fed. Cir. 2004); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002);

*SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed. Cir. 1985).   In particular,

the Federal Circuit has expressly rejected the contention that, if a patent describes only a single

embodiment, the claims of the patent must be construed as being limited to that embodiment.

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1366 (Fed. Cir. 2004).  As

the Federal Circuit noted:

> [a]n accused infringer [cannot] ... narrow a claim term's ordinary meaning ...
> simply by pointing to the preferred embodiment or other structures or steps
> disclosed in the specification or prosecution history.  Indeed ...case law makes
> clear that a patentee need not 'describe in the specification every conceivable
> and possible future embodiment of his invention.'

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) (citations

omitted); *see also Axcelis Tech., Inc. v. Applied Materials, Inc.*, 2002 WL 3161283, * 2 (D.

Mass. Dec. 10, 2002) (Woodlock, J.).  Thus, the patent claims are not limited in scope to

particular embodiments disclosed in the patent.  *See Texas Instruments, Inc. v. U.S. Int'l Trade

Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986).

> ### A.    The Court Need Not Construe Claim Terms Found In Claims 1 and 12 But, If It Does, It Should Reject Google's Proposed Constructions.

There is no reason – and Google has not identified one – for the Court to construe the

claim terms found in Claims 1 and 12 identified by Google as requiring construction.  All terms

in those claims were adequately construed in the Court's initial Claim Construction Order.

Nonetheless, as Google insists on raising issues with respect to claim terms found in Claims 1

and 12, Skyline outlines below why, as a substantive matter, Google's proposed claim

constructions are wrong.

1.    *"downloading"*

The first term identified by Google as in dispute" is "downloading."  Downloading is a term known to almost every computer user.  The Court previously construed this term in the context of its construction of "communication link", which is found in Claim 12.  In that construction the Court stated that a "communication link" is a "network connection, such as the Internet, used for transferring data between computers."  Exh. G (Claim Construction Order, p. 39).  Downloading is precisely this transferring of data between computers; here from a remote server to a local computer.  The plain and ordinary meaning of the term "downloading" comports with this meaning.  For example, the *Microsoft Computer Dictionary* (1999) defines "download" as:

> 1.  In communications, to transfer a copy of a file from a remote computer to a requesting computer by means of a modem or network.  2.  To send a block of data, such as a PostScript file, to a dependent device, such as a PostScript printer.

Exh. I (*Microsoft Computer Dictionary* (1999) at 153).  As the Federal Circuit most recently stated "the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) (internal quotation marks omitted).  There is no need for the Court to provide further interpretation of this term.

Google, however, turns to the preferred embodiment and seeks improperly to limit the meaning of "downloading."  Google contends that the term "downloading" be construed as "requesting over a network and receiving in local memory from a separate computer."  Google Br. at 7.  Google argues first that "downloads" in the preferred embodiment intrinsically suggests that downloads go to local memory.  Google then asserts that *all* downloads must go to local memory.  *Id*. at 7-8.  As noted above, limiting the claim to the preferred embodiment is improper.  *See*, *e.g.*, *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1357-60 (Fed. Cir. 2004) (holding that the district court erred by limiting the claim to a preferred embodiment);

3

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003)(same);

*Datapoint Corp. v. Standard Microsys. Corp.*, 31 Fed. Appx 685, 689 (Fed. Cir. 2002)(holding

that "the Special Master erred by limiting the claims to the preferred embodiment"). At best,

Google argues the specification is "intrinsically suggesting" this construction. Google Brief,

p. 8. That is not an adequate legal basis for limiting from the ordinary and straightforward

meaning of the word "download." And in fact, the embodiment in Figure 8 of the '189 Patent

teaches directly to the contrary. In Figure 8, a block is downloaded and, if currently needed by

the renderer, is provided to the renderer. If not, the block is stored in cache memory. This

process is described consistently in the specification at Column 14, lines 44-46 ("As blocks are

received from the server, they are supplied to renderer 72 so that the user sees an image where

resolution increases with time."). Google's purported intrinsic suggestion in the '189 Patent that

all blocks are downloaded to local memory is simply inaccurate.

　　　In addition, at the time of the invention, for example, it was also common to download

files over a network to a disk. Manocha Decl., ¶ 4. As the specification notes, "[i]n some

preferred embodiments of the present invention, the processor manages a local cache memory in

which the processor stores blocks which cover terrain areas in the vicinity of the current

viewpoint. <u>Exh. B</u> ('189 Patent, col. 3, lns. 24-26). "[T]he use of the term 'preferably' makes

clear that the language describes a preferred embodiment, *not the invention as a whole*." *Cordis

Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352 (Fed. Cir. 2003) (emphasis added). The

applicant's choice to describe only a single embodiment does not mean that the patent clearly

and unambiguously disavowed other embodiments. *See Liebel-Flarsheim,* 358 F.3d at 907-08.

It would thus constitute legal error to construe the word "download" in a way that made the

claims read only on a situation described in the specification as a mere preference. *See, e.g.*,

*Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006) (noting that the Federal Circuit has "refus[ed] to limit broader claim language to a preferred embodiment in the patent specification").

### 2. *"receiving from the renderer"* and *"providing the renderer"*

In the phrase "receiving from the renderer one or more coordinates in the terrain along with indication of a respective resolution level," Google asks that the words "receiving from the renderer" be construed to imply that another object besides the renderer receives the coordinates and indication. Google Br. at 9-10. The Court has already addressed this issue in its prior Claim Construction Order, specifically, its interpretation of the term "renderer." Exh. G (Claim Construction Order at 39). There is no need for the Court to address this term which is found in Claims 1 and 12, as well as in several additional claims at issue in this phase of the claim construction analysis.

Similarly, even though the Court has already construed the term "renderer,"[3/] Google also asks that the Court construe the phrase "providing the renderer." This phrase appears in Claims 1 and 12 as "providing the renderer with a first data block." Exh. B ("189 Patent, col. 17, lns. 49). Despite the Court's prior Claim Construction Order (and its own failure to previously seek construction of this phrase), Google now asks that this term be construed. There is no reason to revisit that decision now and Google certainly provides none.

---

[3/]    In its March 24, 2006 Order, the Court defined "renderer" as follows:

Software and/or hardware object that performs at least the following functions: (1) determining and *providing to* another object the required coordinates in the terrain along with a respective resolution level; (2) *receiving* the data blocks corresponding to the specific coordinates; and (3) using the received data blocks to display a three-dimensional image.

Exh. G (Claim Construction Order at 26-32) (emphasis added).

Google's current position is also undercut by a portion of the '189 Patent that Google itself quotes in its brief:

> In *some preferred embodiments* of the present invention, the processor runs a rendering program . . . . The rendering program orders the blocks it needs using a cache manager.

Google Br. at 9 (quoting '189 Patent, col. 3, lns. 54-67).  By its own terms, this portion of the specification pertains only to "some preferred embodiments."  In no way does it limit the scope of the invention.  In addition, the specification refers to the renderer as a software process or processes, not as an object.  '189 Patent col. 10, ll. 61-65.  The claims say "renderer," not "rendering program" (which is found in other portions of the specification).  They do not recite the "cache manager" at all.  Like most patentees, Skyline chose to claim more than described in its preferred embodiment.  Like most accused infringers, Google is trying to limit the claims to the preferred embodiment.  Without a solid legal reason for doing so (as, for example, a clear disclaimer in prosecution), such a limitation is improper, *see Alitris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1372 (Fed. Cir. 2003), and the claim refers generally to processes performed by a combination of software and/or hardware.

Notably, in seeking the Court's construction of the phrases "receiving from the renderer" and "providing the renderer," Google does not propose any construction for the terms "receiving" or "providing."  Google Br. at 9-11 (defining "receiving from the renderer" as "an object other than the renderer *receiving [or receives]* from the renderer" and "providing the renderer" as "an object other than the renderer *providing* the renderer").  There is no doubt, therefore, that all Google is attempting to do is to further define (or restrict the meaning of) the term "renderer," which the Court has already construed.

6

**3.**    **"*downloading . . . if the provided block from the local memory is not at the indicated resolution level*"**

Like the claim terms above, the phrase "downloading … if the provided block from local memory is not at the indicated resolution level" appears in Claims 1 and 12 and, as such, requires no construction by the Court.

This limitation is found in Claim 1 (as well as in several additional claims). It requires that activity meeting the limitations of claim 1 must include downloading additional blocks "if the provided block from the local memory is not at the indicated resolution level." Exh. B ('189 Patent, col. 17, lns. 14-16, 35-37, 54-56). Google contends that this requires that performing the method of Claim 1 must include a "determination of" whether the first block is at the indicated resolution level. Google Br. 12-13. Google turns, of course, to its favorite source of arguments: the preferred embodiments. Even the preferred embodiments, however, are a poor fit to Google's theory. The quotes from the patent in Google's own brief demonstrate that what is said to be "determined" in the claim is not whether the first block provided is at the indicated resolution level, but rather whether the block the renderer has asked for is in cache memory memory. Exh. B ('189 Patent, col. 3, lines 60-64 ("if the block is not carried by the cache manager"); col. 11, lines 62-65 ("if they are not already stored in cache memory"); col. 14, lines 32-42 ("If block **42** itself is stored in cache memory **32**")).

Google further argues that "inventor Yaron admitted that the renderer *of his claimed invention* contained an algorithm for the very purpose of making this determination recited in the claims." Google Br. at 12 (emphasis added.) This assertion is false and finds no support in Mr. Yaron's deposition testimony. Google cites to a single, one-sentence answer given by Mr. Yaron at his two-day deposition when asked how a commercial embodiment of the invention, called TerraExplorer – not the claimed invention – supposedly made this determination. *Id.*

7

(citing to Mr. Yaron's deposition testimony at Defendants' Exh. J).  Mr. Yaron's complete

answer read as follows:

> It [a commercial embodiment, TerraExplorer] would use an algorithm that would
> decide what is the optimal resolution level for that piece of data according to the
> user's viewpoint.

Exh. J (Yaron Dep. Tr. at p. 131, ll. 4-7).  Thus, Mr. Yaron does not answer the issue currently

raised by Google:  whether the method of Claim 1 must include a "determination of" whether the

first block is at the indicated resolution level.  Instead, his answer concerns the "optimal

resolution level" used in a commercial embodiment, not the "indicated resolution level" recited

in the claims.  Deciding on an optimal resolution level is quite different from a "determination"

that a block which has been provided is at a requested resolution level.  Manocha Decl., ¶ 10.

Google also brings in its expert to tell us that "[w]hen an action is conditional, a

computer program must make a determination as to whether the specified condition is met in

order to take appropriate action."  Declaration of Steven K. Feiner, Ph.D. ("Feiner Decl."), ¶ 25.

Unfortunately for Google, this proposition is not true, at least with any meaning of "make a

determination" which connotes actually doing something to test whether the condition is met.

There are many ways for a program to know that a condition X is met besides testing for it (or

"making a determination").  Manocha Decl., ¶ 11.  Notably, the program can test for other

different conditions that, in turn, imply the condition X.  *Id.*  These other tests can be scattered in

different places in the code.  *Id.*  The flow of control in the code can be designed such that if the

processor is executing at a particular place in the code, condition X must be true or the processor

would not be executing that code.  *Id.*  The program can even be constructed so that it ensures

that X is true always, in which case the code can always assume X to be true.  *Id.*  Because Dr.

Feiner's logical starting point is wrong, the rest of his reasoning is also incorrect.

8

Google also mentions that the cited language was used to distinguish the prior art during the prosecution history.  The use of claim language to distinguish prior art may have implications for the doctrine of equivalents, and it may be a basis for arguing that the claim language should not be interpreted to read on the prior art which was distinguished.  *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc) (per curiam) (discussing relation between distinctions of prior art and equivalents); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).   Google makes neither of those arguments here.  Instead, Google interprets the use of claim language to distinguish prior art as a license for the accused infringer to import details from the specification – indeed, details which are not really even in the specification – to limit the claims.  No case cited by Google supports this proposition.

Finally, as if all the preceding reasons were not sufficient, there is a further reason why Google is wrong on its proposed construction of this claim term (which, of course, does not even require construction at all).  Claim 1 provides that an execution meeting the limitations of the claimed method must download if the first block was not at the indicated resolution.  Exh. B ('189 Patent, col. 16, lns. 28-44).  The claim language does not prohibit downloading if the first block *was* at the indicated resolution, and indeed, unnecessary downloading is contemplated by the invention as shown by Claim 7.  *Id.*, col. 17, lns. 43-61; *see also* Google Br. at 19 ("Claim 1 is clearly broad enough to encompass downloading data blocks at a resolution level higher than the indicated resolution level ….").  Claim 7 specifically provides that the claimed system may download "from a remote server excess blocks not needed by the renderer to fill up the local memory when not downloading blocks required by the renderer."  *Id.*  Thus, in a computer program which practices the method of claim 1, downloading can be triggered by any condition

or combination of conditions, which results in downloading occurring in specific instances if the first block was not at the indicated resolution level. This further shows that there can be no need to make a determination of whether the first block was or was not at the indicated resolution level.

### B. Google's Proposed Construction Of Those Claim Terms That Do Not Appear In Claims 1 And 12, Which Are Appropriately In Dispute, Are Wrong.

Google not only seeks to re-argue (or raise for the first time) disputes concerning the meaning of claim terms found in Claims 1 and 12, which have already been decided by the Court, it also identifies five claim phrases for which there is an actual dispute. Unfortunately, Google's proposed constructions for these claim terms are plagued by the same substantive problems described above.

#### 1. *"when not downloading blocks required by the renderer"*

For the simple claim term "when not downloading blocks required by the renderer," Google proposes the elaborate construction "during periods of time when the local computer is not downloading data blocks describing three-dimensional terrain in response to the coordinates received from the renderer." Google Br. At 16-20. Under Google's construction, the straightforward English word "when" acquires the prefix "during periods of time" for reasons that Google does not bother to explain.[4/] Portions of the downloading technique described by Claim 1 are incorporated into the definition.

---

[4/]    They may have to do with Google's desire to limit the claim to read only on "unnecessary" downloads which have no overlap in time with the necessary ones. Each download takes typically fractions of a second. Often there will be multiple downloads in process at any given time over multiple connections. *See, e.g.*, <u>Exh. B</u>, Figure 8 (refers to multiple TCP connections) and col. 15, lines 1-3 (stating that in the preferred embodiment there will be multiple TCP connections on which multiple downloads can be requested). Google might be laying the ground for a future argument that all the data from necessary downloads must arrive before unneeded downloads are requested. But Google does not point to any reason why such a limitation would be justified.

Google argues that Skyline's proposed construction supposedly "cannot be reconciled with other claims of the patent."   Google Br. at 19.  In making this argument, Google cites only *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366-67 (Fed. Cir. 2000) , a case about making two claims have *identical* scope.  Google Br. at 19.  Google argues that construing Claim 7 as Skyline does "eliminat[es] much of the difference between the two claims" (*i.e.*, Claim 7 and another unspecified claim, presumably Claim 2).  While it is an accepted claim construction guideline not to construe claims to have identical scope, there is no guideline that disfavors merely making the scope of two claims *similar* by eliminating "much" – but not all – of the difference in scope between the claims.  Had a case supporting this proposition existed, Google surely would have cited to it (but it has not).

Google also argues that Skyline's claim construction is defective because it says "when not downloading *data* required for the current view," rather than data blocks.  Google Br. at 19-20.  Google points out that data blocks may contain data not required for the current view as, for example, where the current view encompasses only the left half of the portion of the Earth's surface corresponding to a data block.  Skyline accepts that the proper construction should say "when not downloading data blocks required for the current view."  This refutes Google's argument based on the use of "data" rather than "data blocks."

## 2.    *"Internet"*

Despite Google's argument to the contrary, everyone (especially those of ordinary skill in the art) knew in 1999 (and today) that there is one Internet.  Google's proposed definition encompasses any network that uses the Internet protocols.  There are thousands of such networks, perhaps, at this point, millions.  Google's definition is thus inconsistent with the universal understanding that there is one Internet.  Google's proposed definition cannot be, and is not, correct.

11

Connected to the Internet, permanently or as needed, there are many private networks in homes, businesses, schools, and government agencies.  Manocha Decl., ¶ 13.  The connections from these private networks to the Internet generally pass through companies, known as Internet service providers, which are subject to numerous standards administered by standards bodies.  *Id*.  Unconnected to the Internet, there are also private networks that use the Internet protocols, each of which Google, quite implausibly, would call "the Internet."  *Id*.

Put in context, there is no question as to the meaning of the term "Internet." The full language of Claim 8 (and 22) is "downloading the blocks via the Internet."  Exh. B ('189 Patent, col.17, lns. 62-64).  To download blocks "via the Internet" means that the blocks pass through the Internet, not that they pass through a private network.

Google claims that Skyline's proposed construction seeks to add language to the claim. Google Br. at 21.  Yet, Skyline's proposed claim construction merely reflects the ordinary meaning of the term "the Internet," as used in the context "downloading the blocks via the Internet."[5/]

---

[5/]    Skyline is willing to amend its proposed construction from "capable of relaying information via TCP connection" to "capable of relaying information via Internet Protocol" to eliminate that issue.

3.    *"substantially all the blocks surrounding a point in the terrain seen from the current viewpoint within a predetermined distance range"*

First, Google does not attempt to justify the inclusion of the term "excess blocks" in its proposed construction of "substantially all the blocks surrounding a point in the terrain seen from the current viewpoint within a predetermined distance range." The claim language says "substantially all the blocks"; there is no reason to limit "substantially all" to "substantially all the *excess* data blocks." Google also does not attempt to justify the inclusion of "data blocks describing three-dimensional terrain" in its claim construction. The claim language says only "data blocks." While it is true that this term has been construed, there is no reason to replicate the entire construction of "data block" in the construction of a much longer phrase, much less a piece of that construction.

Google argues that Skyline's construction is defective in that it allows the distance range to be measured from the viewpoint or from the point in the terrain. The actual claim language does not say whether the distance is measured from the viewpoint or from the point. Going solely by proximity, the modified "within a predetermined distance range" is closer to "viewpoint" than "point in the terrain," and could just as well modify one as the other. As Google itself notes, the specification describes an embodiment in which "cache manager **74** fills cache memory **32** with the blocks *within the range of the current viewpoint*." Exh. B (col. 15, lines 63-65, emphasis added). The "range of the current viewpoint" would seem to connote, if anything, a predetermined distance from that viewpoint and not from a point in the terrain. Similarly, Google's argument against Skyline's "one or more directions" does not take into account the fact that fetching all blocks within a predetermined distance is merely an approximate way of figuring out what blocks are likely to be useful. A better approximation to the set of blocks likely to be wanted may be achieved with different predetermined distances in

different directions, e.g., because the user is traveling in one direction. See, e.g., '189 Patent Col. 13, ll. 65-67, Col. 14, ll. 1-10. The claim should not be construed to exclude this context.

### 4. "succession of resolution levels"

Google seeks improperly to add a limitation of rigid order of "increasing resolution level" to the phrase "succession of resolution levels". Google Br. at 14-15. The language at issue in Claim 2 is "downloading the blocks from a succession of resolution levels." As stated in the specification, the data blocks belong to a hierarchical structure where the data has been processed into multiple resolution levels. '189 Patent Col. 9, ll. 39-63. This database is what is referenced in Claim 2 when it states that the blocks are downloaded from a succession of resolution levels (i.e., from the database).

As the Court noted in its initial Claim Construction Order in defining the term "hierarchical structure," the specification contains multiple references to the fact that the structure is "substantially" and/or "typically" hierarchical. For example, as the Court acknowledged, the specification of U.S. Patent No. 6,111,583 ("the '583 Patent"), which is incorporated by reference into the '189 Patent, "uses a hierarchical database in which *substantially* each terrain area is described in a plurality of blocks at different resolution levels." Exh. J ('583 Patent) (emphasis added). The specification describes "arranging the units of data into an ordered hierarchy according to successive resolution levels." Exh. G (Claim Construction Order at 13).

> FIGS. 3A and 3B …, taken together, are simplified pictorial illustrations of a data structure useful in storing a terrain image constructed and operative in accordance with a preferred embodiment of the present invention. A terrain image is *typically stored* as a hierarchy of one or more two-dimensional grids of one or more tiles, with each grid 24 representing the image at a given resolution … Each grid has four times more detail than the grid preceding it in the hierarchy.

14

Exh. J ('583 Patent, col. 7, lns. 36-49) (emphasis added).  This portion of the specification refers to how a "terrain image is *typically stored*" in a hierarchical structure with each grid representing the image at a given resolution.  *Id*., col. 7 lines 40-43, 45-46.  While this provision goes on to note that "[e]ach grid has four times more detail than the grid preceding it[,]" this concerns only the function of a single grid, as opposed to the entire map as a whole.  Thus, it is clear from the intrinsic record and the Court's initial Claim Construction Order that it is the *structure* that is hierarchical, not every block.

> **5.    *"plurality of coordinates being included in a plurality of respective distinct blocks"***

Google's construction of the term "plurality of coordinates being included in a plurality of respective distinct blocks" appears to require that if there are *n* coordinates in the plurality, then *n* distinct data blocks must be identified such that each coordinate is included in at least one of the *n* data blocks and each of the *n* data blocks has at least one of the coordinates included in it.  *See* Google Br. at 16 (referring to "one-to-one correspondence").  Skyline's construction simply requires that the *n* coordinates be described by multiple different data blocks.

Google argues that if Skyline had meant that the coordinates are found in multiple blocks rather than each in a block of its own, Skyline could have drafted the claim more simply, without saying "respective distinct."   This is an excess of linguistic subtlety and expects an unrealistic level of attention to fine points of language from patent claim drafters.

Google then argues that because the claim would mean the same with "respective distinct" removed, it should be construed to give "respective distinct" some special meaning. Google relies on a supposed canon of claim construction that no part of the claim be rendered superfluous.  However, such a canon is very weak if it exists at all.  A multitude of Federal Circuit cases have construed particular terms to be redundant of other terms in a patent claim.

*See, e.g.*, *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed. Cir. 2005) ("We agree with the district court that the term 'in a stabilizing amount' simply describes the intended result of using the weight to volume ratios recited in the claims."); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 326 F.3d 1215 (Fed. Cir. 2003) ("The expression 'beyond a range of direct manual contact' is no broader than and adds little more than emphasis to the fully supported term 'remote location' [also found in the claim]."); *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001) (finding that where a claim recited "an antineoplastically effective amount of about 135-175 mg/m$^2$ taxol," the term "an antineoplastically effective amount" was an "expression of intended result" which "essentially duplicates the dosage amounts recited in the claims" and so "does not change those amounts or otherwise limit the claim"); *Bell & Howell Document Mgmt. Prod. Co. v. Altek Systems*, 132 F.3d 701, 707 (Fed. Cir. 1997) ("[T]he district court's conclusion that Bell & Howell's proffered claim construction would render the word 'integrally' superfluous because being 'free of adhesive' is already recited in the claims is not sustainable. Moreover, defining a state of affairs with multiple terms should help, rather than hinder, understanding. Being 'integrally bonded' and 'free of adhesive' are mutually reinforcing definitions rather than being superfluous."); *In re Ruschig*, 343 F.2d 965, 973 n.8 (CCPA 1965) (Rich, J.) ("[A]ttorneys often write compound claims  including a statement of some inherent property . . . . Where the balance of the claim fully identifies the compound . . . and the property is inherent, we fail to see that such statements add anything to the claim definition of the named compound.").  There is thus no justification for inferring from the presence of the words "distinct respective" the "one-to-one correspondence" that Google claims is required.  Google Br. at 16.

## CONCLUSION

For the foregoing reasons, Skyline respectfully requests that the Court adopt its proposed construction of the claim terms and phrases provided above.

Respectfully submitted,

SKYLINE SOFTWARE SYSTEMS, INC.,

By its attorneys,

/s/   H. Joseph Hameline
H. Joseph Hameline, BBO #218710
Geri L. Haight, BBO #638185
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Tel.: 617-542-6000
Fax: 617-542-2241

Dated:  October 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 12, 2006.

/s/   H. Joseph Hameline
H. Joseph Hameline